1

2

3

4

5

6

7
                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
8                              AT SEATTLE

9

10   ALLSTATE INDEMNITY                      CASE NO. C20-1508JLR
     COMPANY,
11                                           ORDER DENYING
                             Plaintiff,      THIRD-PARTY DEFENDANT
12                                           PAUL DAVIS'S MOTION TO
            v.                               DISMISS AND DENYING
13                                           PLAINTIFF ALLSTATE'S
     RANDY LINDQUIST, et al.,                MOTION FOR PARTIAL
14                                           SUMMARY JUDGMENT
                             Defendants.
15   ─────────────────────────────────

16   RANDY LINDQUIST,

17                 Third-Party Plaintiff,

            v.
18
     MELODY J. GRONDAHL, et al.,
19
                 Third-Party Defendants.
20   ─────────────────────────────────

21

22

ORDER - 1

1

# I.     INTRODUCTION

2

Before the court is Plaintiff/Counter-Defendant Allstate Indemnity Company's

3

("Allstate") motion for partial summary judgment (MSJ (Dkt. # 8)) and Third-Party

4

Defendant G & J Restoration, Inc.'s ("Paul Davis") motion to dismiss for failure to state

5

a claim (MTD (Dkt. # 39)).  Defendant/Counter-Claimant/Third-Party Plaintiff Randy

6

Lindquist opposes both motions.  (MSJ Resp. (Dkt. # 40); MTD Resp. (Dkt. # 47).)  The

7

court has considered the parties' submissions, the relevant portions of the record, and the

8

applicable law.  Being fully advised,[1] the court DENIES Paul Davis's motion to dismiss

9

and DENIES Allstate's motion for partial summary judgment.

10

# II.     BACKGROUND

11

## A.     Factual Background

12

This case stems from a fire that burned down Mr. Lindquist's house at 6920 Fisher

13

Road in Edmonds, WA ("6920 Fisher Road") on December 25, 2019.  (MSJ Resp. at 5;

14

Leid Decl. (Dkt. # 9) ¶ 5, Ex. C ("Lindquist EUO") at 4:6-8.)  Allstate issued a

15

homeowner's insurance policy for 6920 Fisher Road in 2004 and renewed the policy on

16

an annual basis thereafter.  (Compl. (Dkt. # 1) ¶ 3.1.)  The policy provides dwelling

17

protection with limits of $3,311,872, other structures protection with limits of $331,188,

18

and personal property protection with limits of $2,483,904.  (*Id.* ¶ 3.5.)  After the fire in

19

20

21

22

[1] No party requests oral argument, (*see* MSJ at 1; MTD at 1; MSJ Resp. at 1; MTD Resp. at 1) and the court concludes that oral argument would not be helpful to its disposition of the motions.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

1    2019, Mr. Lindquist timely notified Allstate of the incident.  (Answer[2] (Dkt. # 27) ¶ 64.)

2    As a part of its investigation of the fire, Allstate contracted with Paul Davis in early 2020

3    to perform work on the property.  (*Id.* ¶¶ 100-01.)  The court begins by laying out the

4    facts most relevant to Paul Davis's motion to dismiss before turning to a description of

5    those most relevant to Allstate's motion for summary judgment.

6        1.  Paul Davis and the Aftermath of the Fire[3]

7        After the fire, Allstate retained the company EFI Global to conduct a

8    cause-and-origin investigation of the fire and someone placed signs at 6920 Fisher Road

9    stating that the property was being investigated by EFI Global.  (*Id.* ¶¶ 68, 71.)  On an

10   unspecified date after the fire, Mr. Lindquist visited 6920 Fisher Road and saw Paul

11   Davis personnel and machinery on the property.  (*Id.* ¶ 77.)  He also noticed that a chain

12   and lock securing the front gate of the property had been replaced with a much larger

13   chain and lock without his permission.  (*Id.* ¶¶ 78-79.)  Neither Allstate nor Paul Davis

14   provided Mr. Lindquist a key to this new lock.  (*Id.* ¶ 80.)  On another unspecified day,

15   Mr. Lindquist again visited the property and saw that a large portion of the remaining

16   structure at 6920 Fisher Road had been "newly demolished and reduced to rubble."  (*Id.*

17   ¶ 83.)

18

19        [2] The court uses "Answer" to refer to Mr. Lindquist's answer, counterclaims, and
20   third-party complaint.

21        [3] For the purposes of evaluating Paul Davis's motion to dismiss, the court accepts all
     well-pleaded allegations in Mr. Lindquist's third-party complaint as true and draws all
22   reasonable inferences in favor of Mr. Lindquist.  *See Wyler Summit P'ship v. Turner Broad. Sys.,
     Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

In July 2020, Allstate provided Mr. Lindquist with an estimate dated February 7, 2020, that appeared to be issued by Paul Davis. (*Id*. ¶¶ 97, 103.) According to this estimate, Allstate contacted Paul Davis on January 27, 2020, and Paul Davis inspected 6920 Fisher Road on January 31, 2020. (*Id.* ¶¶ 100-01.) The estimate listed "Lindquist Randy" as the insured, and included the estimated costs for, among other items: an excavator to demolish the standing structure, materials to construct a ramp to access the basement, an articulating man lift to assist in collapsing some structures on the property, and a bobcat machine for moving debris and cars on the property. (*Id.* ¶¶ 98, 104.) Nothing in the estimate mentioned repair or reconstruction of the home. (*Id.* ¶ 103.) Mr. Lindquist now brings a claim of trespass against Paul Davis. (*Id.* ¶¶ 191-95.)

### 2. Mr. Lindquist's 2013 Bankruptcy

Allstate's motion for partial summary judgment is based on an alleged inconsistency between the value Mr. Lindquist claimed for his personal property at 6920 Fisher Road in a 2013 bankruptcy proceeding, and the value he claimed for his personal property to Allstate after the 2019 fire. (MSJ at 1.) Mr. Lindquist filed for Chapter 11 bankruptcy in 2013. (MSJ Resp. at 6.) In these proceedings, he submitted an amended schedule B personal property form. (Leid Decl. ¶ 3, Ex. A ("Personal Property Schedule").) This form listed the value of his personal property at 6920 Fisher Road in 2013 as $4,700. (*Id.* at 1, 3.) During his bankruptcy suit in 2013, Mr. Lindquist moved out of 6920 Fisher Road due to "the expense of the house." (Lindquist EUO at 28:13-17.) After moving out, there were several break-ins at 6920 Fisher Road, but Mr. Lindquist states that he caught the intruders and there were no damages to the property

1   before the fire, although in 2014 some copper lions were stolen from the house.  (*Id.* at

2   45:19-22, 50:7-20.)

3          On August 12, 2020, Mr. Lindquist submitted to Allstate a sworn statement in

4   proof of loss of personal property for his property destroyed in the fire.  (Leid Decl. ¶ 4,

5   Ex. B ("Proof of Loss").)  In this form, he claimed that the actual cash value of his

6   personal property at 6920 Fisher Road was $917,818.85 at the time of the fire.  (*Id.* at 2.)

7   **B.     Procedural Background**

8          Plaintiff Allstate filed this lawsuit against Mr. Lindquist and Defendant JPMorgan

9   Chase Bank, N.A., on October 13, 2020.  (*See* Compl.)  Allstate seeks declaratory relief

10  establishing that Mr. Lindquist's homeowner's insurance policy does not cover harm to

11  6920 Fisher Road caused by the fire on December 25, 2019.  (*See id*. ¶¶ 6.1-6.3.)  On

12  November 12, 2020, Allstate filed a motion for partial summary judgment.  (MSJ.)

13  Allstate seeks to judicially estop Mr. Lindquist "from claiming more personal property

14  than he disclosed in his Bankruptcy filings" in 2013.  (*Id*. at 1.)

15         On November 19, 2020, Mr. Lindquist filed a motion to continue Allstate's

16  motion for partial summary judgment.  (Mot. to Continue (Dkt. # 12).)  On November 30,

17  2020, Mr. Lindquist filed his response to Allstate's motion for partial summary judgment.

18  (Initial MSJ Resp. (Dkt. # 16).)  The court granted Mr. Lindquist's motion to continue on

19  December 3, 2020, in order to allow the parties to conduct further discovery and

20  factfinding before the court ruled on the Allstate's motion.  (*See* 12/3/20 Order (Dkt.

21  # 20).)  Mr. Lindquist filed a new response on February 1, 2021, which included a motion

22  to strike portions of Allstate's motion.  (MSJ Resp.)  Allstate filed a reply on February 5,

1    2021, which included a motion to strike two declarations filed by Mr. Lindquist.  (MSJ

2    Reply (Dkt. # 43) (moving to strike Howson Decl. (Dkt # 12) and Sternberg Decl. (Dkt.

3    # 17)).)  Mr. Lindquist filed a surreply on February 10, 2021.  (MSJ Surreply (Dkt.

4    # 45).)  On March 1, 2021, Allstate filed a surreply regarding its motion to strike the two

5    declarations.  (MTS Surreply (Dkt. # 49).)

6           On December 29, 2020, Mr. Lindquist filed his answer, defenses, counterclaims

7    and third-party complaint.  (Answer.)  In it, he names Melody J. Grondahl and Paul Davis

8    as Third-Party Defendants.  (*Id.* at 1.)  On January 27, 2021, Paul Davis filed a motion to

9    dismiss Mr. Lindquist's claims against it.  (MTD.)  Mr. Lindquist filed his response on

10   February 16, 2021.  (MTD Resp.)

### III.    ANALYSIS

12          The court first analyzes Paul Davis's motion to dismiss before turning to Allstate's

13   motion for partial summary judgment.

**A.    Motion to Dismiss**

15          1.  Legal Standard

16          Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to

17   state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When

18   considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in

19   the light most favorable to the nonmoving party.  *Livid Holdings Ltd. v. Salomon Smith*

20   *Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all well-pleaded

21   facts as true and draw all reasonable inferences in favor of the plaintiff.  *Wyler Summit*,

22   135 F.3d at 661.  The court, however, is not required "to accept as true allegations that

1    are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

2    *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "To survive a

3    motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

4    'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

5    (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also*

6    *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  "A claim has facial

7    plausibility when the plaintiff pleads factual content that allows the court to draw the

8    reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556

9    U.S. at 677-78.  Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable

10   legal theory or the absence of sufficient facts alleged under a cognizable legal theory.

11   *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

12       2.  Mr. Lindquist's Trespass Claim

13       Mr. Lindquist's sole claim against Paul Davis is for intentional trespass.  (Answer

14   ¶¶ 191-95.)  Intentional trespass occurs when there is "(1) an invasion of property

15   affecting an interest in exclusive possession, (2) an intentional act, (3) reasonable

16   foreseeability that the act would disturb the plaintiff's possessory interest, and (4) actual

17   and substantial damages."  *Grundy v. Brack Family Tr.*, 213 P.3d 619, 624 (Wash. Ct.

18   App. 2009).

19       Paul Davis contends that Mr. Lindquist's third-party complaint fails to state a

20   claim for trespass.  (*See* MTD.)  Specifically, it submits that Mr. Lindquist has not

21   sufficiently pleaded that (1) he suffered an invasion of his exclusive possession of the

22   property at 6920 Fisher Road, (2) he suffered any damage as a result of Paul Davis's

1    actions, or (3) he did not waive any claim for trespass.  (*Id.* at 4-6.)  The court disagrees,

2    and addresses each of Paul Davis's arguments in turn.

3       First, Mr. Lindquist has sufficiently pleaded that he suffered an invasion of his

4    exclusive possession of the property.  Paul Davis argues that because both Allstate and

5    Mr. Lindquist agree that Allstate had a duty to investigate the fire loss, any entrance onto

6    the property by Paul Davis that involved investigating the loss at Allstate's behest cannot

7    be viewed as an invasion.  (MTD at 4.)  It further submits that Mr. Lindquist was under a

8    duty to cooperate with Allstate's investigation of the claim, and thus Paul Davis's actions

9    at 6920 Fisher Road, which were a part of Allstate's investigation, cannot be viewed as

10    an invasion of the property.  (*Id.* at 4-5, 7 (arguing Mr. Lindquist "cannot sustain a

11    trespass claim against Paul Davis where Paul Davis was merely Allstate's contractor that

12    made the investigation site safe for investigators and acted at Allstate's express

13    direction").)

14       But Mr. Lindquist has alleged that Paul Davis entered his property, installed new

15    locks on the gate, and conducted extensive unauthorized demolition on the property.

16    (Answer ¶¶ 77-84, 104.)  Even if Paul Davis were on Mr. Lindquist's property for the

17    valid purpose of investigating a loss, Mr. Lindquist has alleged sufficient facts to draw a

18    reasonable inference that Paul Davis exceeded the scope of any valid purpose for being

19    on the property.  (*See Torre v. City of Renton*, 164 F. Supp. 3d 1275, 1285 (W.D. Wash.

20    2016) ("Under Washington law, a person commits a trespass if he intentionally enters the

21    property of another without sufficient privilege or if his actions on the property exceed

22    the scope of that privilege.").)  Mr. Lindquist also pleads sufficient facts to overcome

1   Paul Davis's agency defense at this stage in the proceeding.  He asserts that Paul Davis

2   knew that Mr. Lindquist was the owner of 6920 Fisher Road and planned various

3   demolition activities at the property without his consent.  (Answer ¶¶ 98, 104).  Paul

4   Davis presents no case law in which courts have dismissed a claim with similar

5   allegations at this stage in the proceedings based on an agency theory (*see generally*

6   MTD), and the court concludes that Mr. Lindquist's third-party complaint pleads

7   sufficient facts to support an inference that Paul Davis invaded his exclusive possession

8   of the property at 6920 Fisher Road.

9       Second, Mr. Lindquist has sufficiently pleaded that he suffered harm as a result of

10  Paul Davis's invasion.  He alleges that Paul Davis's actions resulted in substantial

11  damages resulting from "among other things . . . alter[ing] the condition of the property

12  and . . . destroy[ing] and/or remov[ing] evidence from the property relevant to [Mr.]

13  Lindquist's ability to support his claim for coverage under the policy." (Answer ¶ 195.)

14  Paul Davis argues that Mr. Lindquist has failed to sufficiently plead that its actions

15  impacted Mr. Lindquist's ability to support his claim for coverage.  (*See* MTD at 6.)  But

16  even accepting this as true,  Paul Davis ignores that Mr. Lindquist asserts harm beyond

17  just the alleged destruction or removal of evidence relevant to Mr. Lindquist's insurance

18  dispute.  (*Id*.)  The court concludes Mr. Lindquist has pleaded sufficient facts to support

19  an inference that Paul Davis's actions on his property resulted in harm.

20      Third, the court cannot find, based on its review of the pleadings, that Mr.

21  Lindquist waived his claim of trespass.  Paul Davis argues that because Mr. Lindquist

22  saw Paul Davis's equipment and personnel on his property, but did not attempt to ask

1    Paul Davis or Allstate to stop their activity on the property, he has waived any claim of

2    trespass.  (MTD at 5 (citing *Salyers v. Metropolitan Life Ins. Co.*, 871 F.3d 934, 938 (9th

3    Cir. 2017) (discussing waiver doctrine in ERISA cases)).)  But as Paul Davis argues

4    elsewhere in its motion, before the alleged demolition occurred on the property, Mr.

5    Lindquist only had reason to believe Paul Davis was a part of a required post-loss

6    investigation that would not involve any demolition or removal of property.  (*See* MTD at

7    4.)  Accordingly, at this stage in the proceedings, the court does not conclude that Mr.

8    Lindquist waived his claim for trespass.

9         In sum, the court finds that Mr. Lindquist has pleaded sufficient facts to support

10   the reasonable inference that Paul Davis is liable for trespass.  Paul Davis's motion to

11   dismiss is DENIED.

12   **B.    Motion for Partial Summary Judgment**

13        Allstate's motion presents a narrow question of judicial estoppel.  Allstate seeks to

14   estop Mr. Lindquist from seeking damages of over $4,700 for the loss of personal

15   property during the fire at 6920 Fisher Road based on representations that Mr. Lindquist

16   made in his Personal Property Schedule in a 2013 bankruptcy proceeding.  (MSJ at 1.)

17   The court first addresses the parties' motions to strike before laying out the legal standard

18   for summary judgment and turning to the merits of Allstate's motion.

19        1.  Motions to Strike

20        Allstate and Mr. Lindquist both present motions to strike related to Allstate's

21   motion for partial summary judgment.  (MSJ Reply at 6-7; MSJ Resp. at 6)  The court

22

1    DENIES Allstate's motion to strike and GRANTS in part and DENIES in part Mr.

2    Lindquist's motion to strike.

3              a.   *Allstate's Motion to Strike*

4              Allstate moves to strike the declarations of Craig Sternberg and Roger Howson on

5    the basis that they contain "(1) inadmissible legal conclusions or opinions on ultimate

6    issues; and (2) are attempts to surreptitiously interject as-yet unqualified expert opinions

7    into the record."  (MSJ Reply at 6 (citing Fed. R. Civ. P. 56(c)(2, 4)).)  Mr. Lindquist

8    argues that the declarations of Mr. Howson, Mr. Lindquist's personal property inventory

9    expert in this insurance dispute, and Mr. Sternberg, Mr. Lindquist's counsel during his

10   2013 bankruptcy proceeding, properly provide evidence rebutting Allstate's arguments

11   for judicial estoppel.  (*See* MSJ Surreply at 1-3.)  The court agrees with Mr. Lindquist.

12             Allstate's motion to strike is not well taken.  Allstate filed its motion for partial

13   summary judgment less than a month after it filed its complaint.  (*See* Dkt.)  Expert

14   witness disclosures are not due until February 16, 2022, and the dispositive motions

15   deadline in this matter is May 17, 2022.  (Sched. Order (Dkt. # 30).)  The court previously

16   delayed ruling on this motion because "Mr. Lindquist is entitled to present evidence

17   regarding the valuation methodologies, the effect of the passage of time on the valuation

18   analyses, and what property was included in each valuation."  (12/3/20 Order at 5.)  Mr.

19   Lindquist now offers, for the purpose of resolving this motion for partial summary

20   judgment, the declarations of two individuals who not only are experienced in these

21   valuations generally, but were actually involved in the two valuation processes that form

22   the basis for Allstate's judicial estoppel argument.  (*See generally* Sternberg Decl.;

ORDER - 11

1   Howson Decl.)  It is precisely this type of evidence that the court previously determined

2   Mr. Lindquist was entitled to present, and, as described below, Allstate's objections are

3   without merit.

4          Allstate first contends that the declarations of Mr. Sternberg and Mr. Howson

5   "surreptitiously offer opinions on an ultimate issue."  (*Id.*)  But Allstate does not make

6   clear what ultimate issue it believes these declarations seek to embrace.  (*See id.* at 6-7.)

7   As best the court can tell, Allstate's motion to strike is based on both declarations

8   offering allegedly improper opinions "about what valuation method must be used to

9   evaluate property losses in the context of insurance claims."  (*See id.*)  But Allstate's own

10  surreply concedes that any such opinion is "implicit[]."  (MTS Surreply at 4.)  Allstate's

11  motion for summary judgment asks the court to determine if two valuations are "clearly

12  inconsistent."  *See infra* § III.B.3.a.  The court reads the declarations as offering

13  testimony about how Mr. Lindquist's assets were valued in two different settings, not

14  about whether a legal standard has been met or judicial estoppel should apply.  (*See*

15  *generally* Sternberg Decl.; Howson Decl.)  This is not opining on an ultimate issue.[4]

16         Allstate also offers a one-sentence argument that Mr. Sternberg and Mr. Howson's

17  declarations should be excluded because they offer improper expert opinions.  (*See* MSJ

18

19

20         [4] Further, Allstate does not attempt to explain why the declarations would be
objectionable even if they discussed an ultimate issue.  (*See* MSJ Reply); Fed. R. Evid. 704 ("An
opinion is not objectionable just because it embraces an ultimate issue."); *see also Donelson v.
Providence Health & Servs.-Wash.*, 823 F. Supp. 2d 1179, 1193 (E.D. Wash. 2011) ("[A]n
expert may offer his opinion as to facts that, if found, would support a conclusion that the legal
standard at issue was satisfied, but he may not testify as to whether the legal standard has been
satisfied.").

21

22

1   Reply at 6-7; *but see* MTS Surreply (not discussing expert witness argument).)  Mr.

2   Sternberg and Mr. Howson primarily attest to how they performed the valuations in Mr.

3   Lindquist's bankruptcy proceeding and insurance claim respectively.  (*See generally*

4   Sternberg Decl.; Howson Decl.)  Both declarations go slightly beyond what occurred in

5   those particular valuations and opine more generally on valuation methodologies to

6   explain the valuations in Mr. Lindquist's two proceedings.  (*See* Sternberg Decl. ¶ 7

7   (describing liquidation valuation in bankruptcy proceedings); Howson Decl. ¶ 12

8   (discussing liquidation valuation versus market valuation).)  Mr. Sternberg has decades of

9   experience practicing creditor/debtor law, and Mr. Howson has worked in insurance

10  adjustment for over 40 years.  (Sternberg Decl. ¶ 2; Howson Decl. ¶ 2, Ex. A.)  The court

11  finds that their opinions about valuations in their respective fields are based on sufficient

12  specialized knowledge and facts, and are the product of reliable principles that have been

13  reliably applied in this case.  *See* Fed. R. Evid. 702.   Thus, for the limited purposes of

14  this summary judgment motion, the court concludes that Mr. Sternberg and Mr.

15  Howson's statements in their declarations regarding valuation methods for property in

16  bankruptcy and insurance processes is both reliable and relevant, and complies with the

17  requirements of Federal Rule of Civil Procedure 56(c)(4).  The court DENIES Allstate's

18  motion to strike the declarations of Mr. Sternberg and Mr. Howson.

19          b.  *Mr. Lindquist's Motion to Strike*

20          Mr. Lindquist moves to strike "conclusory allegations" in Allstate's motion for

21  summary judgment that are related to Allstate's knowledge about the occupancy of Mr.

22  Lindquist's home and Mr. Lindquist's obligations to report vandalism or protect personal

property.  (MSJ Resp. at 8 (moving to strike MSJ at 2:3-7, 11-13, 16-17, 3:4-7).)  For all but one of the allegations Mr. Lindquist moves to strike, Allstate cites only its own complaint in support.  (*See* MSJ at 2:3-6, 11-13, 16-17, 3:4-7; *but see id.* at 2:6-7 (citing Lindquist EUO).)  Allstate does not respond to Mr. Lindquist's motion to strike.  (*See generally* MSJ Reply; MTS Surreply.)

Summary judgment requires the moving party to present evidence that, if uncontroverted at trial, would entitle it to prevail as a matter of law on an issue.  *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1473 (9th Cir. 1994).  "[A party]'s assertions in its pleadings are not evidence."  *United States v. Zermeno*, 66 F.3d 1058, 1062 (9th Cir. 1995).  Thus, Mr. Lindquist's motion to strike is GRANTED for the portions of Allstate's summary judgment motion that rely solely on assertions made in Allstate's complaint.  Mr. Lindquist's motion to strike is DENIED to the extent it moves to strike portions that rely on Mr. Lindquist's examination under oath, which Allstate properly filed as a declaration in support of its motion.  (*See* Lindquist EOU.)

2. <u>Legal Standard</u>

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden to show there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party will bear the ultimate

burden of persuasion at trial, it must establish a *prima facie* showing in support of its

position on that issue. *UA Local 343*, at 1471.  That is, the moving party must present

evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. *Id*. at

1473.  If the moving party meets his or her burden, then the non-moving party "must

make a showing sufficient to establish a genuine dispute of material fact regarding the

existence of the essential elements of his case that he must prove at trial" to withstand

summary judgment.[5]  *Galen*, 477 F.3d at 658.

### 3.  Judicial Estoppel

Judicial estoppel is an "equitable doctrine invoked by a court at its discretion."

*New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *Russell v. Rolfs*, 893 F.2d

1033, 1037 (9th Cir. 1990)) (internal quotation marks omitted).  Courts invoke judicial

estoppel "to prevent a party from gaining an advantage by taking inconsistent positions"

and to "protect against a litigant playing fast and loose with the courts." *Hamilton v.*

*State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (quoting *Russell*, 893

F.2d at 1037) (internal quotations omitted).  The court considers three factors in

determining whether to apply the doctrine:  (1) whether the party's later position is

"clearly inconsistent" with its earlier position; (2) whether the party succeeded in

persuading a court to accept the earlier position and the court's acceptance of the later

---

[5] The same standard and procedural rules apply to motions for partial summary judgment. *See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 768 (9th Cir. 1981) (noting that, on a motion for partial summary judgment "the moving party has the burden of showing that there is no genuine issue as to any material fact and that he is entitled to a partial summary judgment as a matter of law").

1   position would lead to the perception that the party misled either court; and (3) whether

2   "the party seeking to assert an inconsistent position would derive an unfair advantage or

3   impose an unfair detriment on the opposing party if not estopped."  *See New Hampshire*,

4   532 U.S. at 750-51 (citations omitted).  The court addresses each of these factors in turn.

5           *a.  Inconsistent Position*

6           Allstate argues that Mr. Lindquist's inconsistent positions are straightforward:  in

7   his 2013 Personal Property Schedule, Mr. Lindquist claimed $4,700 in property at 6920

8   Fisher Road, but in this case he is claiming $917,818.85 for personal property loss as a

9   result of the 2019 fire.  (MSJ at 1.)  Mr. Lindquist responds that the values are not

10  "clearly inconsistent" because they involve different inventory standards and different

11  valuation methods.  (MSJ Resp. at 10.)

12          This court has previously concluded that, in the context of comparing bankruptcy

13  personal property valuations and valuations in insurance claims, a finding of "clearly

14  inconsistent positions requires more than a threshold inconsistency."  *Naxos, LLC v. Am.*

15  *Family Ins. Co.*, 611 B.R. 358, 364 (W.D. Wash. 2019) (citations and quotations

16  omitted).  In *Naxos*, the plaintiff insurance company moved for partial summary

17  judgment by judicial estoppel after the insured claimed $6,300 in a bankruptcy personal

18  property schedule, but $261,009.89 in business personal property at the same location in

19  an insurance dispute a year later.  *Id*.  This court concluded that the discrepancy in the

20  amounts established only a threshold inconsistency and, without more detail about the

21  valuations, left the court "wondering if comparing the Personal Property Schedule to the

22  appraisal award is an apples-to-apples comparison."  *Id*.  This court noted that it does not

ORDER - 16

1   condone the practice of undervaluing property in a bankruptcy proceeding only to value

2   that property significantly more in an insurance dispute.  *Id*. at 365 (collecting cases).

3   But the court also concluded that the insurer had failed to meet its burden for summary

4   judgment because it had failed to submit any evidence that the valuations used the same

5   methodology, covered the same property, and had not been affected by intervening

6   circumstances between the bankruptcy and the insurance dispute.  *Id*.

7          Allstate contends that *Naxos* is distinguishable based on the size and nature of the

8   discrepancy in valuations, as well as evidence that Mr. Lindquist's property had lowered

9   in value since the bankruptcy proceeding.[6]  (MSJ Reply at 5.)  But while the discrepancy

10  in values is larger here than in *Naxos*, that does not change the fact that Allstate has not

11  provided evidence that this is an apples-to-apples comparison.  As with the movant in

12  *Naxos*, Allstate points to the difference in the results of the two valuations, but provides

13  no arguments, or evidence to support them, that the valuations should be viewed as the

14  result of the same valuation methodology.  (*See* MSJ at 7-8 (failing to discuss potential

15  differences in valuation methodologies).)[7]  While Allstate presents no evidence

16  confirming the valuations methodologies should be viewed as parallel, Mr. Lindquist

17  provides declarations supporting the contention that they should be viewed differently.

18  _____

19       [6] Allstate also argues that *Naxos* is not binding on this court.  (MSJ Reply at 5.)  While
     this is technically true, this court believes it was correct when it denied summary judgment in

20  *Naxos*.

21       [7] The failure to present evidence negating different valuation methodologies is all the
     more relevant because Allstate seeks to judicially estop Mr. Lindquist from claiming *any* value
     higher than what he claimed in his bankruptcy proceedings, not just the $917,818.85 he asserted
     in his Proof of Loss.  (MSJ at 1; MSJ Reply at 7.)  Thus, Allstate has shouldered the burden of

22  demonstrating that any value over $4,700 is clearly inconsistent with the bankruptcy valuation.

1    (*Compare* Sternberg Decl. ¶¶ 6-7, *with* Howson Decl. ¶¶ 5-9 (describing Personal

2    Property Schedule as a result of liquidation valuation and Proof of Loss as a result of

3    assessing retail value of property).)  Viewed in the light most favorable to Mr. Lindquist,

4    the evidence points to the two values being the result of different methodologies, rather

5    than being "clearly inconsistent."

6          The court is similarly unconvinced by Allstate's argument that the property must

7    have been less valuable due to break-ins and vandalism between the bankruptcy and the

8    fire.  The vast majority of the "evidence" that Allstate cites for the diminishment of value

9    comes from its own complaint.  (*See* MSJ at 2-3; *see also* MSJ Reply at 5 (citing no

10   evidence); *supra* § III.B.1.b (explaining that pleadings are not evidence).)  Looking at

11   actual evidence before the court, Mr. Lindquist refers to break-ins occurring at 6920

12   Fisher Road in his examination under oath, but he also states that he caught the intruders

13   and had them arrested, and that there were no damages from these break-ins.  (Lindquist

14   EUO at 50:7-20.)  Viewed in the light most favorable to Mr. Lindquist, the evidence does

15   not suggest a diminishment in value between the 2013 bankruptcy and 2019 fire that

16   would distinguish this case from *Naxos*.  The court concludes that Allstate has not

17   demonstrated a clear inconsistency, and this factor weighs against judicial estoppel.

18              b.  *Judicial Acceptance*

19          The second factor courts consider in determining whether judicial estoppel is

20   appropriate asks whether the first court adopted the party's allegedly inconsistent position

21   and, as such, was misled.  *See New Hampshire*, 532 U.S. at 750.  In the bankruptcy

22   context, the Ninth Circuit has noted that "[a] bankruptcy court may 'accept' the debtor's

1   assertions" in a number of ways, including confirming the plan of reorganization.  *See*

2   *Hamilton*, 270 F.3d at 784 (collecting cases).  But the *Hamilton* court also noted that the

3   key for judicial acceptance is whether the bankruptcy court "rel[ied] on the debtor's

4   nondisclosure."  *See id.*; *see also Interstate Fire & Cas. Co. v. Underwriters at Lloyd's,*

5   *London*, 139 F.3d 1234, 1239 (9th Cir. 1998), *as amended* (May 13, 1998) ("A majority

6   of courts apply judicial estoppel only if the court has relied on the party's previously

7   inconsistent statement, and we have recently adopted that rule.").

8          For this factor, Allstate argues that the bankruptcy court was misled because when

9   Mr. Lindquist submitted his Personal Property Schedule to the bankruptcy court he

10  "materially undervalued this asset when compared to the allege [sic] value he stated in his

11  sworn statement to Allstate" and the bankruptcy court confirmed Mr. Lindquist's plan.

12  (MSJ at 10.)  In other words, Allstate argues that the bankruptcy court must have been

13  misled because Mr. Lindquist made misleading arguments.  Not only is Allstate's

14  argument circular—assuming that Mr. Lindquist made misleading statements to prove the

15  court was misled—it is misguided.  Even if the court assumes that Mr. Lindquist made

16  misleading statements, that does not mean the bankruptcy court adopted or relied on

17  those statements and was thus misled by them.  Allstate has presented no evidence or

18  arguments that the bankruptcy court relied on, or even considered, Mr. Lindquist's

19  Personal Property Schedule when confirming his plan and entering a final decree in his

20  bankruptcy case.  (*See generally* MSJ.)  Mr. Lindquist, on the other hand, provides the

21  court with the bankruptcy court's reorganization plans and approved settlements, none of

22  which demonstrate a reliance on Mr. Lindquist's Personal Property Schedule.  (*See*

1    Knudsen Decl. ¶¶ 4-6, Exs. C-E.)  Accordingly, the court finds that Allstate failed to

2    carry its burden on this factor.

3          c.   *Unfair Advantage*

4          The third judicial estoppel factor asks whether the party asserting an inconsistent

5    position would receive an "unfair advantage or impose an unfair detriment on the

6    opposing party if not estopped."  *See New Hampshire*, 532 U.S. at 751.  Allstate argues

7    that Mr. Lindquist Personal Property Schedule gave Mr. Lindquist an unfair advantage

8    and created a detriment to his creditors because he was able to hide value from his

9    creditors.  (MSJ at 11.)  This, in turn, creates a detriment for Allstate, because it may be

10   forced to pay Mr. Lindquist for the value of these assets.  (*Id.*)  But Allstate provides no

11   evidence that Mr. Lindquist would have had to give up more in the restructuring of his

12   property if his Personal Property Schedule had been valued differently.  (*See generally*

13   MSJ.)  Mr. Lindquist, on the other hand, has provided evidence that his reorganization

14   plan used other secured assets to satisfy his debt, and the trustee never asked for detailed

15   information about his personal property.  (Sternberg Decl. ¶¶ 4-6.)  Taken in the light

16   most favorable to Mr. Lindquist, the evidence does not support Allstate's contention that

17   Mr. Lindquist's allegedly inconsistent valuation has resulted in an unfair advantage or

18   detriment.  This factor weighs against Allstate.

19         In sum, the court finds that all three estoppel factors weigh against granting

20   Allstate's motion for partial summary judgment.  The court reiterates that all parties

21   should strive for full and frank disclosure in their bankruptcy filings.  But Allstate

22   brought this motion and bears the burden to establish there are no material disputes of

1    fact and that it is entitled to summary judgment as a matter of law.  Allstate has not met

2    that burden.  Thus, its motion for partial summary judgment is DENIED.

3                        **IV.    CONCLUSION**

4            For the reasons set forth above, the court DENIES Paul Davis's motion to dismiss

5    (Dkt. # 39) and DENIES Allstate's motion for partial summary judgment (Dkt. # 8).

6

7            Dated this 5th day of March, 2021.

8

9

10                                           JAMES L. ROBART
                                             United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22