UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALLSTATE INDEMNITY COMPANY, | CASE NO. C20-1508JLR |
| Plaintiff, | ORDER |
| v. | |
| RANDY LINDQUIST, | |
| Defendant. | |

## I.    INTRODUCTION

Before the court are:  (1) Plaintiff Allstate Indemnity Company's ("Allstate")

motion for partial summary judgment (MSJ (Dkt. # 71); MSJ Reply (Dkt. # 105)), and

Defendant Randy Lindquist's opposition thereto (MSJ Resp. (Dkt. # 103)); and (2)

Allstate's motion to strike certain references to deposition testimony given by Allstate

witnesses (*see* MSJ Reply at 9-13).  The court has considered the parties' submissions,

//

1  the relevant portions of the record, and the applicable law.  Being fully advised,[1] the court

2  DENIES Allstate's motion to strike and DENIES its motion for partial summary

3  judgment.

4  ## II.    BACKGROUND

5          This case stems from a fire that burned down Mr. Lindquist's house at 6920 Fisher

6  Road in Edmonds, WA (the "Fisher Road House") on December 25, 2019.  (Compl.

7  (Dkt. # 1) ¶¶ 3.12.)  Allstate issued a homeowner's insurance policy for the Fisher Road

8  House (the "Insurance Policy" or the "Policy") in 2004 and renewed the Policy on an

9  annual basis thereafter.  (*See* 10/25/21 Ruiz Decl. (Dkt. # 104) ¶ 2, Ex. A ("Grondahl

10  Depo. Tr.") at 22-23.[2])  The Policy provides dwelling protection with limits of

11  $3,311,872, other structures protection with limits of $331,188, and personal property

12  protection with limits of $2,483,904.  (11/30/20 Knudsen Decl. (Dkt. # 19) ¶ 2, Ex. A

13  (the "Insurance Policy" or the "Policy") at 7.)

14          Relevant to this case, Allstate may void the Policy "if it was obtained by" Mr.

15  Lindquist through intentional concealment, fraud, or misrepresentation of "any material

16  fact or circumstance that exist[ed] at the time of a loss."  (Insurance Policy at 20.)

17  Allstate may also deny Mr. Lindquist coverage under the Policy for "any loss or

18  occurrence in which any insured person has concealed or misrepresented any material

19

20          [1] Neither party requests oral argument (*see* MSJ at 1; MSJ Resp. at 1), and the court
   concludes that oral argument would not be helpful to its disposition of the motion.  *See* Local
21  Rules W.D. Wash. LCR 7(b)(4).

          [2] Unless otherwise indicated, the court uses the CM/ECF page numbers when citing to
22  the parties' exhibits.

1    fact or circumstance that exist[ed] at the time of the loss or occurrence." (*Id.*)  Mr.

2    Lindquist is further obligated, "[i]n the event of a loss to any property that may be

3    covered by this [P]olicy," to "promptly give [Allstate] or [Allstate's] agent notice";

4    "[r]eport any theft to the police as soon as possible"; "protect the property from further

5    loss," including by "[m]ak[ing] any reasonable repairs necessary to protect it" and

6    "keep[ing] any accurate record of any repair expenses"; "separate damaged from

7    undamaged personal property"; and provid[e] Allstate with "a detailed list of the

8    damaged, destroyed or stolen property, showing the quantity cost, actual cash value and

9    the amount of loss claimed." (*Id.* at 33.)

10       Mr. Lindquist filed a voluntary petition for chapter 11 bankruptcy on July 6, 2012.

11   (11/30/21 Knudsen Decl. ¶ 6, Ex. E at 101.)  During that proceeding, he submitted a

12   schedule documenting the personal property stored at the Fisher Road House and

13   estimating its collective liquidation value to be $4,700.  (11/12/20 Leid Decl. (Dkt. # 9)

14   ¶ 3, Ex. A at 1, 3.)  While the bankruptcy proceeding was ongoing, and owing to "the

15   expense of the house," Mr. Lindquist moved from the Fisher Road House in 2013 and

16   began residing at another home he owned.  (*See* 11/12/20 Leid Decl. ¶ 5, Ex. C

17   ("Lindquist EOU")[3] at 10, 28:13-17, 31.)

18       After moving out, Mr. Lindquist removed various items from the Fisher Road

19   House, including "miscellaneous art, clothing, vases, . . . [plant] pots," approximately two

20   televisions, bedding and linens, kitchen items, some exercise equipment, and other "small

21

22       [3] The court refers to the transcript pagination when citing to Mr. Lindquist's examination
     under oath ("EOU").

1  items that weren't custom-built to the house." (*See id.* at 32-33.)  The home was not

2  empty, however, and Mr. Lindquist kept some furniture there, including beds, exercise

3  equipment for his home gym, and other small home goods. (*See id.* at 32-34.)  Mr.

4  Lindquist also continued to keep several horses at the Fisher Road House, which he

5  visited "daily." (*Id.* at 35.)

6       During the period in which Allstate insured the Fisher Road House, the property

7  suffered repeated incidents of trespass, burglary, and vandalism. (*See id.* at 36; 8/12/21

8  Argiannis Decl. (Dkt. # 72) ¶ 5, Ex. C (Snohomish County Sherriff's incident reports).)

9  Mr. Lindquist estimates that there were approximately 15 break-ins and several acts of

10 vandalism. (Lindquist EOU at 36.)  Allstate estimates the number to be somewhat

11 higher, based on the number of times officers from the Snohomish County Sherriff's

12 Department responded to calls of suspicious or potential criminal activity on the property.

13 (8/12/21 Argiannis Decl. ¶ 5, Ex. C (compiling Snohomish County Sherriff's Department

14 incident reports).)  These incidents of trespass, burglary, and vandalism resulted in

15 damage to, among other things, windows, fixtures, furniture, a stairwell, and a wall,

16 although Mr. Lindquist contends that he often caught intruders, preventing them from

17 doing substantial damage to the home. (Lindquist EOU at 45:19-22, 50-55.)

18      However, Mr. Lindquist also estimated in a statement to police officers in August

19 2013 that, since he had moved from the home earlier that year, "nearly $400,000" in

20 damage had already been done to the home. (8/12/21 Argiannis Decl. ¶ 6, Ex. D at 8.)

21 And for just three incidents of theft and vandalism in 2018 and 2019, Mr. Lindquist

22 guessed that more than $100,000 worth of additional damage had been done to the home.

1   (*See* 8/12/21 Argiannis Decl. ¶ 3(m), Ex. C-13 at 11; *id.* ¶ 3(q), Ex. C-17 at 71; *id.* ¶ 3(t),

2   Ex. C-20 at 16.)  Mr. Lindquist made no repairs to the home following these break-ins

3   and submitted a claim for vandalism-related damage to Allstate only once, in 2013.

4   (Lindquist EOU at 46:12-15, 50:7-9.)

5        On December 25, 2019, a fire severely damaged the Fisher Road House and

6   completely destroyed the contents inside the home.  (*See* 11/12/20 Leid Decl. ¶ 4, Ex. B

7   at 5-7.)  On August 12, 2020, Mr. Lindquist filed a claim for benefits with Allstate,

8   seeking coverage in the amount of the policy limit for the dwelling and other structures

9   protection and $917,818.85 for personal property loss.  (*Id.*)

10   ### III.   ANALYSIS

11        Allstate now moves for partial summary judgment on the theory that Mr.

12   Lindquist has voided the Policy by (1) misrepresenting and concealing material facts to

13   Allstate, and (2) not cooperating in the investigation of the 2019 fire loss claim by failing

14   to report past losses on the property to Allstate.  (MSJ at 1.)  Allstate further asks the

15   court to strike certain references to deposition testimony given by Allstate witnesses.

16   (*See* MSJ Reply at 9-13).  The court begins by considering Allstate's motion to strike.  It

17   then turns to set forth the standard of review for summary judgment before analyzing

18   Allstate's arguments that Mr. Lindquist voided the Policy through his misrepresentations

19   and acts of concealment.  Last, the court considers whether Mr. Lindquist has voided the

20   Policy by failing to cooperate with Allstate in the investigation of the 2019 fire loss

21   claim.

22   *//*

1    **A.      Allstate's Motion to Strike**

2            Included in Allstate's reply brief is a motion to strike certain references to

3    deposition testimony given by Allstate witnesses.  (MSJ Reply at 9-13.)  Specifically,

4    Allstate asserts that Mr. Lindquist has "attempted to misrepresent testimony by"

5    Allstate's 30(b)(6)-designated witnesses "in an attempt to defeat Allstate's motion for

6    summary judgment" and asks the court to strike "[t]hese references . . . from the record as

7    inappropriate[.]"  (*Id.* at 13.)  However, Allstate cites to only one specific example of Mr.

8    Lindquist using deposition testimony in an inappropriate manner, found in his initial

9    response to Allstate's motion for partial summary judgment.  (*Id.* at 12 (citing 8/30/21

10   Resp. (Dkt. # 79) at 3:13-14).)  That response brief, and the passage that Allstate asks the

11   court to strike, has been withdrawn and replaced by Mr. Lindquist's amended response.

12   (*See* MSJ Resp. at 1 (withdrawing Dkt. # 79)).  The court does not rely on any of the

13   offending deposition testimony in its discussion below, *see generally infra*, and Allstate

14   does not identify any other "references" for the court to strike (*see* MSJ Reply at 13).

15           Motions to strike filings that have been withdrawn or that fail to identify the

16   content the court is asked to strike are not well taken.  *See PNC Equip. Fin., LLC v.*

17   *California Fairs Fin. Auth.*, No. 2:11-CV-02019-GEB, 2012 WL 2872813, at *8 (E.D.

18   Cal. July 12, 2012) (denying motion to strike as moot where the subject filing had been

19   withdrawn); *McGorray v. O'Connor*, 87 F. 586 (9th Cir. 1898) (holding that a motion to

20   strike must be denied when the moving party fails to identify the portions of a filing to be

21   stricken).

22   *//*

1    Allstate speculates, without any supporting evidence, that Mr. Lindquist withdrew

2    his prior brief "to prevent this [c]ourt from reviewing the prior misrepresentations." (*Id.*

3    at 13 n.3.)  The court is particularly disinclined to take this unsupported charge seriously

4    given that it specifically invited Mr. Lindquist to "file a new response to Allstate's

5    summary judgment motion." (*See* 9/13/21 Order (Dkt. # 90) at 6.)

6    Because the only content Allstate specifically asks the court to strike has been

7    withdrawn, the motion to strike is DENIED as moot.

8    **B.    Summary Judgment Standard**

9    Summary judgment is appropriate if the evidence, when viewed in the light most

10   favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

11   any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

12   P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute is "genuine"

13   if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

14   party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material"

15   if it "might affect the outcome of the suit under the governing law." *Id.*

16   The moving party bears the initial burden of showing that there is no genuine

17   dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477

18   U.S. at 323.  If the moving party meets its burden of production, the burden then shifts to

19   the nonmoving party to identify specific facts from which a factfinder could reasonably

20   find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at

21   250.

22   *//*

1    **C.     Allstate's Partial Summary Judgment Motion**

2           Allstate argues that Mr. Lindquist has voided the Policy for four reasons.  It argues

3    that Mr. Lindquist concealed and misrepresented (1) that the Fisher Road House was

4    abandoned or vacated in 2013; (2) that it was repeatedly vandalized thereafter; and (3) the

5    value of personal property destroyed in the fire.  (MSJ at 11-14.)  Allstate also contends

6    that (4) Mr. Lindquist failed to cooperate with Allstate during the course of the

7    investigation of the 2019 fire loss claim.  (*Id.* at 15-16.)  The court describes the law

8    governing misrepresentation before turning to Allstate's arguments that Mr. Lindquist

9    misrepresented or concealed material facts.  It then considers whether Mr. Lindquist

10   failed to cooperate with Allstate in the investigation of the claim.

11          1.     Misrepresentation Under Washington Law

12          Allstate may void the Policy if it was "obtained" through fraud or

13   misrepresentation and may decline coverage for "any loss or occurrence in which an

14   insured has concealed or misrepresented any material fact or circumstance that exist[ed]

15   at the time of the loss of occurrence."  (Insurance Policy at 20.)  Washington courts "have

16   long upheld" such provisions and will enforce them regardless of whether the insurance

17   company has suffered actual prejudice from the misrepresentation.  *Reverse Now VII,*

18   *LLC v. Oregon Mut. Ins. Co.*, 341 F. Supp. 3d 1233, 1237 (W.D. Wash. 2018).  A single

19   "material misrepresentation" is sufficient "to void all coverage under the entire policy."

20   *Id.* (quoting *Ki Sin Kim v. Allstate Ins. Co.*, 223 P.3d 1180, 1188 (Wash. App. 2009), *as*

21   *amended* (Jan. 6, 2010)).

22   *//*

A misrepresentation is material if, "from the standpoint of the insurer," *Kim*, 223 P.3d at 1188, "it involves a fact that is relevant to the claim or the investigation of a claim," *Reverse Now*, 341 F. Supp. 3d at 1237 (quoting *Onyon v. Truck Ins. Exch.*, 859 F. Supp. 1338, 1341 (W.D. Wash. 1994)).  Materiality thus presents a "mixed question of law and fact," although one which courts may resolve as a matter of law "if reasonable minds could not differ on the question" of whether a fact is material.  *Id.* (citation omitted).

"In addition to proving materiality, the insurer must also demonstrate that the insured knowingly made the misrepresentation."  *Id.* (citing *Kay v. Occidental Life Ins. Co.*, 183 P.2d 181 (Wash. 1947)).  "Where an insured knowingly makes a false or misleading statement, courts will presume that the insured intended to deceive the insurance company, and the burden shifts to the insured to establish an honest motive or innocent intent."  *Id.*

2.    The Occupancy Status of the Fisher Road House

Allstate first contends that Mr. Lindquist's misrepresented or concealed facts concerning the occupancy status of the Fisher Road House by failing to disclose that he either "abandoned" or "vacated" the property in 2013, as the Policy requires.  (*Id.* at 11-12.)  The Policy makes clear that Allstate is "not obligated to accept any . . . responsibility for any property abandoned by an insured person" and obligates Mr. Lindquist to notify Allstate "of any change in title, use or occupancy of the residence premises."  (Insurance Policy at 18, 36.)  Mr. Lindquist admits that he moved from the Fisher Road House in 2013 (Lindquist EOU at 31:19-25), so the questions before the

1    court are whether Allstate has met its burden to show that, by moving from the property,

2    (1) Mr. Lindquist "abandoned" it and/or failed to inform Allstate of his change in use and

3    occupancy and, if so, (2) whether his failure to inform Allstate constituted a material

4    misrepresentation sufficient to void the Policy.

5         "Abandon" is not defined in the policy (*see* Insurance Policy at 36) and the parties

6    urge the court to adopt separate tests to determine the meaning.  (MSJ at 11; MSJ Resp.

7    at 5.)  Allstate claims abandonment is shown by "(a) [a]n intention to abandon; and (b) an

8    overt act, or failure to act, which carries the implication that the owner does not claim or

9    retain any interest in the [property] right."  (*See* MSJ at 11.)  Mr. Lindquist would define

10   "abandon" as "giv[ing] up with the intent of never again claiming a right or interest in."

11   (*See* MSJ Resp. at 5 (quoting *Abandon*, Merriam-Webster, https://www.merriam-

12   webster.com/dictionary/abandon (last visited Oct. 25, 2021)).)  The court need not

13   choose between these tests because under either one Allstate has failed to establish that

14   Mr. Lindquist abandoned the Fisher Road House as a matter of law.

15        The uncontroverted evidence shows that, while Mr. Lindquist ceased living at

16   the Fisher Road House in 2013, he continued to keep personal property there, including

17   his horses, which he "visited daily."  (*See* Lindquist EOU at 35:15-21; Grondahl Depo.

18   Tr. at 25:7-9.)  Moreover, while Mr. Lindquist apparently shut off the home's utilities

19   (Lindquist EOU at 47:23-48:12), he continued to insure the home (Ruiz Decl. ¶ 2, Ex. C

20   ("Follett Depo. Tr.") at 150:10-21), made certain improvements to the property

21   (Lindquist EOU at 115:1-2 (installation of exterior security cameras)), and contacted

22   the police in response to instances of trespass (*see* 8/12/21 Argiannis Decl. ¶ 5, Ex. C

1    (compiling incident reports)).  A reasonable jury could find from this evidence that Mr.

2    Lindquist did not "abandon" the Fisher Road House when he moved out.  Thus, Allstate

3    has failed to establish his abandonment as a matter of law.  *Anderson*, 477 U.S. at 248.

4    For the same reason, Allstate has failed to establish that Mr. Lindquist misrepresented or

5    concealed any "abandonment" of the home.

6          The next question is whether, even if Mr. Lindquist did not "abandon" the Fisher

7    Road House, he nevertheless failed to inform Allstate that he moved from the property

8    in 2013.  (*See* MSJ at 4 (citing Compl. ¶ 3.2).)  The evidence is cross-cutting.  On the

9    one hand, Allstate's agent, Third Party-Defendant Melody Grondahl, testified in her

10   deposition that Mr. Lindquist "made it very clear" that the Fisher Road House "was

11   occupied regularly."  (Grondahl Depo. Tr. at 25:11-12.)  On the other hand, Mr.

12   Lindquist testified in his EOU that he informed Ms. Grondahl in 2014 that he had moved

13   from the Fisher Road House.  (*See* Lindquist EOU at 39:9-40:14).  Indeed, the file

14   Allstate maintains for Mr. Lindquist's claim has an entry dated February 10, 2014, which

15   indicates that Ms. Grondahl advised the claim department "that [Mr. Lindquist] does not

16   live on property."  (8/30/21 Knudsen Decl. (Dkt. # 80) ¶ 6, Ex. E at 9.)

17         Allstate's only response is that, because Mr. Lindquist never pursued the 2013

18   vandalism claim to which the February 10, 2014 entry refers, it "was not able to conduct

19   a site inspection or view any of the alleged damages" and so "there is no direct evidence

20   in the record establishing that Allstate knew Mr. Lindquist was not living at the

21   property."  (*See* MSJ Reply at 4.)  Courts, however, routinely permit the use of indirect

22   evidence to show knowledge.  *See, e.g.*, *United States v. Thomas*, 729 F. App'x 532, 535

1  (9th Cir. 2018) ("No doubt circumstantial evidence can be relied upon to show

2  knowledge.").  And here, there is some circumstantial evidence that Ms. Grondahl would

3  have been aware of the Fisher Road House's vacancy.  For example, in Ms. Grondahl's

4  deposition, she was able to recall that Mr. Lindquist told her "numerous times" that "he

5  was boarding horses at the [Fisher Road] property" and "had to go down there every

6  day." (Grondahl Depo. Tr. at 25:7-9, 192:7-18.)  As Mr. Lindquist infers, there would be

7  no reason for him "to go down" to a home he was living in, so Ms. Grondahl must have

8  been aware he was not living at the Fisher Road House.  (*See* MSJ Resp. at 6.)  Mr.

9  Lindquist similarly argues that Ms. Grondahl's involvement in the sale of an

10  owner-occupant insurance policy for his home in Lake Forest Park shows she was aware

11  that he was living in Lake Forest Park and not on Fisher Road because, Mr. Lindquist

12  infers, she would not have sold him a policy of which he would have been in immediate

13  breach.  (*See* MSJ Resp. at 6 (citing Grondahl Depo. Tr. at 8:21-9:5, 13:22-14:16, 21:13-

14  16).)  Ms. Grondahl declined to draw this same conclusion in her deposition, however.

15  (*See* Grondahl Depo. Tr. at 17:6-18:24.)

16       Because Mr. Lindquist has offered evidence from which a reasonable jury could

17  find that Allstate knew he had moved from the Fisher Road House, the court finds that a

18  genuine dispute of material fact exists as to whether Allstate was aware of the change in

19  occupancy status.  For the same reason, Allstate has failed to establish, as a matter of law,

20  that Mr. Lindquist made a material misrepresentation about the home's occupancy status.

21  //

22  //

ORDER - 12

<u>3.</u>      <u>Vandalism and Burglaries at the Fisher Road House</u>

Allstate next argues that Mr. Lindquist concealed and misrepresented that the Fisher Road House was repeatedly vandalized between 2013 and 2019.  (*See* MSJ at 12-13; MSJ Reply at 3.)  Fatal to this argument, however, is Allstate's failure to identify a specific misrepresentation, act of concealment, or omission made in the course of the claim investigation.  (*See* MSJ at 2, 5, 12-13; MSJ Reply at 2-3.[4])

Untruthful affirmative statements and omissions of relevant facts can both constitute misrepresentations that are sufficient to void a policy.  *See Onyon*, 859 F. Supp. at 1341-42 (insured's failure to disclose past damage to a retaining wall in an EOU constituted a material misrepresentation).  Regardless of the form that the misrepresentation takes, the insurer must begin by identifying an offending statement, omission, or act of concealment in order to succeed on the argument.  *See Kay*, 183 P.2d at 182 (requiring that the misrepresentation be "knowingly made").

Here, Allstate argues that Mr. Lindquist had a duty to report damage to the property that might have been covered by the Policy and that Mr. Lindquist failed to do so despite voluminous law enforcement records showing his awareness of the periodic acts of vandalism that had damaged the Fisher Road House.  (*See* MSJ at 16.)  However, Allstate does not argue that Mr. Lindquist lied, omitted information, or otherwise sought

---

[4] Allstate does take issue with "[Mr.] Lindquist's assertion that 'few [break-in incidents] involved property'" as "inconsistent with his statements to law enforcement in 2013."  (*See* MSJ Reply at 3.)  However, Allstate neither addresses whether this discrepancy is the basis for its misrepresentation argument nor provides a citation for the quote, which the court has been unable to locate.  (*See id.*)  Accordingly, the court does not consider this as a specific basis for misrepresentation.

1    to hide or conceal facts about that past damage in the context of the 2019 fire claim

2    investigation.  (*See* MSJ at 2, 5, 12-13; MSJ Reply at 2-3.)  Indeed, the evidence shows

3    that Mr. Lindquist readily admitted that the home had been broken into numerous times.

4    (*See* Lindquist EOU at 35:22-24.)

5            Thus, Allstate has "fail[ed] to connect these prior" unreported incidents of

6    vandalism-related damage to Mr. Lindquist's "representations to [Allstate] during the

7    claim," and therefore has not established that a misrepresentation took place.  *Naxos, LLC*

8    *v. Am. Fam. Ins. Co.*, No. C18-1287JLR, 2020 WL 777260, at *15 (W.D. Wash. Feb. 18,

9    2020).  In *Naxos, LLC v. Am. Fam. Ins. Co.*, an insurer argued that the insured had

10   "misrepresented or concealed facts about prior sewage issues during the insurance

11   claim," as shown by "a number of code violations issued."  *Id.*  The insurer "summarily

12   conclude[d] that these code violations show[ed] that [the insurer] 'disregarded' the issues

13   the city . . . identified and attempted to 'gloss over' over them in its insurance claim."  *Id.*

14   The court found this argument wanting because the insurer "fail[ed] to connect these

15   prior sewage issues to [the insured's] representations to [the insurer] during the claim,"

16   and also noted that the insurer had not shown, "for example, that [it] asked [the insured]

17   whether there had been prior sewage issues during the claim process or that [the insured]

18   tried to conceal the prior violations from [the insurer]."  *Id.*  Allstate's approach is

19   strikingly similar and fails for the same reason.

20          The definition of materiality further confirms that the insurer must identify an

21   offensive statement, act of concealment, or omission that was made in the course of the

22   relevant investigation.  A misrepresentation is only material "if, when made, it *could have*

1   affected the insurer's investigation." *Allstate Ins. Co. v. Huston*, 94 P.3d 358, 363 (Wash.

2   Ct. App. 2004) (emphasis in original); *Tran v. State Farm Fire & Cas. Co.*, 961 P.2d 358,

3   363 (Wash. 1998) (holding that information is only material "when it 'concerns a subject

4   relevant and germane to the insurer's investigation as it was then proceeding' at the time

5   the inquiry was made" (quoting *Fine v. Bellefonte Underwriters Ins. Co.*, 725 F.2d 179,

6   183 (2d Cir. 1984))); *Michalski v. Farmers Ins. Co.*, Case No. 24472-1-II, 2001 WL

7   63181, *6 (Wash. Ct. App. Jan. 26, 2001) (characterizing *Fine v. Bellefonte Underwriters

8   Ins. Co.* as holding that "the determination of materiality is made at the time the insured

9   makes the false statements").  Allstate's theory thus presents a timing issue.

10          Following Allstate's argument to its natural conclusion, Mr. Lindquist's

11   misrepresentations would have accrued when he failed to comply with the terms of the

12   policy—that is, "promptly" after he learned of the vandalism-related damage.  (*See* MSJ

13   at 12; Insurance Policy at 33.)  But Allstate does not explain how misrepresentations that

14   would have accrued years before its investigation of the 2019 fire loss "*could have*

15   affected" its investigation "***when made***."  *Allstate*, 94 P.3d at 363 (second emphasis

16   added).  This failure to connect Mr. Lindquist's knowledge of the prior vandalism-related

17   damage to misrepresentations, omissions, or acts of concealment made during the

18   investigation of the 2019 fire loss claim is fatal to Allstate's argument.  *See Naxos*, 2020

19   WL 777260, at *15.

20          Nor do any of the cases Allstate cites to support its argument suggest a different

21   outcome is appropriate on the facts before the court.  (*See* MSJ at 12; MSJ Reply at 4.)

22   Each of the cases Allstate cites is distinguishable for the simple reason that each involves

a specific misrepresentation made on the insurance policy application or in the course of a claim investigation.  *See, e.g.*, *Ocwen Loan Servicing, LLC v. Nationwide Mut. Fire Ins. Co.*, No. 1:07-CV-01449-SEB, 2012 WL 1067854, at *7-8 (S.D. Ind. Mar. 29, 2012) (focusing on specific "discrepancies between the [insured's] statements in the [insurance policy] application and their subsequent admissions of fact" made during a recorded statement taken during a claim investigation); *Old Colonial Hotel, Inc. v. Assicurazioni Generali S.P.A.*, No. CIV.A. 92-6530, 1994 WL 34193, at *5 (E.D. Pa. Feb. 7, 1994) (discussing an insured's explicit lie regarding prior property losses, made on the policy application); *Priesmeyer v. Shelter Mut. Ins. Co.*, 995 S.W.2d 41, 44 (Mo. Ct. App. 1999) (examining whether insured "made material misrepresentations in the application by not informing" the insurer about prior losses, which the insurer claimed it had explicitly inquired about during the application process).  Here, Allstate has pointed to no such misrepresentation or act of concealment that took place during its investigation.

Allstate also cites *Davidson v. Allstate Ins. Co.* for the proposition that "a failure to report losses can bar an insured's claim and rescind the policy.  (*See* MSJ at 12 (citing *Davidson v. Allstate Ins. Co.*, No. 99-55367, 2000 WL 237952 (9th Cir. Feb. 16, 2000) (unpublished)).)  In *Davidson*, the insured waited more than a year to report structural damage resulting from an earthquake to her insurance company despite having observed visible damage immediately after the earthquake struck.  *See Davidson*, 2000 WL 237952, at *5-6.  The insurer denied the insured's claim because the policy required her to "provide timely notice . . . in the event of a loss" and "bring any suit or action . . . within one year after the date of loss."  *Id.* at *3-4.  Because she failed to do so,

1   the court found the decision to deny coverage "eminently reasonable." *Id.* at *5.  Allstate

2   does not contend that Mr. Lindquist failed to initiate a claim for the 2019 fire loss in a

3   timely manner, so this case is, likewise, inapposite.

4           Further, to the extent Allstate argues that the language of the Policy imposed on

5   Mr. Lindquist an ongoing duty to disclose property damage, noncompliance with which

6   automatically constitutes a misrepresentation, the court rejects that argument.  (*See* MSJ

7   at 12.)  The Policy requires that, "[i]n the event of a loss to any property that may be

8   covered," Mr. Lindquist must "promptly give . . . notice" to Allstate.  (Insurance Policy at

9   33.)  The court agrees with Mr. Lindquist, however, that this "provision is most naturally

10  understood as establishing the requirements for insureds" if they want to "make a claim"

11  for the damage to be covered.  (*See* MSJ Resp. at 16.)  Adjacent provisions in the Policy,

12  which require that the insured submit an EOU and provide Allstate with a "signed, sworn

13  proof of the loss," confirm that understanding.  (*See* Insurance Policy at 33); *Am. Nat.*

14  *Fire Ins. Co. v. B & L Trucking & Const. Co.*, 951 P.2d 250, 256 (Wash. 1998) (en banc)

15  (instructing that insurance policies should be "construed as a whole" to give a "fair,

16  reasonable, and sensible construction" (internal quotation marks omitted)).  Thus, the

17  "prompt" notice provision may well permit Allstate to deny Mr. Lindquist coverage for

18  the prior vandalism-related damage based on his failure to timely report that damage,

19  *Davidson*, 2000 WL 237952, at *5-6, but it is "a leap" to argue that noncompliance with

20  this provision amounts to an intentional misrepresentation (*see* MSJ Resp. at 16).

21          Because Allstate has failed to establish, as a matter of law, that Mr. Lindquist

22  misrepresented the periodic vandalism-related damage at the Fisher Road House, the

court need not consider Mr. Lindquist's argument that Allstate was aware of the

vandalism-related damage.  Likewise, the court need not consider whether Mr.

Lindquist's alleged misrepresentations about vandalism-related damage are material or

were made knowingly.

4.    The Value of Personal Property at the Fisher Road House

The final misrepresentation argument Allstate raises relates to the value of Mr.

Lindquist's personal property.  Allstate makes two arguments.  First, that Mr. Lindquist

"has claimed the value of his personal property in the loss as significantly higher then

[sic] what he declared . . . in his bankruptcy proceedings" (*see* MSJ at 14) and that the

difference between the value claimed in bankruptcy ($4,700) and that claimed on his

proof of loss ($917,818.85) amounts to a material misrepresentation (*see id.* at 5-7, 13).

Second, that "the inventory submitted by [Mr.] Lindquist regarding the 2019 fire loss" is

"directly contrary" to the categories of inventory submitted by Mr. Lindquist to the

bankruptcy court.  (*Id.* at 6; MSJ Reply at 6-7.)

In support of the first argument, Allstate argues that, in between petitioning for

bankruptcy and submitting his proof of loss following the 2019 fire, Mr. Lindquist took

various personal items with him and vacated the Fisher Road House, which was also

vandalized on numerous occasions.  (*See id.* at 14.)  Allstate asks the court to conclude

that, given this history and the delta between the valuations, "no rational jury would be

able to reconcile" the difference—and especially the increase in claimed value—and thus

Mr. Lindquist's inclusion of the higher valuation in his proof of loss amounts to a

material misrepresentation sufficient to void the entire policy.  (*See* MSJ Reply at 7-8.)

As Mr. Lindquist notes, however, Allstate has tried this argument before when it asked the court to estop Mr. Lindquist from seeking damages for lost personal property in excess of the bankruptcy valuation.  (*See* MSJ Resp. at 11; 3/5/21 Order (Dkt. # 52) at 16.)  In rejecting that argument, the court had to consider whether Mr. Lindquist's proof of loss was "clearly inconsistent" with its earlier position in the bankruptcy proceeding; an inquiry that is substantially similar to the one it now undertakes.  (*See* 3/5/21 Order at 16-17 (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).)  While Allstate mustered no evidence in support of its contention that the two "valuations should be viewed as the result of the same valuation methodology," Mr. Lindquist provided evidence "supporting the contention that they should be viewed differently."  (*See id.* at 17.)  Viewing the evidence in the light most favorable to Mr. Lindquist—and in recognition of Allstate's deficient evidentiary showing—the court ruled that the numbers were the result of different methodologies and so were not "clearly inconsistent."  (*See id.* at 18.)

Allstate's latest assertion, that the different valuations amount to an intentional material misrepresentation, fails for the same reason as its earlier estoppel argument:  it "points to the difference in the results of the two valuations, but provides no arguments, or evidence to support them, that the valuations should be viewed as the result of the same valuation methodology."  (*See id.* at 17.)  Instead, Allstate's argument is, once again, "based on the size and nature of the discrepancy in valuations, as well as evidence that Mr. Lindquist's property had lowered in value since the bankruptcy proceeding."  (*Id.*)  On essentially the same presentation, Allstate was unable to establish, as a matter of

1  law, that Mr. Lindquist's different personal property valuations were "clearly

2  inconsistent." (*Id.* at 18.)  The court, likewise, finds that Allstate has failed to show that

3  Mr. Lindquist misrepresented the value of his personal property, as a matter of law. (*See*

4  *id.*)

5          In support of its second argument—that Mr. Lindquist misrepresented items on his

6  inventory list—Allstate relies on the discrepancy between the items Mr. Lindquist listed

7  on the personal property schedule he submitted to the bankruptcy court and the inventory

8  list that accompanied his proof of claim. (*See* MSJ at 5-6; MSJ Reply 6-7.)  Allstate

9  notes, for example, that Mr. Lindquist seeks damages for certain "larger 'hobby type'

10  items"—such as a tanning bed and theatre sound system—which he did not include on

11  the inventory schedule presented in bankruptcy court, as well as for smaller items, like

12  pots and pans, some of which he testified to moving from the Fisher Road House. (*See*

13  MSJ Reply at 7.)

14          As Mr. Lindquist explains, however, the bankruptcy proceeding does not require

15  "a detailed inventory" and one "is created only if requested by a party in interest, which

16  did not occur" in his case. (*See* MSJ Resp. at 10 (citing Sternberg Decl. (Dkt. # 17) ¶ 6).)

17  "Instead, his personal property was grouped into broad categories." (*Id.*)  Mr. Lindquist

18  further testified in his EOU that he moved only about "50 percent" of the "pots and pans

19  and silverware" from the Fisher Road House, which plausibly explains why some would

20  have been listed on an inventory of items destroyed in the fire. (*See* Lindquist EOU at

21  33:8-9).  Viewed in the light most favorable to Mr. Lindquist, this is enough to create a

22  genuine dispute of material fact and to permit the jury to resolve whether Mr. Lindquist

1    materially misrepresented the value or content of personal property lost in the 2019 fire.

2    *Celotex*, 477 U.S. at 324.

3        Because Allstate has failed to establish that Mr. Lindquist misrepresented either

4    the value or inventory of his personal property as a matter of law, the court need not

5    consider whether the alleged misrepresentation was material or made knowingly.

6        5.    <u>Failure to Cooperate</u>

7        Finally, Allstate contends that Mr. Lindquist "has failed to cooperate with Allstate

8    in its investigation of his claim by his consistent failure to report losses," and that this has

9    caused Allstate "to suffer prejudice because it has been unable to properly evaluate and

10   investigate [Mr.] Lindquist's claim." (*See* MSJ at 16.)  Allstate's focus, however, is on

11   the provision that requires Mr. Lindquist to give "prompt[]" notice in the event of a loss,

12   as opposed to a cooperation clause. (*See id.* (citing Insurance Policy at 33).)  The court

13   has already noted, in discussing Allstate's misrepresentation argument, that this

14   "provision is most naturally understood as establishing the requirements for insureds" if

15   they want to "make a claim" for the damage to be covered. *See supra* at 17 (quoting MSJ

16   Resp. at 16).  Thus, it does not impose the sort of affirmative, ongoing reporting

17   obligation necessary to support Allstate's theory of non-cooperation through breach of

18   this clause. (*See* Insurance Policy at 33.)

19       Moreover, with respect to the 2019 fire loss investigation, the facts show that Mr.

20   Lindquist is in "substantial compliance" with any cooperation obligation that does apply.

21   *Staples v. Allstate Ins. Co.*, 295 P.3d 201, 207 (Wash. 2013).  Indeed, despite the apparent

22   difficulties in securing a date for his EOU (*see* MSJ Reply at 9), he sat for extensive

1    questioning and appears to have answered Allstate's questions candidly.  (*See* Lindquist

2    EOU.)  At a minimum, there exists a genuine dispute as to whether Mr. Lindquist has

3    cooperated with Allstate in its investigation of the 2019 fire loss claim.

4        Furthermore, even if Mr. Lindquist has failed to cooperate in a manner required by

5    some provision in the Policy, Allstate's claim still fails for the simple reason that it offers

6    no evidence showing that it has suffered prejudice.  (*See generally* MSJ; MSJ Reply.)

7    "Claims of actual prejudice require 'affirmative proof of an advantage lost or

8    disadvantage suffered as a result of the [breach], which has an identifiable detrimental

9    effect on the insurer's ability to evaluate or present its defenses to coverage or liability.'"

10   *Tran*, 961 P.2d at 365 (quoting *Canron, Inc. v. Federal Ins.*, 918 P.2d 937, 943 (Wash.

11   1996)).  Here, Allstate has provided neither declarations nor testimony to demonstrate

12   that it "needed to know" about the vandalism-related losses "to properly evaluate the

13   damages that were germane to the subject fire and those that arose from other incidents of

14   loss."  (*See* MSJ at 16; *see also* MSJ Reply at 9.)

15       On the record before it, Allstate has failed to establish that Mr. Lindquist breached

16   a cooperation obligation as a matter of law or suffered prejudice from that breach as a

17   matter of law.

## IV.    CONCLUSION

19       For the foregoing reasons, the court DENIES Allstate's motion to strike (*see* MSJ

20   Reply (Dkt. # 105) at 9-13) and DENIES Allstate's motion for partial summary judgment

21   (Dkt. # 71).

22   *//*

1      Dated this 24th day of November, 2021.

2

3

_____
4                                               JAMES L. ROBART
                                                United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 23