1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

ALLSTATE INDEMNITY
COMPANY,

11

Plaintiff,

12

v.

13

RANDY LINDQUIST, et al.,

14

Defendants.

CASE NO. C20-1508JLR

ORDER

15

16

## I.    INTRODUCTION

17

Before the court are:  (1) Plaintiff Allstate Indemnity Company's ("Allstate")

18

motion for summary judgment as to its claim against Defendant JPMorgan Chase Bank,

19

N.A. ("Chase") (Allstate Mot. (Dkt. # 100); Allstate Reply (Dkt. # 116)), which

20

Defendants Chase and Randy Lindquist oppose (Chase Resp. (Dkt. # 108); Lindquist

21

Resp. (Dkt. # 111)); and (2) Chase's cross-motion for summary judgment (Chase Mot.

22

(Dkt. # 113); Chase Reply (Dkt. # 119)), which Mr. Lindquist joins (Lindquist Joinder

(Dkt. # 115)) and Allstate opposes (Allstate Resp. (Dkt. # 118)).  Allstate also makes two motions to strike.  (*See* Allstate Reply at 1; Allstate Resp. at 2 n.1.)  The court has considered the parties' submissions, the relevant portions of the record, and the applicable law.  Being fully advised,[1] the court DENIES Allstate's motions to strike; DENIES Allstate's motion for summary judgment; and GRANTS Chase's cross-motion for summary judgment.

## II.    BACKGROUND

The court has previously described the factual background in this matter (*see* 11/24/21 Order (Dkt. # 117)) and limits its description below to the facts most pertinent to its consideration of the motions now before it.

This case stems from a fire that burned down Mr. Lindquist's house at 6920 Fisher Road in Edmonds, WA (the "Fisher Road House") on December 25, 2019.  (Compl. (Dkt. # 1) ¶¶ 3.12.)  Allstate, through its agent Melody Grondahl, sold Mr. Lindquist a homeowner's insurance policy for the Fisher Road House in 2004 and renewed the Policy on an annual basis thereafter.  (*See* 10/21/21 Argiannis Decl. (Dkt. # 101) ¶ 4, Ex. B (the "Policy"); *see also* 11/8/21 Haist Decl. (Dkt. # 109) ¶ 6, Ex. 5 at 121:12-122:11; 11/8/21 Haist Decl. ¶ 5, Ex. 4 at 150:17-21; Skibinski Decl. (Dkt. # 102) ¶ 8.)

The Policy provides dwelling protection, other structures protection, and personal property protection.  (Policy at 6, 7, 10.)  It is subject to Allstate voiding it if it was

---

[1] None of the parties request oral argument (*see* Allstate Mot. at 1; Chase Resp. at 1; Lindquist Resp. at 1; Chase Mot. at 1; Lindquist Joinder at 1; Allstate Resp. at 1), and the court concludes that oral argument would not be helpful to its disposition of the motions.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

1    obtained by Mr. Lindquist, or someone on his behalf, through fraud or the

2    misrepresentation or concealment of a material fact.  (Policy at 6.)  The Policy also

3    permits Allstate to deny coverage for "any loss or occurrence in which any insured

4    person has concealed or misrepresented any material fact or circumstance that exist[ed] at

5    the time of the loss or occurrence."  (*Id.*)

6         Attached to the Policy is a Lender's Loss Payable Endorsement, which protects a

7    lender from having its interests in the insurance coverage "invalidated" or "suspended"

8    by the acts or omissions of the insured.  (*See* 10/21/21 Argiannis Decl. ¶ 4, Ex. B at 39

9    ¶ 2 ("Lender's Loss Payable Endorsement").)  The endorsement does not, however,

10   protect the lender from breaches of the contract that are the result of its own "acts or

11   omissions," if they were undertaken while the lender "exercise[ed] active control and

12   management of the property."  (*Id.*)

13        In 2007, Mr. Lindquist took out a loan from Golf Savings Bank and executed a

14   promissory note for the amount of the loan, which he secured with a deed of trust that

15   encumbered the Fisher Road House.  Both the promissory note and deed of trust were

16   subsequently indorsed to Chase.  (*See* 10/21/21 Argiannis Decl. ¶ 7, Ex. E at 11-17, 19-

17   39.)  Under the deed of trust, Mr. Lindquist agreed to obtain and keep insurance on the

18   Fisher Road House and to allow Chase to pay the premiums on his behalf, if he failed to

19   do so, with the costs added to his loan principal.  (*Id.* at 23-27.)  Starting June 18, 2008,

20   and continuing "for a total of 12 years up until June 2020," Chase exercised this right and

21   paid for the Policy.  (*See* Skibinski Decl. ¶ 8.)

22   //

1       Beginning in April 2011, Chase hired a company called Safeguard Properties

2 ("Safeguard") to make periodic inspections of the Fisher Road House.  (*See generally*

3 10/21/21 Argiannis Decl. ¶ 6, Ex. D (the "Safeguard Notes").)  Safeguard made regular

4 visits to the home between April 2011 and December 2019 but was not able to make

5 contact with Mr. Lindquist.  (*See generally id.*)  It was also unable to confirm, on

6 numerous occasions, whether the home was occupied or not because of the property's

7 location "at the end of a private, gated drive."  (*See, e.g.*, *id.* at 43, 80.)  At other times,

8 Safeguard's inspector reported that the home did appear to be occupied.  (*See, e.g.*, *id.* at

9 53, 110, 121.)

10       On March 29, 2018, Chase filed a foreclosure action in Snohomish County

11 Superior Court alleging that Mr. Lindquist had failed to make monthly payments on the

12 2007 loan.  (10/21/21 Argiannis Decl. ¶ 7, Ex. E at 1, 4.)  Chase named multiple

13 defendants in that action, including Mr. Lindquist and "occupants of the property."  (*Id.*

14 at 1.)  It subsequently dismissed "occupants of the property" from the action, citing its

15 process server's inability to serve Mr. Lindquist at the Fisher Road House and its report

16 that a neighbor "stated that the home is vacant" and the cars and horse that were located

17 on the property were left to deter further break-ins.  (*See* 10/21/21 Argiannis Decl. ¶ 8,

18 Ex. F at 5.)  In his answer to the foreclosure action, Mr. Lindquist confirmed that,

19 because the Fisher Road House "has sustained significant further damage," it was "now

20 uninhabitable."  (10/21/21 Argiannis Decl. ¶ 9, Ex. G at 7.)

21       On December 25, 2019, a fire severely damaged the Fisher Road House and

22 completely destroyed the contents inside the home.  (*See* 11/12/20 Leid Decl. (Dkt. # 9)

¶ 4, Ex. B at 5-7.)  Mr. Lindquist filed a claim for benefits with Allstate on August 12, 2020 and sought coverage in the amount of the policy limit for the dwelling and other structures protection and $917,818.85 for personal property loss.  (*Id.*)

## III.   ANALYSIS

Allstate moves for summary judgment on its claim against Chase and asks the court to find that Chase:  (1) had knowledge that the Fisher Road House was vacated by Mr. Lindquist prior to the December 2019 loss; (2) had a duty to report this change in occupancy status to Allstate; and (3) failed to do so.  (Allstate Mot. at 1-2.)  Allstate argues that Chase's reporting failure constitutes a misrepresentation and concealment of a material fact concerning the Fisher Road House and asks the court to void coverage under the policy.  (*Id.* at 2.)  Chase has cross-moved for summary judgment in its own favor on Allstate's claims against it because:  (1) "Chase had no duty to report anything to Allstate"; and (2) regardless of whether Chase had a reporting obligation, "both the policy and Endorsement provide coverage to Chase even if the property is vacant, or Mr. Lindquist failed to tell Allstate it was vacant."  (Chase Mot. at 1.)  Finally, Allstate also moves to strike portions of Chase's briefing for allegedly mischaracterizing deposition testimony of Allstate witnesses (Allstate Reply at 1) and the procedural history of this matter (Allstate Resp. at 2 n.1).

The court briefly addresses Allstate's motions to strike before turning to discuss the summary judgment standard and the parties' cross-motions.

//

//

ORDER - 5

1    **A.     Motions to Strike**

2           Allstate makes two motions to strike portions of Chase's briefing.  First, in its

3    reply, Allstate "incorporates by reference" a motion to strike it raised in its reply to its

4    summary judgment motion against Mr. Lindquist.  (Allstate Reply at 1 (citing MSJ Reply

5    (Dkt. # 105)).)  The motion to strike is aimed at unspecified passages in the briefs

6    opposing Allstate's summary judgment motion in which Chase and Mr. Lindquist

7    allegedly "misrepresent the testimony of Allstate's 30(b)(6) Designees." (*Id.* at 1.)  As

8    the court has previously observed, Allstate points to only one example of the purportedly

9    offensive briefing—in a brief Mr. Lindquist subsequently withdrew at the court's

10   invitation.  (*See* 11/24/21 Order at 6-7 (rejecting Allstate's argument and denying its

11   motion as moot).)  Allstate does not provide further direction as to the content it asks the

12   court to strike from Chase's briefing (Allstate Reply at 1; MSJ Reply at 9-13), which is

13   reason enough for the court to deny its motion.  *See McGorray v. O'Connor*, 87 F. 586,

14   588 (9th Cir. 1898) (denying motion to strike where the moving party failed to identify

15   the portions to be stricken).  In any event, the court does not rely on Defendants'

16   characterization of deposition testimony given by Allstate's 30(b)(6) witnesses in its

17   analysis.  For all of these reasons, Allstate's motion to strike is DENIED.

18          Second, in its response to Chase's cross-motion for summary judgment, "Allstate

19   objects to Chase's characterization" of the various discovery disputes that have arisen in

20   the course of this litigation and moves to strike Chase's description of the procedural

21   history.  (Allstate Resp. at 2 n.1.)  Because Chase's characterization of the procedural

22   //

1   history does not factor into the court's analysis, the court DENIES Allstate's motion to

2   strike it.

3   **B.    Summary Judgment Standard**

4        Under Rule 56 of the Federal Rules of Civil Procedure, either "party may move

5   for summary judgment, identifying each claim or defense—or the part of each claim or

6   defense—on which summary judgment is sought." Fed. R. Civ. P. 56.[2]  Summary

7   judgment is appropriate if the evidence, when viewed in the light most favorable to the

8   non-moving party, demonstrates "that there is no genuine dispute as to any material fact

9   and the movant is entitled to judgment as a matter of law." *Id.*; *see Celotex Corp. v.*

10  *Catrett*, 477 U.S. 317, 322 (1986).  A dispute is "genuine" if "the evidence is such that a

11  reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

12  *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the

13  outcome of the suit under the governing law." *Id.*

14       The moving party bears the initial burden of showing that there is no genuine

15  dispute of material fact and that it is entitled to prevail as a matter of law.  *Celotex*, 477

16  U.S. at 323.  If the moving party does not bear the ultimate burden of persuasion at trial,

17  it can show the absence of such a dispute in two ways:  (1) by producing evidence

18

19       [2] Allstate's assertion that Chase cannot prevail on its cross-motion for summary judgment
    because it is "merely a defendant" without a cross-claim has no basis in the law.  (Allstate Resp.

20  at 6.)  As Allstate and its counsel well know, Rule 56 permits either party to move for summary
    judgment on any "claim or defense."  *See* Fed. R. Civ. P. 56; *see also, e.g.*, *Dean v. Allstate Ins.*

21  *Co.*, No. C21-0205BAT, 2021 WL 5810640, at *1 (W.D. Wash. Dec. 7, 2021) (granting
    defendant's motion for summary judgment).  Chase's motion for summary judgment on
    arguments that negate Allstate's affirmative defense of misrepresentation is well taken under

22  Rule 56.

1    negating an essential element of the nonmoving party's case, or (2) by showing that the

2    nonmoving party lacks evidence of an essential element of its claim or defense.  *Nissan*

3    *Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).

4        If the moving party meets its burden of production, the burden then shifts to the

5    nonmoving party to identify specific facts from which a factfinder could reasonably find

6    in the nonmoving party's favor.  *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

7    Where cross motions are at issue, the court must "evaluate each motion separately, giving

8    the nonmoving party in each instance the benefit of all reasonable inferences."  *ACLU of*

9    *Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (citations omitted).

10   **C.**    **Allstate's Motion for Summary Judgment**

11       Allstate contends that Chase had a duty under the Policy to report changes in

12   occupancy status at the Fisher Road House to Allstate; that it knew about Mr. Lindquist

13   vacating the Fisher Road House; and that it failed to report that fact to Allstate, which

14   constitutes a misrepresentation of a material fact sufficient to void coverage under the

15   Policy.  (Allstate Mot. at 1-2.)  Because, as discussed below, the parties' awareness of the

16   Fisher Road House's occupancy status is in dispute, the court need not address Allstate's

17   other arguments in support of its motion.

18       1.    Allstate's Awareness of the Occupancy Status of the Fisher Road House

19       A misrepresentation is only material "'if a reasonable insurance company, in

20   determining its course of action, would attach importance to the fact misrepresented.'"

21   *See Ki Sin Kim v. Allstate Ins. Co.*, 223 P.3d 1180, 1189 (Wash. App. Ct. 2009)

22   (quotation marks omitted) (quoting *Onyon v. Truck Ins. Exch.*, 859 F. Supp. 1338, 1341

1   (W.D. Wash. 1994)), *as amended* (Jan. 6, 2010).  Because a reasonable insurance

2   company would not attach importance to a "fact" it knew to be false, Allstate's

3   knowledge of the Fisher Road House's occupancy status is an essential element of its

4   misrepresentation defense.  *See id.*

5           The court previously discussed Allstate's contention that Mr. Lindquist "did not

6   inform Allstate that he had moved out" of the Fisher Road House, "or that [the house]

7   was vacant" (Allstate Mot. at 4).  (*See* 11/24/21 Order at 9-12.)  The court found that the

8   record contains evidence "from which a reasonable jury could find that Allstate knew

9   [Mr. Lindquist] had moved from the Fisher Road House;" concluded that "a genuine

10  dispute of material fact exists as to whether Allstate was aware of the change in

11  occupancy status;" and denied Allstate's motion for summary judgment against Mr.

12  Lindquist on that basis.  (*Id.* at 12.)  Allstate presents no additional evidence with its

13  current motion that would allow the court to find, as a matter of law, that it was unaware

14  of Mr. Lindquist's departure from the Fisher Road House.  Thus, its motion for summary

15  judgment is once again DENIED.  *See Celotex*, 477 U.S. at 324.

16          2.      Chase's Awareness of the Occupancy Status of the Fisher Road House

17          Allstate's current motion fails for the additional reason that it cannot establish, as a

18  matter of law, that Chase knew the Fisher Road House was unoccupied, which is a

19  necessary predicate to Chase's supposed reporting obligation.  (*See* Allstate Mot. at 10

20  ("To defeat a mortgagee's recovery on a policy requiring notice of a breach of condition

21  if known to him, the mortgagee must have had actual, and not constructive,

22  knowledge.").)

1    Allstate first argues that Chase must have known Mr. Lindquist moved from the

2    Fisher Road House, leaving it unoccupied, because it "hired Safeguard Properties to

3    inspect the subject property" in 2011 and, despite 68 attempts, the inspectors "never

4    made contact with [Mr.] Lindquist." (*Id.* at 4 (citing Safeguard Notes at 128-173).)

5    Allstate further notes that Chase's inspector spoke with one of Mr. Lindquist's neighbors

6    who reported that the house was vacant. (*Id.* (citing Safeguard Notes at 126-127).)

7    Chase counters with evidence that, on a number of occasions, its inspector was able to

8    determine that the Fisher Road House was occupied. (Chase Resp. at 14-15 (citing

9    Safeguard Notes at 53, 111, 122).) Moreover, Safeguard's inspector never affirmatively

10   concluded that the property was vacant until after the December 2019 fire; rather, they

11   were unable to determine occupancy status because the Fisher Road House is difficult to

12   see from the street. (*See, e.g.*, Safeguard Notes at 56 (noting that the Fisher Road House

13   sits back from the street, behind a locked gate, on a forested lot).)

14   Allstate also argues that the foreclosure proceeding initiated by Chase in 2018

15   demonstrates Chase's awareness of the Fisher Road House's vacancy. Allstate points to

16   the fact that, although Chase named "occupants of the property" as a defendant in that

17   action, it was unable to serve Mr. Lindquist with a summons and complaint at the Fisher

18   Road address and subsequently dismissed "occupants of the property" as a named party.

19   (*See* 10/21/21 Argiannis Decl., Ex. F at 5.) Allstate also observes that Mr. Lindquist

20   answered the foreclosure complaint by confirming that the Fisher Road House "has

21   sustained significant further damage" and was "uninhabitable." (10/21/21 Argiannis

22   Decl., Ex. G at 7.) Chase rebuts this evidence by noting that its "inspector confirmed

occupancy on August 11, 2019 (after Chase filed and served its foreclosure complaint)," and after Mr. Lindquist filed his foreclosure answer.  (*Compare id.*, *with* Safeguard Notes at 53.)  In light of these cross-cutting facts, the court finds that a genuine dispute of material fact exists.

Because reasonable minds could disagree about whether Allstate or Chase was aware that Mr. Lindquist had moved out of the Fisher Road House, Allstate cannot demonstrate that Chase concealed material information from it as a matter of law.  *See Celotex Corp.*, 477 U.S. at 322.  Its motion for summary judgment is therefore DENIED.

**D.    Chase's Motion for Summary Judgment**

Chase argues for summary judgment in its own favor, contending that, regardless of whether it was aware that the Fisher Road House was unoccupied, (1) it owed Allstate no duty to report that information under the Policy and, (2) even if it did, the Policy provides Chase, as a lender, coverage notwithstanding any breach of the Policy by Mr. Lindquist or Chase.  (Chase Mot. at 1.)  In response, Allstate argues that the Policy does impose duties on Chase and that the Lender's Loss Payable Endorsement does not require Allstate to maintain coverage for Chase where, as it alleges is the case here, Chase participated in the misrepresentation or concealment.  (Allstate Resp. at 12-13.)

1.    Chase's Reporting Duties Under the Policy

Under Washington law, insurance policies are construed as contracts and courts are to "consider the policy as a whole" to reach a "fair, reasonable, and sensible construction."  *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005) (quotation marks omitted).  Where an endorsement is present, it is treated as "part of the

1   insurance contract even if the result is a new and different contract," and it is "read

2   together with the policy to determine the intent of the parties." *Baker v. Phoenix Ins. Co.*,

3   No. C12-1788JLR, 2013 WL 4760997, at *3 (W.D. Wash. Sept. 3, 2013) (citing

4   *Transcontinental Ins. Co. v. Wash. Pub. Utils. Dist. Util. Sys.,* 760 P.2d 337, 343 (Wash.

5   1988).

6          Here, the court construes the Policy's "Insuring Agreement" (Policy at 4), as well

7   as its provisions governing the concealment or misrepresentation of material facts (*id.* at

8   6), and permitting the Fisher Road House to remain unoccupied (*id.* at 23).  With one

9   exception, these provisions impose duties only on Mr. Lindquist as the insured.  (*See id.*

10  at 4, 6 (assigning obligations to "You" or "Your"); *see also id.* at 2 (defining "You" or

11  "Your" to "mean[] the person named on the Policy Declarations as the insured and that

12  person's resident spouse")).  The provision authorizing Allstate to void the Policy, if it

13  "was obtained by [the insured] or someone on [the insured's] behalf" through a

14  misrepresented or concealed material fact, reaches a bit broader; it would permit Allstate

15  to void the Policy for the acts of those operating on Mr. Lindquist's behalf.  (*Id.* at 6.)

16  But Allstate does not argue that Chase helped Mr. Lindquist obtain the Policy through

17  fraud—indeed, there is no dispute about occupancy at the time the Policy was acquired—

18  so this provision has no applicability to the facts or arguments before the court.  (*See id.*;

19  *see also* Allstate Resp. at 12 (characterizing its own argument).)

20         Because none of these provisions—nor any others identified by Allstate in its

21  briefs or Complaint (*see generally* Allstate Resp.; Compl. at 5-8)—impose any reporting

22  obligation on Chase, it cannot have breached any reporting duties under the Policy.

1        2.      Chase's Rights Under the Lender's Loss Payable Endorsement

2        Even if some provision in the Policy did require Chase to report to Allstate about

3    the occupancy status of the Fisher Road House, Allstate's motion would still fail because

4    the Lender's Loss Payable Endorsement affords Chase coverage notwithstanding any

5    alleged concealment of material facts by Chase or Mr. Lindquist.  Chase's interest in

6    coverage may be "invalidated" or "suspended"—even for its own "acts or omissions"—

7    only where it "exercise[ed] active control and management of the property."  (Lender's

8    Loss Payable Endorsement ¶ 2(c); *see also* Allstate Resp. at 11.)  Allstate argues, without

9    citation to any authority, that "[r]easonable minds cannot differ that" Chase (1) paying

10   Allstate insurance premiums for the Policy on Mr. Lindquist's behalf, and (2) suing for

11   foreclosure of the Fisher Road House demonstrate that it was "exercising active control

12   and management of the property."  (Allstate Reply at 2; Allstate Resp. at 2, 11.)

13       "[A]ctive control and management" is not defined by the Policy or Endorsement,

14   but paragraph 8 of the Lender's Loss Payable Endorsement offers some guidance as to

15   the degree of "control and management" that should be required before Allstate can deny

16   a lender, like Chase, coverage.  Paragraph 8 provides that, following the vesting of "legal

17   title to and beneficial ownership of" the Fisher Road House, the special "privileges

18   granted by th[e] lender's Loss Payable Endorsement" to the lender cease to exist.  (*See*

19   Lender's Loss Payable Endorsement ¶ 8.)  In effect, this provision ensures that the lender

20   will not enjoy coverage in the event of Policy breach once it has assumed legal control of

21   the Fisher Road House.  (*See id.*); *see also California Cas. Indem. Exch. v. Fed. Nat.*

22   *Mortg. Ass'n*, 886 F.2d 1319 (9th Cir. 1989) (table) (interpreting "beneficial ownership"

1   language in identical endorsement and concluding that the lender continued to enjoy

2   protection until it had formally and completely assumed legal control).

3        That is, it ensures that lenders do not continue to enjoy special protections once

4   they have sufficient control over the property to be held responsible for any breaches that

5   occur.  (*See* Lender's Loss Payable Endorsement ¶ 8.)  Whereas paragraph 8 serves that

6   goal in the context of full legal transfer, paragraph 2(c) guards against a lender unjustly

7   enjoying coverage where it has obtained *de facto* legal control of the property.  (*See id.*

8   ¶ 2.)  "[A]ctive control and management of the property" must be read, then, to require a

9   degree of "control and management" that is akin to vested "legal title" and "beneficial

10  ownership."  (*Compare id.* ¶ 2(c), *with id.* ¶ 8.)

11       Chase plainly did not exercise that degree of control or management over the

12  Fisher Road House.  Indeed, as Chase notes, had it "controlled or managed the [Fisher

13  Road House], it would not need to file a lawsuit to sell the [Fisher Road House]" to

14  recoup the debt Mr. Lindquist owes to it.  (Chase Reply at 5.)  Likewise, evidence that

15  Chase paid for the Policy premiums shows that Chase took action to protect its interests

16  in the Fisher Road House precisely because it lacked the ability to manage or control the

17  property.  (*Id.*)  Finally, the notion that Chase managed or controlled the Fisher Road

18  House in any meaningful sense is belied by evidence that its inspector was unable,

19  despite many attempts, to even access the property.  (*See* Safeguard Notes at 57-107,

20  116-120.)  No reasonable jury could conclude that the indicia of Chase's control over the

21  Fisher Road House Allstate points to rise to the level of control and management

22  intended by the Endorsement.

1    Accordingly, the court finds that the Lender's Loss Payable Endorsement would

2  provide coverage to Chase even if Chase had intentionally concealed facts about the

3  Fisher Road House's occupancy status to Allstate in breach of some Policy provision.

4  Chase's motion for summary judgment is therefore GRANTED.

5                              **IV.    CONCLUSION**

6    For the foregoing reasons, the court DENIES Allstate's motions to strike (Allstate

7  Reply (Dkt. # 116) at 1; Allstate Resp. (Dkt. # 118) at 2 n.1); DENIES Allstate's motion

8  for summary judgment (Dkt. # 100); and GRANTS Chase's cross-motion for summary

9  judgment (Dkt. # 113).

10    Dated this 18th day of January, 2022.

11

12

13                                        JAMES L. ROBART
                                          United States District Judge