UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALLSTATE INDEMNITY COMPANY,<br><br>                Plaintiff,<br><br>    v.<br><br>RANDY LINDQUIST, et al.,<br><br>                Defendants.<br>_____<br><br>RANDY LINDQUIST,<br><br>                Third-Party Plaintiff,<br><br>    v.<br><br>MELODY J. GRONDAHL, et al.,<br><br>                Third-Party Defendants. | CASE NO. C20-1508JLR<br><br>ORDER |

ORDER - 1

## I. INTRODUCTION

Before the court is a motion for a protective order filed by third-party Defendant G&J Restoration, Inc., d/b/a Paul Davis of Greater Seattle ("Paul Davis"). (Mot. (Dkt. # 121); Reply (Dkt. # 123).) Defendant Randy Lindquist opposes the motion. (Resp. (Dkt. # 125).) The court has considered the parties' submissions, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS the motion in part and DENIES it in part.

## II. BACKGROUND

This case stems from a fire that burned down Mr. Lindquist's house at 6920 Fisher Road in Edmonds, WA (the "Fisher Road House") on December 25, 2019. (Compl. (Dkt. # 1) ¶¶ 3.12.) The Fisher Road House was subject to an insurance policy (the "Policy") issued by Allstate Indemnity Company ("Allstate") to Mr. Lindquist. (*Id.* ¶ 3.1.) After the fire, Allstate hired Paul Davis to clear debris from the property, purportedly to make the property safer for its cause and origin ("C&O") inspector, EFI Global. (O'Neill Decl. (Dkt. # 122) ¶ 3, Ex. 1 at 1.) Allstate allegedly authorized Paul Davis to enter the property without first obtaining Mr. Lindquist's permission. (Answer (Dkt. # 27) ¶¶ 81-82.[2]) Mr. Lindquist discovered that Paul Davis had entered the property when he

//

//

---

[1] No party requests oral argument, and the court concludes that oral argument would not be helpful to its disposition of the motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] The court uses "Answer" to refer to Mr. Lindquist's answer, counterclaims, and third-party complaint.

ORDER - 2

observed excavation equipment, as well as a new chain and lock on the front gate to the property to which he did not have a key. (*See id.* ¶¶ 77-80.)

Allstate filed this lawsuit against Mr. Lindquist on October 13, 2020, seeking declaratory relief to establish that Mr. Lindquist's homeowner's insurance policy does not cover the damage to the Fisher Road House from the December 2019 fire. (*See* Compl. ¶¶ 6.1-6.3.) Mr. Lindquist answered the complaint and asserted counterclaims against Allstate for declaratory relief establishing his entitlement to coverage under the insurance policy; breach of contract; breach of the duty of good faith; negligent claims handling; violations of the Washington Consumer Protection Act ("CPA") and Washington Insurance Fair Conduct Act ("IFCA"); and trespass. (Answer ¶¶ 133-69, 191-202.) Mr. Lindquist also raises a cross-claim against third-party Defendant Paul Davis for trespass. (*Id.* ¶¶ 191-195.)

Mr. Lindquist's trespass cross-claim survived Paul Davis's motion to dismiss (*see* MTD (Dkt. # 39); 3/5/21 Order (Dkt. # 52)) and the parties are now engaged in discovery, which is set to close on April 18, 2022 (*see* Sched. Order (Dkt. # 30)). On January 6, 2022, Mr. Lindquist provided Paul Davis with an amended Federal Rule of Civil Procedure 30(b)(6) deposition notice, which lists Mr. Lindquist's desired topics of examination and sets the deposition on January 27, 2022. (O'Neill Decl. ¶ 2, Ex. 2 ("Amended Notice").) Mr. Lindquist seeks to depose Paul Davis on the following seventeen (17) topics:

    1. The ownership and management of G & J Restoration, Inc.

//

2. Your systems for creating and maintaining documents (including electronic information relating to claims) relating to services performed by your company or your employees.

3. The existence and location of all documents relating to (a) Randy Lindquist; (b) 6920 Fisher Rd., Edmonds, Washington ("the subject property"); or (c) insurance claim relating to the subject property.

4. All agreements, including without limitation subcontracts, relating to (a) Randy Lindquist; (b) the subject property; or (c) the insurance claim.

5. Identity of all entities and persons involved in any work performed with respect to (a) Randy Lindquist; (b) the subject property; or (c) the insurance claim.

6. Photographs in your possession, custody, or control relating (a) Randy Lindquist; (b) the subject property; or (c) the insurance claim.

7. All communications relating to (a) Randy Lindquist; (b) the subject property; or (c) the insurance claim.

8. All notes relating to (a) Randy Lindquist; (b) the subject property; or (c) the insurance claim.

9. All invoices relating to (a) Randy Lindquist; (b) the subject property; or (c) the insurance claim.

10. All payments made or received from any source relating to (a) Randy Lindquist; (b) the subject property; or (c) the insurance claim.

11. All research you conducted (if any) relating to whether you had the right to perform any work on the subject property.

12. All manuals, guidelines, standards, policies, protocols and/or procedures relating to obtaining agreements, permissions, or authorizations for the performance of work on a property.

13. Industry standards relating to the performance of work when the owner or occupant of a property has not authorized it.

14. Identification of every instance over the past 10 years in which you have conducted demolition services at a property without express authorization or express permission from a person or entity that was not (a) the owner; (b) the occupant; (c) a lessee; or (d) a governmental entity.

15. All lawsuits or legal claims filed against you in the past 10 years.

16. All agreements in which any other entity or person (including without limitation Allstate) agrees to pay your costs of defense or part or all of any judgment entered against you in this action.

//

17. All communications with any person from Wathen Leid Hall Rider, P.C. before the time that firm began providing legal services you [*sic*] (as indicated in the Stipulated Motion and Order for Withdrawal and Substitution of Counsel, Dkt. No. 70).

(Am. Not. at 3-4.) The parties conferred on or about December 15, 2021, but were unable to resolve Paul Davis's objections to the Amended Notice. (*See* O'Neill Decl. ¶ 5, Ex. 3 (meet and confer correspondence); *id.* ¶ 6, Ex. 4 (Paul Davis objections to the Amended Notice).)

### III. ANALYSIS

Paul Davis asks the court to enter a protective order: (1) limiting the time frame for the topics on which he will be deposed to between December 25, 2019, "the date of loss," and June 30, 2020, "Paul Davis'[s] last day of service in this action"; and (2) striking topics 14, 15, and 16 in the Amended Notice and prohibiting Mr. Lindquist from asking Paul Davis about those subjects. (Mot. at 2.) Paul Davis argues that, without these limitations, its deposition will be abusive, overbroad and unduly burdensome, and will cover topics that are beyond the scope of the discovery. (*Id.*) The court considers the applicable legal standard before turning to consider each of Paul Davis's requests.

### A. The Standard for Resisting Discovery

Litigants have a right to discover from their adversary "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering," among other things, "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26. For purposes of discovery, relevant information is that

which is "reasonably calculated to lead to the discovery of admissible evidence." *Schreib v. Am. Fam. Mut. Ins. Co.*, 304 F.R.D. 282, 284 (W.D. Wash. 2014) (quoting *Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1470 (9th Cir. 1992)).  The court may limit discovery through a protective order where the party resisting discovery can show "good cause" that the order is needed to prevent "annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1); *see also Doe v. Trump*, 329 F.R.D. 262, 270 (W.D. Wash. 2018) (noting that the movant for a protective order "has the burden of clarifying, explaining, and supporting its objections with competent evidence") (quotation marks omitted).  "District courts are vested with broad discretion in determining whether a protective order is appropriate and, if so, what degree of protection is warranted."  *Schreib*, 304 F.R.D. at 284 (citing *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984)).

**B.     Time Limitations**

Paul Davis asks the court to protect its Rule 30(b)(6) deposition designee from having to testify about events occurring before December 25, 2019—the date on which Mr. Lindquist's Fisher Road House burned down, or after June 30, 2020—the date on which Paul Davis concluded its work for Allstate in this matter.  (Mot. at 7-8.)  Questions about events occurring outside of that date range, Paul Davis argues, are necessarily irrelevant to Mr. Lindquist's trespass claim and constitute nothing more than a fishing expedition meant to burden and harass him.  (*Id.*; *see also* Reply at 3.)  Mr. Lindquist does not dispute that December 25, 2019 to June 30, 2020 encompasses Paul Davis's work for Allstate on the Fisher Road House fire investigation.  (*See generally* Resp.)

1    Rather, Mr. Lindquist argues that "Paul Davis's role and relationship with Allstate," in
2    general, "stretches far beyond the six-months following the [Fisher Road House] loss," as
3    shown by the master services agreement between Paul Davis and Allstate, which is dated
4    2012.  (*Id.* at 7-8; Knudsen Decl. (Dkt. # 124) ¶ 6.)

5          The court agrees with Paul Davis that questions about its relationship with Allstate
6    prior to December 25, 2019 or after June 30, 2020 are not relevant to Mr. Lindquist's
7    trespass claim.  (*See* Mot. at 8 (citing Restatement 2d of Torts §§ 216-222)); *see also*
8    *Wallace v. Lewis Cty.*, 137 P.3d 101, 108 (Wash. Ct. App. 2006) (describing elements of
9    intentional trespass), *as corrected* (Aug. 15, 2006).  Nor are such questions related to any
10   defense that Paul Davis might raise.  Mr. Lindquist suggests that because Paul Davis has
11   argued "that it acted properly in the context of Allstate's ongoing investigation of the
12   claim," it has opened itself up to discovery into its "work with insurers on other insurance
13   claims; other instances in which it has destroyed property without the consent of the
14   property owner; and Paul Davis's relationship with the insurance company in general."
15   (Resp. at 8 (citing MTD at 4-5).)

16         But neither Paul Davis's motion to dismiss, nor Mr. Lindquist's response, turned
17   on what Paul Davis's other work demonstrated.  Rather, the briefing focused on the
18   extent to which the policy granted Allstate—and, through it, Paul Davis—authorization
19   to enter Mr. Lindquist's property and the scope of any such authorization.  (*See* MTD at
20   4-5; *see also* MTD Resp. (Dkt. # 47) at 8-10; 3/5/21 Order at 8-9.)  That question is
21   necessarily governed by arguments about what the Policy requires and permits.  If Paul
22   Davis's conduct or work on other claims is relevant to that inquiry, Mr. Lindquist has not

explained how.  (*See* Resp. at 8.)  Additionally, while the court understands that Mr. Lindquist intends for Paul Davis to be "a witness regarding not only the claims against it, but also regarding the claims asserted against Allstate" (*id.* at 5), Mr. Lindquist makes no effort to connect testimony about Paul Davis's work on other claims to the claims it brings against Allstate.  (*See id.* at 5, 8.)

Because Paul Davis persuasively argues that its testimony about events and circumstances that pre-date the December 25, 2019 fire loss, or post-date the completion of its work for Allstate on Mr. Lindquist's claim, would not be relevant to any claims or defenses in this matter, the court GRANTS the motion.  Mr. Lindquist must confine his deposition questions, on all of his proposed topics, to events and circumstances occurring between December 25, 2019 and June 30, 2020.

**C.    Striking Deposition Topics 14-16**

Next, Paul Davis asks the court to strike topics 14, 15, and 16 from Mr. Lindquist's Amended Notice.  (Mot. at 8.)  The court considers each request in turn.

1.    Topics 14 and 15

Topic 14 asks Paul Davis to "[i]dentify every instance over the past 10 years in which you have conducted demolition services at a property without express authorization or express permission from a person or entity that was not (a) the owner; (b) the occupant; (c) a lessee; or (d) a governmental entity."  (Am. Not. ¶ 14.)  Topic 15 asks Paul Davis to testify to "[a]ll lawsuits or legal claims filed against you in the past 10 years."  (*Id.* ¶ 15.)  As with its general request for a protective temporal limitation, Paul Davis contends that topics 14 and 15 are irrelevant to the trespass claim against it because

any "[p]attern of behavior is not an element of trespass." (Mot. at 8.) Paul Davis further argues that topic 15, in particular, will "needlessly increase the costs of" its defense, in particular, because it "does not have an efficient method of compiling such information," which renders the request unduly burdensome insofar as it necessitates the expenditure of "an enormous amount of manpower and time" "to review all of its jobs/projects on a file by file basis." (*Id.* at 9.) Finally, it points out that any lawsuits filed against it would be matters of public record and could be far more easily discovered by Mr. Lindquist searching public records than by Paul Davis combing its files and testifying in a deposition. (*Id.*)

Mr. Lindquist's response is that these topics are relevant because they may help "identify potential witnesses for similar acts, and to obtain prior statements and admissions from the corporation." (Resp. at 11.) That may be true but, as with his objection to the imposition of a date range, Mr. Lindquist does not explain how those witnesses or corporate admissions relate to any of the claims or defenses at issue in this lawsuit. (*See id.*) Paul Davis has persuaded the court that these topics do not relate and so the court GRANTS the motion and strikes topics 14 and 15.

2.  Topic 16

Topic 16 asks Paul Davis to testify about "[a]ll agreements in which any other entity or person (including without limitation Allstate) agrees to pay your costs of defense or part or all of any judgment entered against you in this action." (Am. Not. ¶ 16.) Paul Davis asks the court to limit this topic to the master services agreement, which it has already produced to Mr. Lindquist and agrees he may inquire about at the

1  deposition. (Mot. at 10.) Paul Davis further represents that "[t]he only other agreement"
2  responsive to this topic is a "retention agreement," which "was generated during
3  litigation" and "is absolutely privileged" (Reply at 6) and irrelevant (Mot. at 10). Mr.
4  Lindquist contends that probing this topic may lead to information that he can use to
5  "show bias, witness influence," and attack witness credibility. (Resp. at 10.)

6       In the Ninth Circuit, indemnification agreements may be used to show alignment
7  between two parties and to attack their credibility as witnesses. *See Brocklesby v. United*
8  *States*, 767 F.2d 1288, 1292-93 (9th Cir. 1985). Moreover, "[t]he Ninth Circuit has
9  repeatedly held retainer agreements are not protected by the attorney-client privilege or
10  work product doctrine." *Gusman v. Comcast Corp.*, 298 F.R.D. 592, 599 (S.D. Cal.
11  2014) (collecting cases). Because indemnification agreements may be relevant and are
12  not necessarily covered by privilege, the court DENIES Paul Davis's motion and declines
13  to strike topic 16. Mr. Lindquist may ask Paul Davis's designee about the master
14  services agreement, as Paul Davis acknowledges, and may also inquire about the
15  existence of any other indemnification agreements it has. Any risk that Paul Davis's
16  witness will inadvertently reveal privileged or protected information can be mitigated by
17  its attorney counseling the designee, in advance of the deposition, "on the scope of the
18  attorney-client privilege and attorney work product doctrine." *See U.S. E.E.O.C. v.*
19  *Caesars Ent., Inc.*, 237 F.R.D. 428, 434 (D. Nev. 2006).

## IV. CONCLUSION

21       For the foregoing reasons, the court GRANTS in part and DENIES in part Paul
22  Davis's motion for a protective order (Dkt. # 121). Specifically, the court ORDERS Mr.

1 | Lindquist to confine his deposition questions to events and circumstances occurring
2 | between December 25, 2019 and June 30, 2020, and STRIKES Mr. Lindquist's proposed
3 | deposition topics 14 and 15.  However, the court DECLINES TO STRIKE Mr.
4 | Lindquist's proposed deposition topic 16.

Dated this 24th day of January, 2022.

*(signature)*

JAMES L. ROBART
United States District Judge