1

2

3

4

5

6

7

8    UNITED STATES DISTRICT COURT
     WESTERN DISTRICT OF WASHINGTON
     AT SEATTLE

9

10   ALLSTATE INDEMNITY                    CASE NO. C20-1508JLR
     COMPANY,
11                                          ORDER ON RANDY
                            Plaintiff,      LINDQUIST'S MOTION TO
12          v.                              COMPEL CONTINUED
                                            DEPOSITION
13   RANDY LINDQUIST, et al.,

14                          Defendants.

15   _____

16   RANDY LINDQUIST,

17                  Third-Party Plaintiff,

18   v.

19   MELODY J. GRONDAHL, et al.,

20                  Third-Party Defendants

21

22

ORDER - 1

1

## I.   INTRODUCTION

2       Before the court is Third-Party Plaintiff Randy Lindquist's motion to compel the

3  continued deposition of Third-Party Defendant G&J Restoration, Inc., d/b/a Paul Davis of

4  Greater Seattle ("Paul Davis").  (Mot. (Dkt. # 134); Reply (Dkt. # 146).)  Paul Davis

5  opposes and moves to strike the motion to compel, and also moves to strike the affidavit

6  of William Smart (the "Smart Affidavit") (Smart Aff. (Dkt. # 136)).  (Resp. (Dkt.

7  # 140).)  The court has considered the parties' submissions, the relevant portions of the

8  record, and the applicable law.  Being fully advised,[1] Paul Davis's motions to strike are

9  DENIED, and Mr. Lindquist's motion to compel is GRANTED in part and DENIED in

10  part.

11

## II.   BACKGROUND

12       The court has previously described Paul Davis's involvement in Allstate

13  Indemnity Company's ("Allstate") investigation of the fire that burned down Mr.

14  Lindquist's house at 6920 Fisher Road in Edmonds, Washington (the "Fisher Road

15  House").  (*See* 1/24/22 Order (Dkt. # 127) at 2-5.)  In that same order, the court also

16  limited the scope of Mr. Lindquist's deposition of Paul Davis's Federal Rule of Civil

17  Procedure 30(b)(6) designee by (1) confining Mr. Lindquist's deposition to events and

18  circumstances occurring between December 25, 2019 and June 30, 2020, and (2) striking

19  deposition topics 14 and 15.  (*See id.* at 8-9.)  On January 27, 2022, Mr. Lindquist

20  //

21

22

---

[1] No party requests oral argument (*see* Mot. at 1; Resp. at 1), and the court concludes that oral argument would not be helpful to its disposition of the motions.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

1   deposed Karl Buettner, Paul Davis's designee under Rule 30(b)(6).  (*See* O'Neill Decl.

2   (Dkt. # 141) ¶ 3, Ex. A ("Buettner Depo. Tr.") at 1.)

3       Following Mr. Buettner's deposition, Mr. Lindquist requested that Paul Davis

4   provide additional information about any applicable insurance policies it held and also

5   asserted his view that Paul Davis had failed to meet its obligations under Rule 30(b)(6),

6   based on Mr. Buettner's purported lack of preparation and inability to testify on the

7   noticed deposition topics.  (*See* O'Neill Decl. ¶ 5, Ex. C.)  On or about February 3, 2022,

8   the parties held a telephonic discovery conference in which Mr. Lindquist's counsel

9   demanded an opportunity to re-depose Paul Davis, at Paul Davis' expense.  (*See id.*; *see*

10  *also* Smart Decl. (Dkt. # 135) ¶ 4, Ex. B.)  Mr. Lindquist insisted on an answer to his

11  demand by the close of business on February 4, 2022; a timeline to which Paul Davis's

12  counsel indicated it could not commit.  (*Id.*; O'Neill Decl., Ex. C.)  Mr. Lindquist filed

13  the instant motion on February 10, 2022.  (*See* Mot.)

14      **III.   ANALYSIS**

15      Mr. Lindquist seeks an order:  (1) compelling Paul Davis "to produce a

16  knowledgeable witness for a continued [Rule 30(b)(6)] deposition at its own expense; and

17  (2) awarding attorney fees and imposing sanctions against Paul Davis for failing to

18  produce a knowledgeable witness" for the January 27, 2022 deposition.  (*See* Mot. at

19  1-2.)  Paul Davis asserts that Mr. Buettner was adequately prepared to testify and that Mr.

20  Lindquist's motion should be stricken, or renoted, because it was filed before the parties

21  had finished conferring.  (*See* Resp. at 3, 5-7.)  Paul Davis further asks the court to strike

22  the Smart Affidavit.  (*Id.* at 2-3.)

1    The court first considers Paul Davis's motion to strike the Smart Affidavit before

2    turning to consider whether Mr. Lindquist's motion must be stricken as untimely or, if

3    not, whether Paul Davis's Rule 30(b)(6) deposition should be recalled.  Last, the court

4    considers whether sanctions against Paul Davis and its counsel are warranted.

5    **A.    Paul Davis's Motion to Strike the Affidavit of William Smart**

6        Paul Davis asks the court to strike the Smart Affidavit, which contains excerpts

7    from Mr. Buettner's deposition transcript organized under "argumentative headnotes,"

8    because "it does not attach a true and correct copy of the transcript" and will not aid the

9    court in deciding the motion.  (Resp. at 2-3 (emphasis omitted; *see also* Smart Aff.).)

10       Paul Davis filed "a true and correct copy of the complete transcript" as an exhibit

11   to its response brief (*see* Buettner Depo. Tr.), which the court has relied on in deciding

12   the motions.  Because the court did not consider the contents of the Smart Affidavit in

13   deciding Mr. Lindquist's motion to compel, Paul Davis's motion to strike is DENIED as

14   moot.  *See Convoyant LLC v. DeepThink, LLC*, No. C21-0310JLR, 2021 WL 5810638, at

15   *3 (W.D. Wash. Dec. 7, 2021) (denying motion to strike a declaration as moot where the

16   court did "not consider" the contents of the declaration in ruling on the motion the

17   declaration supported).

18   **B.    Paul Davis's Motion to Strike Mr. Lindquist's Motion**

19       Paul Davis also asks the court to strike or renote Mr. Lindquist's motion to compel

20   because Mr. Lindquist's motion was purportedly filed "without allowing Paul Davis a

21   chance to respond" to Mr. Lindquist's demand that Paul Davis agree to a further

22   deposition and to cover the costs of the initial and recalled deposition.  (Resp. at 3-4.)

ORDER - 4

1   When making a motion to compel discovery brought under Rule 37, the movant

2   must certify that it has made a good faith attempt to resolve the issue without motions

3   practice.  *See* Fed. R. Civ. P. 37(a)(1); Local Rules W.D. Wash. LCR 37(a)(1).  "The

4   Federal and Local Rules have this requirement to minimize waste of judicial time and

5   resources on issues that could be resolved amongst the parties."  *See Crofts v. Issaquah*

6   *Sch. Dist.*, No. C17-1365RAJ, 2018 WL 1577544, at *1 (W.D. Wash. Mar. 30, 2018).

7   As Mr. Lindquist certifies, the parties conferred on several occasions between

8   January 27 and February 3, 2022, including telephonically.  (*See* Smart Decl. ¶ 2; *id.*, Ex.

9   B; O'Neill Decl., Ex. C.)  In those meet-and-confers, the parties substantively discussed

10   their discovery dispute, including Mr. Lindquist's request for additional Paul Davis

11   insurance-related documents, his contention that Mr. Buettner was inadequately prepared

12   as a Rule 30(b)(6) designee, and his demand for a further deposition of Paul Davis, with

13   all deposition expenses covered by Paul Davis.  (*See* Smart Decl., Ex. B; O'Neill Decl.,

14   Ex. C.)  Mr. Lindquist also made clear that he intended to file a motion to compel if Paul

15   Davis did not agree to his proposed terms and gave Paul Davis approximately 24-hours to

16   respond.  (*Id.*)

17   Although the court does not endorse or approve of such ultimatums, the record

18   before the court shows that Mr. Lindquist's counsel properly conferred with Paul Davis

19   in good faith prior to filing the instant motion.  *See Doe v. Trump*, 329 F.R.D. 262, 270

20   n.10 (W.D. Wash. 2018) (finding that meet and confer obligation was met where "the

21   parties were in regular contact throughout the discovery period, and the Plaintiffs

22   conducted specific meet and confer telephonic conferences").  The parties had several

1    opportunities to set forth their respective positions, including by telephone, but were

2    unable to resolve their differences.  (*See* O'Neill Decl., Ex. C (asserting Paul Davis's

3    position "that Mr. Buettner was prepared and attended the deposition").)  Accordingly,

4    the court does not find that Mr. Lindquist's motion was prematurely filed and Paul

5    Davis's motion to strike Mr. Lindquist's motion to compel is DENIED.[2]

6    **C.    Compelling the Re-Deposition of Paul Davis**

7          Mr. Lindquist asks the court to "compel Paul Davis to produce a prepared,

8    knowledgeable designee for a continued deposition" under Rule 30(b)(6).  (Mot. at 10.)

9    He argues that this relief is warranted because Paul Davis's original designee, Mr.

10   Buettner, was "unprepared and unknowledgeable on the [fifteen] topics for which he was

11   supposed to testify."  (*Id.* at 4).  Paul Davis asserts that Mr. Buettner was prepared and

12   did competently testify "to the facts and information reasonably known by the company,"

13   and that "[a]ny further information that [Mr.] Lindquist believes he is entitled to can be

14   gained by deposing" other fact witnesses.  (Resp. at 5.)

15         Under Rule 30(b)(6), a corporate entity named as a deponent "must designate one

16   or more officers, directors, or managing agents, or designate other persons who consent

17   to testify on its behalf."  Fed. R. Civ. P. 30(b)(6).  The corporate designee "must testify

18

---

19         [2] The court may have reached a different result had Mr. Lindquist's counsel filed the
     motion the day after sending Paul Davis a demand letter (*see* Smart Decl., Ex. B).  *See Osborne*
20   *v. Billings Clinic*, No. CV 14-126-BLG-SPW, 2015 WL 1643379, at *2 (D. Mont. Apr. 13,
     2015) (finding that "one demand letter and one follow up letter with a threat to file a motion to
21   compel does not constitute a good faith attempt at a 'dialogue'").  However, Mr. Lindquist's
     motion was filed nearly a week after his demand letter was sent.  (*Compare* Smart Decl., Ex. B,
22   *with* Mot.)  Given the fast-approaching discovery cut-off deadline, that allowed for a reasonable
     amount of time for Paul Davis's counsel to confer with her client and respond to Mr. Lindquist.

about information known or reasonably available to the organization," *id.*, and it is the

duty of the corporation "to educate its witnesses so they are prepared to fully answer the

questions posed at the deposition," *Bowoto v. ChevronTexaco Corp.*, No. C 99-02506 SI,

2006 WL 294799, at *1 (N.D. Cal. Feb. 7, 2006) (citing *In re Vitamins Antitrust

Litig.,* 216 F.R.D. 168, 172 (D.D.C. 2003)), *on reconsideration sub nom. Bowoto v.

Chevron Corp.*, No. C 99-02506 SI, 2006 WL 2455740 (N.D. Cal. Aug. 22, 2006).

Neither "personal knowledge of the designated subject matter," *Carlson v. Sam's W.,

Inc.*, No. 217CV02882MMDGWF, 2018 WL 4094856, at *2 (D. Nev. Aug. 28, 2018),

nor "absolute perfection in preparation" are required, *Santa Clarita Valley Water Agency

v. Whittaker Corp.*, No. CV1806825GWRAOX, 2020 WL 8102054, at *8 (C.D. Cal. July

9, 2020) (quotation marks omitted).  But the corporate designee must make a good faith

effort "to find out the relevant facts" by "collect[ing] information, review[ing]

documents, and interview[ing] employees with personal knowledge."  *See id.*

Courts recognize that "preparing for a Rule 30(b)(6) deposition can be

burdensome" for the corporation but consider that cost to be "merely the result of the

concomitant obligation from the privilege of being able to use the corporate form in order

to conduct business."  *See United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C.),

*aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996).  Accordingly, "[w]hen a witness is designated by

a corporate party to speak on its behalf pursuant to Rule 30(b)(6), producing an

unprepared witness is tantamount to a failure to appear that is sanctionable under Rule

37(d)."  *Krausz Indus., Ltd v. Romac Indus., Inc.*, No. C10-1204RSL, 2011 WL

13100750, at *1 (W.D. Wash. Aug. 10, 2011).

1    Here, the parties disagree about whether Mr. Buettner was prepared to testify on

2    each of the noticed topics.  (*See* Mot. at 4-7; Resp. at 8-10.)  For the reasons given below,

3    the court finds that Mr. Buettner was adequately prepared to testify as to Topic Nos. 1-3,

4    but was inadequately prepared to testify about the remaining topics for which he was

5    designated.

6    1.    Topic Nos. 1-3

7    Mr. Buettner adequately testified as to Topic Nos. 1-3, which covered:  (1) "[t]he

8    ownership and management of G & J Restoration, Inc."; (2) Paul Davis's "systems for

9    creating and maintaining documents . . . relating to services performed by your company

10   or your employees"; and (3) "[t]he existence and location of all documents relating to"

11   Mr. Lindquist, the Fisher Road House, or any relevant insurance claims.  (*See* Smart

12   Decl. ¶ 3, Ex. A at 3.)  Although Mr. Buettner was unable to name Paul Davis's corporate

13   officers or identify the Paul Davis employee responsible for purchasing insurance

14   policies, he sufficiently testified about, among other relevant details, Paul Davis's

15   corporate structure, the General Manager role, and the names of his supervisor and

16   predecessor.  (*See* Buettner Depo. Tr. at 7:8-11:25.)  He also testified about his efforts to

17   search various electronic and hard copy files (*see id.* at 14:10-15, 15:22-16:2, 24:12-22),

18   and stated that he looked broadly "for any relevant documents" or "anything [he] could

19   think of to try to find something related to this case" (*id.* at 17:20-22, 18:15-16).

20   The range of responsive information Mr. Buettner was able to provide suffices to

21   meet his obligation on Topic Nos. 1-3.  *See Santa Clarita Valley Water Agency*, 2020 WL

22   //

1   8102054, at *8 (noting that "absolute perfection" is not required of a Rule 30(b)(6)

2   witness).  Mr. Lindquist's motion to compel is DENIED as to Topic Nos. 1-3.

3       2.    Topic No. 4

4       Mr. Buettner was not adequately prepared to testify on Topic No. 4, however,

5   which covered "[a]ll agreements, including without limitation subcontracts, relating to (a)

6   Randy Lindquist; (b) the subject property; or (c) the insurance claim."  (Smart Decl., Ex.

7   A at 3.)  Mr. Buettner testified that he located a certificate of liability showing an

8   insurance policy held by Currie Construction on which Paul Davis was listed as an

9   additional insured.  (Buettner Depo. Tr. at 75:1-22.)  However, he conceded that he did

10  not attempt to obtain a copy of the actual policy to review, nor did he speak with anyone

11  at Paul Davis who could have told him more about Paul Davis's rights and obligations

12  under that policy.  (*Id.* at 76:3-9; 106:17-25.)  Accordingly, Mr. Buettner was not

13  adequately prepared to testify on this topic and Mr. Lindquist's motion to compel is

14  GRANTED as to Topic No. 4.

15      3.    Topic Nos. 5-13

16      Mr. Buettner also failed to adequately prepare to testify on deposition Topic Nos.

17  5-13, which asked him to:  identify "all entities and persons involved in" Paul Davis's

18  work at the Fisher Road House (Topic No. 5); produce documents and provide

19  information concerning any photographs, communications, notes, invoices, or payments

20  relating to Mr. Lindquist, the Fisher Road House work, or related insurance claims (Topic

21  Nos. 6-10); and describe any research Paul Davis conducted to confirm it had adequate

22  //

ORDER - 9

1  authorization to work on Mr. Lindquist's property, as well as any policies and industry

2  standards governing that work (Topic Nos. 11-13).  (Smart Decl., Ex. A at 3-4.)

3        Mr. Buettner's inability to provide responsive answers on these topics is the result

4  of Paul Davis's decision not to have him speak with any of the employees who actually

5  worked on the Fisher Road House.  That inadequate preparation meant he was unable to

6  describe the nature or scope of work performed at Mr. Lindquist's home by its employees

7  or contractors (*id.* at 48:12-49:3); confirm or deny whether "Paul Davis locked Mr.

8  Lindquist out of the property with chains and big locks" (*id.* at 98:11-15); or even say

9  whether any steps were taken "to sequester the personal property located on site so that it

10  could be protected from the work that Paul Davis was doing" (*id.* at 98:16-23).  Mr.

11  Buettner should have at least attempted to obtain relevant information from Greg Thode,

12  the former general manager, and David Ganschow, a current employee of Paul Davis.

13  (*See id.* at 54:15-57:15.)

14        And, while Mr. Buettner provided some photographs, communications, notes,

15  invoices, and evidence of payments he had located in Paul Davis's files, he could not

16  testify with any certainty about whether any other such materials existed because he

17  never spoke to anyone involved in Paul Davis's operations during the relevant time

18  period.  (*See, e.g.*, *id.* at 58:16-24, 107:15-109:17.)  Likewise, he could not speak to

19  whether Paul Davis had any awareness of, or concern about, the risk that it might violate

20  a homeowner's rights when entering the property at the insurer's invitation.  (*See, e.g.*, *id.*

21  at 111:1-112:3 (testifying that he was not aware of any manuals or standards maintained

22  by Paul Davis).)

ORDER - 10

1    Paul Davis has not established that speaking to those who worked on the Fisher

2    Road House job would have been burdensome or was unlikely to lead to relevant

3    information.  Paul Davis would be hard pressed to make that argument with respect to

4    Mr. Ganschow, who, according to Mr. Buettner's testimony, is a current employee that

5    speaks with Mr. Buettner "[a]lmost daily," and was copied on emails discussing the

6    Fisher Road House job that Mr. Buettner reviewed.  (*See id.* at 54:15-57:15.)  Mr.

7    Buettner's failure to seek information from such a readily available source demonstrates

8    the extent of his inadequate preparation.  *See Santa Clarita Valley Water Agency*, 2020

9    WL 8102054, at *8 (requiring a good faith effort "to find out the relevant facts,"

10   including by "interview[ing] employees with personal knowledge").

11    Mr. Buettner also neglected to speak with Mr. Thode, despite acknowledging that

12   he was "the main employee who dealt with the actions and claims involved in this

13   lawsuit."  (Resp. at 6.)  Many courts have found that "[a]dequate preparation" for a Rule

14   30(b)(6) deposition requires "contacting and interviewing former employees with

15   relevant knowledge if they are reasonably available."  *See, e.g.*, *Carlson*, 2018 WL

16   4094856, at *2; *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006)

17   ("The deponent must prepare the designee to the extent matters are reasonably available,

18   whether from documents, past employees, or other sources."); *Great Am. Ins. Co. of New*

19   *York v. Vegas Const. Co.*, 251 F.R.D. 534, 541 (D. Nev. 2008); *Taylor*, 166 F.R.D. at

20   361; *Hamilton v. RadioShack Corp.*, No. C 11-00888 LB, 2012 WL 787484, at *2 (N.D.

21   //

22   //

ORDER - 11

1   Cal. Mar. 9, 2012).[3]  Paul Davis contends that requiring it to obtain information from Mr.

2   Thome would have been unduly burdensome (*id.*), but the court dismisses that concern

3   out of hand since Mr. Buettner did not even attempt to do so (*see* Buettner Depo. Tr. at

4   38:1-6).

5          The court also rejects Paul Davis's suggestion that it is relieved from its obligation

6   to obtain relevant information from Mr. Thode because Mr. Lindquist can obtain that

7   same information through a separate deposition of Mr. Thode.  (*See* Resp. at 7.)  "The

8   testimony of a Rule 30(b)(6) designee" serves an entirely different purpose than a

9   deposition of an individual because the designee "'represents the knowledge of the

10  corporation, not of the individual deponents.'"  *Great Am. Ins. Co. of New York*, 251

11  F.R.D. at 538 (quoting *Taylor*, 166 F.R.D. at 361).  Substituting Mr. Thode for an

12  adequately prepared designee would, thus, deprive Mr. Lindquist of the opportunity to

13  elicit binding testimony on Paul Davis's "position on the noticed topics."  *Id.*

14         Ultimately, Mr. Buettner's failure to even attempt to obtain information from any

15  Paul Davis employees who had first-hand knowledge of the Fisher Road House job, such

16  as Mr. Ganschow and Mr. Thode, left him inadequately prepared to testify about Topic

17  Nos. 5-13.  Mr. Lindquist's motion to compel is GRANTED with respect to those topics.

18  //

19  //

20

21         [3] At least one court in this circuit, however, has drawn a distinction between former
    employees and former non-employees.  *See, e.g.*, *Santa Clarita Valley Water Agency*, 2020 WL
22  8102054, at *14 (finding it unreasonable to expect a corporate designee to obtain information
    from a former consultant).

1     4.     <u>Topic Nos. 16 and 17</u>

2         Finally, Mr. Buettner failed to appear with respect to Topic Nos. 16 and 17. Topic

3 No. 16 seeks information concerning indemnification agreements between Paul Davis

4 and Allstate, and Topic No. 17 seeks communications with Allstate's counsel, Wathen

5 Leid Hall Rider, P.C., that pre-date the firm's current representation of Paul Davis.

6 (*See* Smart Decl. ¶ 3, Ex. A at 4.) Mr. Buettner testified that he had not "learned about

7 any of the obligations or the creation of" an indemnity agreement between Allstate and

8 Paul Davis and that Mr. Lindquist would "have to ask somebody else about that."

9 (Buettner Depo. Tr. at 113:18-114:12; *id.* at 44:21-46:7 (identifying Jeff Hall as likely to

10 have relevant information)).

11         Paul Davis designated Mr. Buettner, not Mr. Hall, to testify on its behalf. Thus, it

12 was Paul Davis's responsibility to ensure that Mr. Buettner was prepared to offer

13 informed, binding testimony. *See Bowoto*, 2006 WL 294799, at *1. "The fact that [Mr.

14 Buettner] had to state . . . that the answer to the question would be known by" Mr. Hall

15 "clearly indicates . . . that [Paul Davis] did not adequately prepare the tendered witness to

16 answer the questions set out in" Topic Nos. 16 and 17. *See Heartland Surgical Specialty*

17 *Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 1054279, at *6 (D.

18 Kan. Apr. 9, 2007). Accordingly, Mr. Lindquist's motion to compel is GRANTED with

19 respect to Topic Nos. 16 and 17.

20 **D.   Mr. Lindquist's Request for Sanctions and Fees Against Paul Davis**

21         The court now turns to address Mr. Lindquist's request that the court sanction Paul

22 Davis for failing to produce a knowledgeable Rule 30(b)(6) witness. (Mot. at 9.) "When

a witness is designated by a corporate party to speak on its behalf pursuant to Rule

30(b)(6), producing an unprepared witness is tantamount to a failure to appear that is

sanctionable under Rule 37(d)." *Krausz Indus., Ltd*, 2011 WL 13100750, at *1; *Great*

*Am. Ins. Co. of New York*, 251 F.R.D. at 542.  Thus, "[c]ourts have imposed a variety of

sanctions for the failure to produce an adequately prepared Rule 30(b)(6) deponent,"

including:

> (1) costs and attorneys' fees incurred in filing a motion to compel;
> (2) monetary sanctions against the non-complying party and its counsel;
> (3) an order compelling compliance with Rule 30(b)(6) and requiring an
> educated deponent to be produced; (4) requiring a corporation to redesignate
> an adequately prepared witness to testify in the new deposition at the
> corporation's expense."

*Id.* at 542-43.  Unless the failure to produce an adequately prepared Rule 30(b)(6)

deponent was "substantially justified," the court must, at a minimum, require "the party

failing to act, the attorney advising that party, or both" to pay "the reasonable expenses,

including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(d)(3).

Although Mr. Buettner's review of certain documents and files allowed him to

testify about Paul Davis's general operations, his failure to speak to anyone with

first-hand knowledge of Paul Davis's work at the Fisher Road House prevented him from

testifying knowledgeably about the events most central to this action.  Paul Davis's

failure to prepare its designee in this manner was not substantially justified.

Accordingly, Mr. Lindquist's request for sanctions is GRANTED.  The court

ORDERS Paul Davis to "to redesignate an adequately prepared witness to testify in the

new deposition" on Topic Nos. 4-13 and 16-17, at Paul Davis's expense.  *See Great Am.*

1   *Ins. Co. of New York*, 251 F.R.D. at 542-43.  Paul Davis shall make its designee available

2   for deposition on or before April 18, 2022 and the parties shall confer in good faith to

3   schedule the deposition at a time and place of mutual convenience.

4        Further, the court GRANTS Mr. Lindquist's request for reasonable expenses and

5   DIRECTS Mr. Lindquist to file a motion for payment of expenses, including attorney's

6   fees, associated with (1) the January 27, 2022 deposition of Mr. Buettner; and (2) briefing

7   on this motion to compel within fourteen (14) days of the filing of this order.

8                          **IV.    CONCLUSION**

9        Based on the foregoing, Paul Davis's motions to strike the Smart Affidavit and

10  Mr. Lindquist's motion to compel (Dkt. # 140) are DENIED.  Mr. Lindquist's motion to

11  compel (Dkt. # 134) is GRANTED in part and DENIED in part.  Paul Davis is

12  ORDERED to redesignate an adequately prepared witness to testify in a new deposition

13  on Topic Nos. 4-13 and 16-17, with the expenses associated with that deposition paid by

14  Paul Davis.  Paul Davis is further ORDERED to make its designee available for

15  deposition on or before April 18, 2022.  The parties shall confer in good faith to schedule

16  the deposition at a time and place of mutual convenience.

17       Further, the court GRANTS Mr. Lindquist's request for reasonable expenses and

18  DIRECTS Mr. Lindquist to file a motion for payment of expenses, including attorney's

19  fees, associated with (1) the January 27, 2022 deposition of Mr. Buettner; and (2) briefing

20  on this motion to compel within fourteen (14) days of the filing of this order.

21  //

22  //

1     Dated this 16th day of March, 2022.

2

3 _____

4                      JAMES L. ROBART
                     United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 16