UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALLSTATE INDEMNITY COMPANY, | CASE NO. C20-1508JLR |
| Plaintiff, | ORDER |
| v. | |
| RANDY LINDQUIST, et al., | |
| Defendants. | |

## I.    INTRODUCTION

Before the court is Defendant Randy Lindquist's motion for partial summary judgment.  (Mot. (Dkt. # 147); Reply (Dkt. # 166).)  Plaintiff Allstate Indemnity Company ("Allstate") opposes Mr. Lindquist's motion, moves for a continuance under Federal Rule of Civil Procedure 56(d), and also cross-moves for partial summary judgment on its alleged violations of Washington insurance regulations and bad faith conduct.  (X-MSJ (Dkt. # 162); X-MSJ Reply (Dkt. # 181).)  Mr. Lindquist opposes

1   Allstate's cross-motion.  (X-MSJ Resp. (Dkt. # 177).)  After the parties completed

2   briefing on the partial summary judgment cross-motions, Allstate moved for leave to file

3   a supplemental brief in opposition to Mr. Lindquist's motion for partial summary

4   judgment.  (MFL (Dkt. # 192); MFL Reply (Dkt. # 200).)  Mr. Lindquist opposes the

5   motion for leave.  (MFL Resp. (Dkt. # 198).)

6        The court has considered the parties' submissions, the relevant portions of the

7   record, and the applicable law.  Being fully advised,[1] the court DENIES Allstate's motion

8   for a continuance; DENIES Allstate's motion for leave to supplement its opposition brief;

9   GRANTS in part and DENIES in part Mr. Lindquist's motion for partial summary

10  judgment; and GRANTS in part and DENIES in part Allstate's cross-motion for partial

11  summary judgment.

12                    **II.    BACKGROUND**

13       This case stems from a fire that burned down Mr. Lindquist's house at 6920 Fisher

14  Road in Edmonds, Washington (the "Fisher Road House") on December 25, 2019.

15  (Compl. (Dkt. # 1) ¶¶ 3.12.)  The Fisher Road House was insured by a homeowner's

16  insurance policy that Allstate issued in 2004 and renewed on an annual basis thereafter.

17  (*See* Argiannis Decl. (Dkt. # 72) ¶ 3, Ex. A (the "Policy"); *see also* 10/25/21 Ruiz Decl.

18  (Dkt. # 104) ¶ 2, Ex. A ("Grondahl Dep. Tr.") at 121:6-122:11.)  The court incorporates

19  by reference the summation of the factual background contained in its November 24,

20  //

21  _____

    [1] The parties do not request oral argument on any of the pending motions and the court
    concludes that oral argument would not be helpful to its disposition of the motions.  *See* Local
22  Rules W.D. Wash. LCR 7(b)(4).

ORDER - 2

1   2021 order (*see* 11/24/21 Order (Dkt. # 117) at 2-5), and discusses below the specific

2   facts pertinent to the current motions in its analysis of the issues presented therein.

3   **III.   ANALYSIS**

4   The court begins by addressing Allstate's motion for a continuance under Federal

5   Rule of Civil Procedure 56(d) and its motion for leave to supplement its opposition to Mr.

6   Lindquist's motion for partial summary judgment.  After addressing those motions, the

7   court turns to consider Mr. Lindquist's motion for partial summary judgment and

8   Allstate's cross-motion for partial summary judgment.

9   **A.   Allstate's Motion for a Continuance**

10  Allstate requests a continuance under Federal Rule of Civil Procedure 56(d),

11  which permits the court to defer its consideration of a summary judgment motion, or to

12  deny the motion outright, in order to permit the Rule 56(d) movant "time to obtain

13  affidavits or declarations or to take discovery."  Fed. R. Civ. P. 56(d); (X-MSJ at 1).  To

14  obtain relief under Rule 56(d), "[t]he requesting party must show: (1) it has set forth in

15  affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts

16  sought exist; and (3) the sought-after facts are essential to oppose summary judgment."

17  *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th

18  Cir. 2008) (citing *Cal. on behalf of Cal. Dep't of Toxic Substances Control v. Campbell*,

19  138 F.3d 772, 779 (9th Cir. 1998)).

20  Allstate asserts that it needs more time "to complete the depositions of" Roger

21  Howson and Terry Eggert—two individuals on whose declarations Mr. Lindquist partly

22  relies—"in order to ascertain" (X-MSJ at 2) "whether Mr. Eggert took into account the

1   relative property damage when conducting his valuation" (O'Neill Decl. (Dkt. # 163)

2   ¶ 17)).  Allstate fails to show that it lacked adequate time to develop these facts and the

3   court doubts it did, since the record plainly shows that Allstate has known since Mr.

4   Lindquist's examination under oath ("EOU") in August 2020 that Mr. Lindquist worked

5   with Mr. Howson and Mr. Eggert to develop valuation estimates for the destroyed

6   personal property and structural damage in connection with the claim he submitted to

7   Allstate.  (*See* 11/12/20 Leid Decl. (Dkt. # 9) ¶ 5, Ex. C ("Lindquist EOU") at 87:3-10

8   (Allstate's counsel asking Mr. Lindquist about how he described his personal property to

9   Mr. Howson in the course of developing a personal property inventory and replacement

10  cost estimate); *id.* at 109:4-10 (Allstate's counsel describing a spreadsheet provided by

11  Mr. Lindquist's counsel on August 12, 2020 that refers to Mr. Eggert's firm, D2

12  Consulting); *see also* 3/10/22 Ruiz Decl. (Dkt. # 148) ¶ 17, Ex. 16 (showing Allstate

13  received Mr. Lindquist's "Proof of Loss for Structure, Personal Property, and Other

14  Structures" on August 13, 2020).)

15       Nor does Allstate demonstrate that "the sought-after facts are essential to oppose

16  summary judgment." *Fam. Home & Fin. Ctr., Inc.*, 525 F.3d at 827.  The testimony

17  Allstate hopes to elicit by re-deposing Mr. Howson or Mr. Eggert might serve to undercut

18  the accuracy of their valuations, but would do nothing to rebut the purpose for which Mr.

19  Lindquist relies on their testimony:  "to establish . . . that the proofs of loss were

20  submitted to Allstate and when; that [Mr.] Howson and [Mr.] Eggert were the authors;

21  that their work occurred after the joint effort by Allstate and Paul Davis to demolish the

22  property; and that Allstate did not reach out to them."  (Reply at 3.)  Moreover, the

1   discovery deadline has passed and the court previously denied Allstate's request for

2   additional time to take discovery against Mr. Howson.  (*See* 5/6/22 Order (Dkt. # 194) at

3   6-7.)

4          Accordingly, Allstate's motion for a continuance under Rule 56(d) is DENIED.

5   **B.   Allstate's Motion for Leave to File a Supplemental Opposition Brief**

6          Allstate also asks for leave to file a supplemental brief in opposition to Mr.

7   Lindquist's motion for partial summary judgment.  (*See* MFL.)  Allstate's deadline for

8   opposing Mr. Lindquist's motion for partial summary judgment was March 28, 2022 (*see*

9   MSJ); *see also* Local Rules W.D. Wash. LCR 7(d)(3), and Allstate filed a timely

10  opposition brief on that date (*see* X-MSJ).  Allstate seeks relief from the March 28, 2022

11  deadline and permission to supplement that opposition in order to add additional

12  arguments relating to:  (1) a July 12, 2019 letter sent by Mr. Lindquist's bankruptcy

13  counsel, Craig Sternberg, to JPMorgan Chase Bank, N.A. ("Chase") regarding a possible

14  settlement of the foreclosure action Chase maintains against Mr. Lindquist; and

15  (2) testimony Mr. Lindquist gave in his bankruptcy proceeding on September 11, 2013.

16  (*See* MFL at 2-3; 4/14/22 O'Neill Decl. (Dkt. # 173) ¶ 9, Ex. G ("Sternberg Letter");

17  5/4/22 O'Neill Decl. (Dkt. # 193) ¶ 3, Ex. 1 (bankruptcy transcript).)  It contends that it

18  "has good cause" for its request because the evidence about which it desires to make

19  supplemental arguments is "newly discovered," and reveals "**significant** discovery

20  deficiencies" by Mr. Lindquist and his counsel that prohibited Allstate from obtaining

21  this information earlier despite its diligence.  (*See* MFL at 2 (emphasis in original).)

22  //

ORDER - 5

1    "A motion for relief from a deadline should, whenever possible, be filed

2    sufficiently in advance of the deadline to allow the court to rule on the motion prior to the

3    deadline."  Local Rules W.D. Wash. LCR 7(j).  The court may grant relief from fixed

4    deadlines only "for good cause."  *See* Fed. R. Civ. P. 6(b).  "This standard 'primarily

5    considers the diligence of the party seeking the amendment.'"  *Coleman v. Quaker Oats*

6    *Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (quoting *Johnson v. Mammoth Recreations,*

7    *Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

8    With respect to the Sternberg Letter, the court previously concluded Allstate's

9    predicament is the result of its own lack of diligence in pursuing discovery against Mr.

10   Sternberg, not any discovery abuse perpetrated by Mr. Lindquist.  (*See* 5/6/22 Order at 9.)

11   The result is the same now that Allstate lays the blame for this letter having not come to

12   light earlier at Chase's feet.  Chase, like Mr. Lindquist, did not need to disclose the

13   Sternberg Letter in response to Allstate's discovery requests, as those requests only asked

14   for information and documents relating to agreements Chase had "entered into" with Mr.

15   Lindquist.  (*See* 5/13/22 O'Neill Decl. (Dkt. # 201) ¶ 4, Ex. 2; *see also id.* ¶ 5, Ex. 3;

16   5/6/22 Order at 9-10 (noting that the settlement proposal at issue in the Sternberg Letter

17   never came to pass).)  Thus, the court is left to conclude, once again, that Allstate failed

18   to exercise reasonable diligence by waiting to seek discovery against Mr. Sternberg or

19   bring the resulting dispute to the court's attention.  (*See* 5/6/22 Order at 6.)  Even setting

20   its diligence in discovery aside, Allstate offers no justification for filing its motion for

21   leave more than three weeks after it received the Sternberg Letter on April 8, 2022.  (*See*

22   MFL Reply at 2.)

1    Allstate has even less ground to stand on with respect to the 2013 bankruptcy

2    proceeding transcript.  Allstate has known about Mr. Lindquist's bankruptcy since shortly

3    after the Fisher Road House burned down.  (*See* 4/25/22 Knudsen Decl. (Dkt. # 184) ¶ 7,

4    Ex. C (claim file entry from January 2020 noting Mr. Lindquist's bankruptcy

5    proceeding); *see also* Lindquist EOU at 17:1-14.)  Indeed, Allstate has argued since the

6    very beginning of this case that Mr. Lindquist's representations to the bankruptcy court

7    were inconsistent with the valuations he later submitted with his proofs of loss.  (*See*

8    Compl. ¶¶ 3.7, 4.5; *see also* Estoppel MSJ (Dkt. # 8) at 6 (describing "inconsistent

9    positions").)  Allstate's apparent failure to pursue the testimony given by Mr. Lindquist

10   in his bankruptcy proceeding until recently reflects a lack of diligence.

11   Because Allstate fails to demonstrate that it diligently pursued the information

12   about which it now seeks to make supplemental arguments, the court concludes that good

13   cause does not exist to allow Allstate a further opportunity to oppose Mr. Lindquist's

14   motion for partial summary judgment.  Accordingly, its motion for leave is DENIED.

15   **C.    Cross-Motions for Partial Summary Judgment**

16   Mr. Lindquist asks the court to grant partial summary judgment in his favor on

17   seven issues:  (1) that he did not misrepresent any material facts to Allstate in the course

18   of its claim investigation; (2) that coverage is not excluded under the Policy's vandalism

19   provision; (3) that he did not abandon the Fisher Road House; (4) that he did not

20   intentionally cause the fire; (5) that Allstate violated Washington insurance regulations

21   found in the Washington Administrative Code ("WAC") at 284-30-330(4)-(5),

22   284-30-370, and 284-30-380(1); (6) that Allstate engaged in bad faith; and that, as a

1   result, (7) he is entitled to coverage.  (*See* Mot. at 12.)  Allstate opposes partial summary

2   judgment in Mr. Lindquist's favor on each of these issues, and also cross-moves for

3   partial summary judgment in its own favor on the alleged insurance regulation violations

4   and on its alleged bad faith conduct.  (X-MSJ at 10-11.)

5        The court first discusses the legal standard that applies to cross-motions for

6   summary judgment before considering the parties' arguments.

7        1.    Legal Standard

8        Under Rule 56 of the Federal Rules of Civil Procedure, either "party may move

9   for summary judgment, identifying each claim or defense—or the part of each claim or

10  defense—on which summary judgment is sought."  Fed. R. Civ. P. 56.  Summary

11  judgment is appropriate if the evidence, when viewed in the light most favorable to the

12  non-moving party, demonstrates "that there is no genuine dispute as to any material fact

13  and the movant is entitled to judgment as a matter of law."  *Id.*; *see Celotex Corp. v.*

14  *Catrett*, 477 U.S. 317, 322 (1986).  A dispute is "genuine" if "the evidence is such that a

15  reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty*

16  *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the

17  outcome of the suit under the governing law."  *Id.*

18       The moving party bears the initial burden of showing that there is no genuine

19  dispute of material fact and that it is entitled to prevail as a matter of law.  *Celotex*, 477

20  U.S. at 323.  If the moving party does not bear the ultimate burden of persuasion at trial,

21  it nevertheless "has both the initial burden of production and the ultimate burden of

22  persuasion on a motion for summary judgment."  *Nissan Fire & Marine Ins. Co. v. Fritz*

*Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Id.*  If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor.  *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

Where cross-motions are at issue, the court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences."  *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (citations omitted).

> 2.    Whether Mr. Lindquist Made Material Misrepresentations to Allstate

Allstate has alleged that no coverage is owed under the Policy because Mr. Lindquist misrepresented or concealed the following information:

    a.    The number of vandalisms to the [Fisher Road House];
    b.    That the property was vacant from 2013 until the fire loss;
    c.    That he was still in the process of a remodel when the fire loss took place;
    d.    The nature and extent of the damages to the [Fisher Road House] over the years;
    e.    The nature and extent and value of his personal property at the [Fisher Road House] at the time of the fire;
    f.    Information regarding his bankruptcy;
    g.    The number of times he was at the [Fisher Road House];
    h.    His actions to safeguard the [Fisher Road House];
    i.    The reason he had $100,000 or more in his personal bank accounts in 2018 and 2019.

(Compl. ¶ 4.5.)  Mr. Lindquist argues that partial summary judgment in his favor is appropriate because Allstate cannot show that he misrepresented or concealed any of this information.  (Mot. at 14.)

Under the Policy, Allstate may decline coverage for "any loss or occurrence in which an insured has concealed or misrepresented any material fact or circumstance that exist[ed] at the time of the loss or occurrence."  (Policy at 6.)  Washington courts "have long upheld" such provisions and will enforce them regardless of whether the insurance company has suffered actual prejudice from the misrepresentation.  *Reverse Now VII, LLC v. Oregon Mut. Ins. Co.*, 341 F. Supp. 3d 1233, 1237 (W.D. Wash. 2018).  "[M]isrepresentation is an affirmative defense," so the insurer "bears the burden of proof" on this issue at trial.  *Naxos, LLC v. Am. Fam. Ins. Co.*, No. C18-1287JLR, 2020 WL 777260, at *9 (W.D. Wash. Feb. 18, 2020).  Where the claim is "based on a misrepresentation clause" in a policy, "the standard of proof is preponderance of the evidence."  *Id.* (citing *St. Paul Mercury Ins. Co. v. Salovich*, 705 P.2d 812, 815 (Wash. Ct. App. 1985)).

Only a "material misrepresentation" will be sufficient "to void all coverage under the entire policy."  *Reverse Now*, 341 F. Supp. 3d at 1237 (quoting *Ki Sin Kim v. Allstate Ins. Co.*, 223 P.3d 1180, 1188 (Wash. Ct. App. 2009), *as amended* (Jan. 6, 2010)).  A misrepresentation is material if, "from the standpoint of the insurer," *Ki Sin Kim*, 223 P.3d at 1188, "it involves a fact that is relevant to the claim or the investigation of a claim," *Reverse Now*, 341 F. Supp. 3d at 1237 (quoting *Onyon v. Truck Ins. Exch.*, 859 F.

1   Supp. 1338, 1341 (W.D. Wash. 1994)); *Allstate Ins. Co. v. Huston*, 94 P.3d 358, 363

2   (Wash. Ct. App. 2004) ("In Washington, a misrepresentation is material 'when it

3   "concerns a subject relevant and germane to the insurer's investigation as it was then

4   proceeding" at the time the inquiry was made.'").  Materiality thus presents a "mixed

5   question of law and fact," although one which courts may resolve as a matter of law "if

6   reasonable minds could not differ on the question" of whether a fact is material.  *Reverse*

7   *Now*, 341 F. Supp. 3d at 1237 (citation omitted).

8           a.      *The Number of Vandalisms to the Fisher Road House*

9           Mr. Lindquist seeks partial summary judgment on Allstate's claim that he

10  misrepresented "[t]he number of vandalisms to the [Fisher Road House]" (Compl.

11  ¶ 4.5(a)) because he did not misrepresent or conceal the fact that vandals caused damage

12  to the Fisher Road House.  (*See* Mot. at 15.)  He points to testimony from his EOU, in

13  which he acknowledged that the Fisher Road House had been broken into "[p]robably 15

14  times," and had been vandalized on "[p]robably two or three" occasions.  (Lindquist

15  EOU at 36:1-4.)  Allstate does not appear to dispute Mr. Lindquist's estimate of the

16  number of times his home was broken into or vandalized, but rather argues that Mr.

17  Lindquist misrepresented the "condition of the property" and the extent to which personal

18  property inside the home had been damaged.  (*See* X-MSJ at 9 (capitalization omitted);

19  *see also id.* at 14 (arguing that Mr. Lindquist "has misrepresented the condition of his

20  personal property and the extensive damage related to break-ins and vandalism that was

21  done to the property").)  In particular, Allstate focuses on the discrepancy between Mr.

22  Lindquist's characterization in his EOU of "the vast majority" of his personal property as

being "in good condition" (Lindquist EOU at 86:7-9), and the reports he made to law enforcement between 2013 and 2019, in which he roughly estimated that vandals and burglars had done hundreds of thousands of dollars in damage to his home and its contents (*see* Argiannis Decl. ¶¶ 5-6, Exs. C-13, C-17, C-20, D).

As the court previously concluded, "the evidence shows that Mr. Lindquist readily admitted that the home had been broken into numerous times." (11/24/21 Order at 14 (citing Lindquist EOU at 35:22-24).) In light of Mr. Lindquist's testimony regarding numerous break-ins at the Fisher Road House and because Allstate does not question whether he accurately estimated the numbers of occasions on which those events occurred, the court GRANTS partial summary judgment to Mr. Lindquist on this issue. The court separately considers below whether Mr. Lindquist misrepresented the extent to which the vandalism and break-ins caused damage to the Fisher Road House and the personal property Mr. Lindquist stored there.

>    b.    *Occupancy Status of the Fisher Road House Between 2013 and the Fire Loss*

Mr. Lindquist argues that partial summary judgment should be granted on Allstate's claim that he misrepresented "[t]hat the property was vacant from 2013 until the fire loss" (Compl. ¶ 4.5(b)) because he testified candidly that it was. (*See* Mot. at 15-16.) Indeed, the undisputed evidence clearly shows that, during its claim investigation, Allstate was aware of Mr. Lindquist's move from the Fisher Road House in 2013 and thoroughly questioned him about that during his EOU. (*See* Lindquist EOU at 29:3-7 (Allstate: "So after you moved out in 2013, 2014 out of the Fisher Road property,

1   did you ever move back in?").)  In response, Allstate complains that it "was only alerted

2   to the fact of the vacancy of the Fisher Road House during the August 2020 EOU of Mr.

3   Lindquist, approximately 8 months *after* the fire," but does not contend that delay was

4   part of some scheme by Mr. Lindquist to conceal the fact that the Fisher Road House was

5   vacant at the time of the fire loss.  (*See* X-MSJ at 8 (emphasis in original).)

6        Instead, the thrust of Allstate's argument is that a question of fact exists as to

7   whether it had *contemporaneous* awareness, between 2013 and 2019, that Mr. Lindquist

8   had moved from the Fisher Road House.  (*See id.* at 6-9, 14.)  However, Allstate "fails to

9   connect" its claimed lack of awareness to any of Mr. Lindquist's "representations to

10  [Allstate] during the claim" investigation.  *Naxos*, 2020 WL 777260, at *15.  Allstate

11  "does not show, for example, that [it] asked [Mr. Lindquist] whether" the Fisher Road

12  House was vacant at the time of the fire loss "during the claim process or that [Mr.

13  Lindquist] tried to conceal" the occupancy status from it.  *See id.*

14       Because the undisputed evidence shows that Mr. Lindquist was candid with

15  Allstate during its claim investigation about the fact that he had not lived at the Fisher

16  Road House since 2013, the court GRANTS partial summary judgment in his favor on

17  this issue.

18            *c.*    *Remodeling the Fisher Road House*

19       Mr. Lindquist argues that partial summary judgment is warranted on Allstate's

20  claim that he misrepresented "[t]hat he was still in the process of a remodel when the fire

21  loss took place" (Compl. ¶ 4.5(c)) because he candidly disclosed the state of the remodel

22  at the time of the fire.  (*See* Mot. at 16; *see also* Lindquist EOU at 28:12-13, 96:11-97:23

1   (testifying that he moved some appliances and other items to the garage, but had not

2   begun demolition or made further progress after moving out).)  Allstate does not dispute

3   that Mr. Lindquist accurately testified to the status of the remodeling at the time of the

4   fire but, rather, argues that Mr. Lindquist misrepresented the location of an upright

5   freezer unit (the "Sub-Zero") by claiming it as a damaged kitchen item on his personal

6   property inventory when, as Mr. Lindquist testified, it was stored in the garage at the time

7   of the fire.  (*See* X-MSJ at 15 (citing Howson Decl. (Dkt. # 150) ¶ 5, Ex. C at 6).)

8          It is undisputed that the Sub-Zero existed and was located in the Fisher Road

9   House garage at the time of the fire.  (*See* 4/1/22 Knudsen Decl. (Dkt. # 167) ¶ 2, Ex. F

10  (depicting refrigerator in garage after the fire); *see also* Lindquist EOU at 96:11-17).)  It

11  is further undisputed that Mr. Lindquist described it as a kitchen item on his personal

12  property inventory.  (*See* Howson Decl., Ex. C at 6.)  However, there is no reason to

13  think that the precise location of the Sub-Zero in a home that was totally and completely

14  destroyed by a fire "*could have* affected" Allstate's investigation of Mr. Lindquist's

15  personal property losses, as a general matter.  *See Huston*, 94 P.3d at 363 (emphasis in

16  original).  Moreover, Allstate alleged that Mr. Lindquist misrepresented whether he "was

17  still in the process of a remodel when the fire loss took place" (Compl. ¶ 4.5(c)).  (*See* X-

18  MSJ at 15.)  The undisputed evidence shows that he told them truthfully that he was and

19  a jury could not reasonably conclude that the precise location within the Fisher Road

20  House of a single appliance, which was indisputably destroyed in the fire, is material to

21  that inquiry.  *See Reverse Now*, 341 F. Supp. 3d at 1237 (permitting the court to

22  determine materiality where "reasonable minds could not differ").

1  Because the undisputed evidence shows that Mr. Lindquist did not make a

2 misrepresentation to Allstate, and certainly not one that could have reasonably affected

3 Allstate's claim investigation, partial summary judgment is GRANTED to Mr. Lindquist

4 on this issue.

5    d. *Condition of the Fisher Road House and Mr. Lindquist's Personal*
      *Property at the Time of the Fire*

6

7  Mr. Lindquist moves for partial summary judgment on Allstate's claim that he

8 misrepresented "the nature and extent of the damages to the [Fisher Road House]" prior

9 to the fire loss in December 2019 (Compl. ¶ 4.5(d)), arguing that he provided accurate

10 testimony "regarding the damage that occurred at the home in the years before the fire"

11 (*see* Mot. at 16 (citing Lindquist EOU at 45:10-18)).  Indeed, Mr. Lindquist offered

12 specific testimony in his EOU regarding pre-existing damage to, among other things,

13 windows and window coverings, plumbing, fixtures, furniture, a large television, a

14 stairwell, a "climate room," an exterior gate, and an interior wall at the Fisher Road

15 House.  (*See* Lindquist EOU at 45:19-22, 50-55, 139:1-15; 150:3-151:5.)

16  Notwithstanding these disclosures, Allstate argues that Mr. Lindquist

17 misrepresented material facts by characterizing his furniture as "in good condition" with

18 "normal wear or . . . some damage from the break-ins" (Lindquist EOU at 84:9-15), as

19 well as by offering the assessment that "the vast majority" of his "personal property was

20 in good condition" before the fire (*id.* at 86:7-9).  (*See* X-MSJ at 9, 14.)  Allstate argues

21 that these statements cannot be squared with estimates that Mr. Lindquist made when

22 speaking about break-ins at his home with Snohomish County law enforcement where he

1  estimated that break-ins and acts of vandalism had caused more than $500,000 in

2  damage.  (*See id.* (citing Argiannis Decl., Exs. C-13, C-17, C-20, D).)

3      Mr. Lindquist does not dispute that he reported substantial damage to Snohomish

4  County law enforcement officials on several occasions prior to the December 2019 fire

5  loss.  (*See* Reply at 9-10.[2])  Instead, he argues that his characterization of his personal

6  property as mostly being in good condition was "a general statement of opinion, not

7  fact," and is consistent "with the fact that there had been some damage to the home and

8  its contents before the fire," and with the deposition testimony of his girlfriend, Nicki

9  Rosling.  (*Id.* (citing 4/1/22 Knudsen ¶ 2, Ex. C ("Rosling Dep. Tr.") at 28:9

10 (characterizing the Fisher Road House as a "beautiful house").)  He further argues that

11 the damage estimates he provided to law enforcement officers were "simply guess[es] on

12 the value of *all* the damage that had occurred on the property," which were offered "in

13 the heat of the moment upon learning that his home had been broken into" and without

14 the benefit of a visual inspection."  (*See* Reply at 10 (emphasis in original); *see also*

15 Argiannis Decl., Ex. D at 7 (describing Mr. Lindquist as "out of town").)

16     Mr. Lindquist's attempt to resolve the parties' factual dispute is unavailing.

17 Regardless of whether Mr. Lindquist would characterize his EOU testimony as offering

18 facts or opinions, he understood that it would "be relied on by Allstate in any decisions

19 //

20     [2] Mr. Lindquist also does not challenge the admissibility of the law enforcement reports
   and the court concludes that at least the portions purporting to describe Mr. Lindquist's
21 statements "would be admissible as non-hearsay statements of a party opponent."  *See Sandoval
   v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir.) (citing Fed. R. Evid. 801(d)(2)), *cert. denied
22 sub nom. San Diego Cnty. v. Sandoval*, 142 S. Ct. 711 (2021).

1   they make about the loss[.]" (*See* Lindquist EOU at 4:16-19.)  Moreover, the court must

2   draw all inferences about Ms. Rosling's subjective assessment of the Fisher Road House

3   and Mr. Lindquist's over-the-phone estimates to law enforcement officers in favor of

4   Allstate.  Viewed in that light, a reasonable jury could conclude that Mr. Lindquist's

5   assertion that prior break-ins had limited impact on the condition of his property was a

6   misrepresentation that "*could have* affected [Allstate's] investigation."  *See Huston*, 94

7   P.3d at 363 (emphasis in original).  Accordingly, Mr. Lindquist's motion for partial

8   summary judgment on Allstate's claim that he misrepresented the condition of the Fisher

9   Road House prior to the fire loss is DENIED.

10             e.      *The Nature and Extent and Value of Mr. Lindquist's Personal*
                       *Property at the Fisher Road House*

11          Mr. Lindquist asks for partial summary judgment on Allstate's claim that he

12   misrepresented "[t]he nature and extent and value of his personal property" (Compl.

13   ¶ 4.5(e)) because there is no evidence showing that he lied about which items were in the

14   home at the time of the fire, or that the inventory he submitted to Allstate misrepresented

15   the replacement cost of his personal property (Mot. at 16).  The court previously found,

16   when construing the facts in Mr. Lindquist's favor, that "a genuine dispute of material

17   fact" existed regarding whether he had "materially misrepresented the value or content of

18   personal property lost in the 2019 fire." (*See* 11/24/21 Order at 20-21.)  Mr. Lindquist

19   notes that Allstate's Rule 30(b)(6) witness, Ryan Jensen, could not "name a single item

20   that . . . Mr. Lindquist claimed for that . . . wasn't on the property" at the time of the fire.

21   (*See* 3/10/22 Ruiz Decl. ¶ 13, Ex. 12 ("Jensen Dep. Tr.") at 162:20-163:5.)  But that is

22

1   not sufficient to resolve the factual dispute on this issue.  Construing the facts in

2   Allstate's favor, a reasonable jury could find that Mr. Lindquist materially

3   misrepresented the "nature and extent and value of his personal property" in the Fisher

4   Road House at the time of the fire.  (Compl. ¶ 4.5(e).)  Accordingly, partial summary

5   judgment on this issue is DENIED.

6          *f.*        *Information Regarding Mr. Lindquist's Bankruptcy*

7          Mr. Lindquist argues that partial summary judgment in his favor is warranted on

8   Allstate's claim that he misrepresented "[i]nformation regarding his bankruptcy" (Compl.

9   ¶ 4.5) because he "was open in his EOU about his bankruptcy and answered questions on

10  that subject" (*see* Mot. at 17 (citing Lindquist EOU at 16:19-18:11)).  Allstate does not

11  actually argue that Mr. Lindquist misrepresented anything about his bankruptcy

12  proceeding, per se.  (*See* X-MSJ at 15.)  Rather, it relies on Mr. Lindquist's bankruptcy

13  submissions as evidence that he misrepresented the nature and value of his personal

14  property.  (*See id.*)  Accordingly, Mr. Lindquist's motion for partial summary judgment

15  on Allstate's claim that he misrepresented "[i]nformation regarding his bankruptcy"

16  (Compl. ¶ 4.5) is GRANTED.

17          *g.*      *The Number of Times Mr. Lindquist Was at the Fisher Road House*

18         Mr. Lindquist argues that partial summary judgment on Allstate's claim that he

19  misrepresented "[t]he number of times he was at the [Fisher Road House]" (Compl.

20  ¶ 4.5(g)) is appropriate in light of his testimony that he visited the Fisher Road House

21  "often," and was there "always" or "on a daily basis" to care for horses he kept at the

22  property.  (*See* Mot. at 17-18 (first quoting Lindquist EOU at 98:19-99:10; then citing *id.*

at 29:4-14; and then citing *id.* at 56:19-57:11).)  Allstate argues that complaints made to

Snohomish County Animal Control by Mr. Lindquist's neighbors and passersby, which

expressed concern about his horses being neglected, creates a triable issue of fact

regarding whether Mr. Lindquist "had in fact abandoned the [Fisher Road House], or how

often he went to the [Fisher Road House]."  (*See* X-MSJ at 16 (citing 3/28/22 O'Neill

Decl. ¶ 13, Ex. K ("Animal Control Reports")).)  On reply, Mr. Lindquist argues that the

Animal Control Reports should be excluded from consideration as containing non-

exempt hearsay and that, even if they may be considered, they do not provide evidence of

a misrepresentation regarding the extent to which he visited the Fisher Road House.  (*See*

Reply at 11.)

The complaints made to Snohomish County Animal Control, which are quoted in

the Animal Control Reports, would constitute inadmissible hearsay if Allstate offered the

reports for the truth of those complaints.  *See* Fed. R. Evid. 802.  Other aspects of the

Animal Control Reports, however, would be admissible through the direct testimony of

the authoring Snohomish County Animal Control officer.  If called to testify at trial, that

official could "testify about the personal observations reflected in [their] official reports."

*See Sandoval*, 985 F.3d at 666.  Likewise, the officer could testify about their

conversations with Mr. Lindquist and relay what he said, as any statements made by Mr.

Lindquist "would be admissible as non-hearsay statements of a party opponent."  *See id.*

(citing Fed. R. Evid. 801(d)(2)).  Hearsay thus provides "no basis for excluding the

objected-to documents in their entirety."  *See id.*

//

1     Considering the admissible portions of the Animal Control Reports, and

2 construing that evidence in the light most favorable to Allstate, a jury could reasonably

3 conclude that Mr. Lindquist misrepresented the extent to which he visited the Fisher

4 Road House, but not that he had abandoned it altogether.  For instance, Animal Control

5 Reports show that, on at least one occasion, Animal Control Officers were unable to

6 reach Mr. Lindquist for several days, despite placing a notice on the gated entrance to the

7 Fisher Road House requesting that he contact them immediately.  (*See, e.g.*, Animal

8 Control Reports at 17.)  While that evidence provides no basis to conclude that Mr.

9 Lindquist abandoned the Fisher Road House altogether (*see id.* (observing food and water

10 stored at the Fisher Road House and finding "[n]o violations" of animal abuse)), a

11 reasonable jury could infer that Mr. Lindquist visited the Fisher Road House somewhat

12 less frequently than the "daily" visits to which he testified during his EOU.  (*See*

13 Lindquist EOU 57:9-10.)  The parties do not address whether that misrepresentation is

14 material and the court declines to decide that issue because reasonable minds could differ

15 on whether the frequency with which Mr. Lindquist visited the Fisher Road House would

16 have been material to Allstate's claim investigation.  *Reverse Now*, 341 F. Supp. 3d at

17 1237.

18     Accordingly, the court DENIES partial summary judgment to Mr. Lindquist on

19 Allstate's claim that he misrepresented "[t]he number of times he was at the [Fisher Road

20 House]" (Compl. ¶ 4.5(g)).

21 //

22 //

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

            h.     *Mr. Lindquist's Actions to Safeguard the Fisher Road House*

      Mr. Lindquist asks the court to grant partial summary judgment in his favor on Allstate's claim that he misrepresented facts concerning "[h]is actions to allegedly safeguard the [Fisher Road House" (Compl. ¶ 4.5(h)) because he truthfully testified in his EOU "about placing locks on the gate and changing the pattern of when he went to the property." (*See* Mot. at 18 (citing Lindquist EOU at 56:19-57:22).) Allstate does not argue that Mr. Lindquist misrepresented any facts regarding the steps he took to safeguard the Fisher Road House, as alleged in the complaint, but rather asserts that Mr. Lindquist's "inability" to do so sufficiently "was the reason the property was subject to the various break-ins" between 2013 and 2019. (*See* X-MSJ at 14.) Accordingly, the court GRANTS partial summary judgment to Mr. Lindquist on this issue.

            i.     *The Reason Mr. Lindquist Had $100,000 or More in His Personal Bank Accounts in 2018 and 2019*

      Mr. Lindquist asks the court to grant partial summary judgment in his favor on Allstate's claim that he misrepresented "[t]he reason he had $100,000 or more in his personal bank accounts in 2018 and 2019" (Compl. ¶ 4.5(i)). (*See* Mot. at 18.) He argues that no misrepresentation occurred because, in response to questions from Allstate's counsel, he testified truthfully regarding a bank account that he uses as a personal account, which bears the name of his former business, Detroit Water Works. (*See id.* (citing Lindquist EOU at 156:4-24).) Allstate does not claim that Mr. Lindquist lied or left out key facts in his EOU, only that his testimony left it with lingering questions about "what money is his, versus" that of his current employer, Wild West Cars and Trucks.

1    (*See* X-MSJ at 15.[3])  Because Allstate does not actually assert that Mr. Lindquist

2    misrepresented anything about his personal bank accounts, partial summary judgment is

3    GRANTED in Mr. Lindquist's favor on this issue.

4         3.     Whether the Policy's Vandalism Exclusion Applies

5         Mr. Lindquist asks the court to find that the Policy's vandalism exclusion does not

6    apply and to grant him partial summary judgment on that issue.  (*See* Mot. at 19; *see also*

7    Compl. ¶¶ 4.3, 4.4.)  He argues that partial summary judgment is warranted in light of the

8    testimony of Allstate's fire expert, Mr. Crowley, who found it "reasonable" to conclude

9    that the Fisher Road House fire was started by a trespassing occupant "using an open

10   flame device, such as a candle, to keep warm" (*see* Crowley Decl. (Dkt. # 139-3) ¶ 6, Ex.

11   4 ("Crowley Report") at 8).  (*See* Mot. at 19-21.)  According to Mr. Lindquist, this

12   testimony precludes a finding that the fire was started intentionally, let alone maliciously

13   so, as would be necessary to conclude that it was the product of vandalism.  (*See* Reply at

14   5.)  Allstate focuses on the same passage from Mr. Crowley's report but argues that it

15   suffices to raise "a question of fact . . . as to whether the fire was caused as a result of

16   vandalism."  (X-MSJ at 12 (citing Crowley Report at 8).)

17        The vandalism exclusion provides that Allstate owes no coverage for losses

18   caused by "[v]andalism or [m]alicious [m]ischief" if the insured's "dwelling is vacant or

19   unoccupied for more than 30 consecutive days immediately prior to the vandalism or

20

21        [3] Allstate additionally argues that Mr. Lindquist misrepresented facts relating to his
     opportunity to burn the Fisher Road House down.  (*See id.* at 10.)  However, Allstate did not
     assert any such misrepresentation claim in its complaint (*see* Compl. ¶ 4.5), nor is that a claim on
22   which Mr. Lindquist has moved (*see* Mot. at 15-18.)

malicious mischief." (Policy at 9.)  Vandalism is not defined in the Policy but that term

has been routinely defined by courts in Washington "as 'willful or malicious destruction

or defacement of things of beauty or of public or private property.'"  *See, e.g.*, *Bowers v.*

*Farmers Ins. Exch.*, 991 P.2d 734, 737 (Wash. Ct. App. 2000) (quoting Webster's Third

New Int'l Dictionary 2532 (1993)), *as amended on reconsideration* (Mar. 7, 2000); *Graff*

*v. Allstate Ins. Co.*, 54 P.3d 1266, 1269 (Wash. Ct. App. 2002) (finding that intentional

acts done without regard to property interests which produce a harmful result that was

"almost a certainty" "meet[] the definition of vandalism").  Importantly, "[i]n this

context, malice does not require ill will, hatred, or vindictiveness of purpose," but rather

"may be inferred from the act of destruction.  It is sufficient if the actor is guilty of

wanton or intentional disregard of the rights of others."  *Bowers*, 991 P.2d at 737.

Drawing all inferences in Allstate's favor, the record shows that the Fisher Road

House had a history of individuals trespassing onto the property and damaging the Fisher

Road House and its contents in various ways.  (*See* Lindquist EOU at 36:1-4.)

Additionally, there is evidence in the record that the December 25, 2019 fire may have

been caused by an individual trespassing onto the property and using an open flame

inside the home.  (*See* Crowley Report at 8.)  A reasonable jury could thus conclude that

the fire loss was the result of vandalism.  *See Graff*, 54 P.3d at 1269.  Notably, and

contrary to Mr. Lindquist's assertion, that conclusion does not require a factfinder to

draw unwarranted assumptions about the propensity of unhoused individuals to commit

arson or vandalism, or to conclude that whoever started the fire meant to burn down the

house.  (*See* Reply at 5.)  It would be enough for the jury to conclude that, by entering the

1   Fisher Road House without Mr. Lindquist's permission and purposefully using an open

2   flame inside the home, they committed an "'intentional act from which damage was

3   reasonably expected to result.'"  *Graff*, 54 P.3d at 1269 (citations omitted) (quoting

4   *Bowers,* 991 P.2d at 737).  Construed in Allstate's favor, the record before the court

5   would support that conclusion.

6          Accordingly, Mr. Lindquist's motion for partial summary judgment on the

7   application of the vandalism exclusion is DENIED.

8          4.     Whether Mr. Lindquist Abandoned the Fisher Road House

9          Mr. Lindquist next asks the court for partial summary judgment on Allstate's

10  claim that he abandoned the Fisher Road House.  (*See* Mot. at 20.)  The court has already

11  concluded that no reasonable jury could conclude that Mr. Lindquist abandoned the

12  Fisher Road House.  *See supra* at 20.  Accordingly, Mr. Lindquist's motion for partial

13  summary judgment is GRANTED on Allstate's claim that he abandoned the Fisher Road

14  House.

15         5.     Whether Mr. Lindquist Intentionally Caused the Fire

16         Mr. Lindquist further asks the court for partial summary judgment on whether he

17  intentionally caused the fire at the Fisher Road House.  (*See* Mot. at 19.)  Mr. Lindquist

18  argues that partial summary judgment in his favor is appropriate either because Allstate

19  failed to plead that he "intentionally caused or contributed to the fire" or because that

20  theory is unsupported by the conclusions of Allstate's own fire investigator, who found

21  that it was possible the fire was caused by "a human occupant . . . using an open flame

22  device, such as a candle, to keep warm."  (*See id.* (quoting Crowley Report at 8).)

Allstate sufficiently alleged, "[o]n information and belief," that "the cause of the fire was intentional" (Compl. ¶ 3.12; *see also id.* ¶¶ 4.3-4.4), and now argues that the record contains evidence from which a reasonable jury could conclude that "Mr. Lindquist had a financial motive, and an opportunity to intentionally burn the house down" (*see* X-MSJ at 17).

Under the terms of the Policy, Allstate did not agree to cover losses caused by the "[i]ntentional or criminal acts of or at the direction of any insured person, if the loss that occurs:  a) may be reasonably expected to result from such acts; or b) is the intended result of such acts."  (Policy at 8 (emphasis omitted).)  Such intentional loss exclusions are enforceable under Washington law.  *See IDS Prop. Cas. Ins. Co. v. Crawford*, 16 F. Supp. 3d 1236, 1239 (W.D. Wash. 2014), *aff'd*, 671 F. App'x 524 (9th Cir. 2016).  "[A]n insurer makes a prima facie case of arson when it establishes that the fire was of incendiary origin and the insured had motive and opportunity."  *See Am. States Ins. Co. v. Symes of Silverdale, Inc.*, 45 P.3d 610, 618 (Wash. Ct. App. 2002), *as amended* (July 26, 2002), *reversed on other grounds*, 78 P.3d 1266 (Wash. 2003); *see also Ciao Giuseppe, Inc. v. Reliance Ins. Co.*, 74 F.3d 1245 (9th Cir. 1996) (instructing courts to consider "whether the fire in question was of incendiary origin" and whether the insured had the opportunity and motive "to set the fire or cause it to be set").  The insurer must prove arson by a preponderance of the evidence, and may rely on circumstantial evidence to do so.  *See Great Am. Ins. Co. v. K & W Log, Inc.*, 591 P.2d 457, 460 (Wash. Ct. App. 1979) (quoting *State v. Young*, 550 P.2d 1, 6 (Wash. 1976) ("It is judicially recognized that a

//

1   well-connected train of circumstances may be as satisfactory as an array of direct

2   evidence.")).

3        The evidence of arson is cross-cutting and much disputed.  With respect to the

4   fire's "incendiary origin," *Am. States Ins. Co.*, 45 P.3d at 618, Mr. Lindquist argues that

5   Mr. Crowley's report dispositively concludes that the fire was the result of an

6   unauthorized occupant using an open flame for an innocent purpose, like heating or

7   cooking.  (*See* Mot. at 19 (citing Crowley Report at 5, 8).)  On the other hand, Allstate

8   argues that Mr. Crowley's report is fairly read as establishing only that the fire was

9   human-caused (and, therefore, of an incendiary origin), but leaving open the possibility

10  that the responsible human was Mr. Lindquist.  (*See* X-MSJ at 17 (citing Crowley Report

11  at 8).)  That is a "justifiable inference[]" to draw in Allstate's favor, *Anderson*, 477 U.S.

12  at 255, given that Mr. Crowley's only firm conclusion is that "[h]uman activity was

13  responsible for the cause of [the Fisher Road House] fire" (*see* Crowley Report at 7-8).

14       With respect to a possible motive, the record is replete with evidence that Mr.

15  Lindquist struggled financially in the years leading up to the fire loss.  For instance, he

16  testified in his EOU that he moved from the Fisher Road House because of "the expense

17  of the house," which was too much in light of a "legal battle with" a former creditor that

18  resulted in the seizure of his "business bank account" (*see* Lindquist EOU at 28:7-19);

19  subsequently filed for bankruptcy (*see id.* at 17:1-10); owed an estimated $2.3 million on

20  the Fisher Road House mortgage to Chase, but had not "made a payment" since

21  "February of 2011" (*id.* at 21:5-13); and, as a result, was sued by Chase in 2018 in an

22  action to foreclose on Fisher Road House (*see* 10/21/21 Argiannis Decl. ¶ 7, Ex. E at 1,

4).  That evidence would permit a reasonable jury to conclude that Mr. Lindquist had a

financial motive to burn down the Fisher Road House.  *See Great Am. Ins. Co.*, 591 P.2d

at 460 (finding evidence that the insured was indebted and "experiencing serious

financial difficulties" to be circumstantial evidence that the insured intentionally caused

the fire loss).

       Finally, with respect to Mr. Lindquist's opportunity to burn down the Fisher Road

House, he notes that he and Ms. Rosling both testified that they were meeting in

Shoreline for dinner and a movie at about the time the fire would have started.  (*See*

Reply at 4 (first citing Lindquist EOU at 72-73; and then citing Rosling Dep. Tr. at 36:1-

38:24).)  Allstate rebuts this testimony through the report of its digital forensics expert

witness, Brian Chase, who plans to testify that Mr. Lindquist's cell phone data contradicts

his testimony about where he was when the fire began.  (*See* X-MSJ at 10 (citing 2/16/22

O'Neill Decl. (Dkt. # 139) ¶ 2, Ex. B ("Chase Report") at 7).)  Mr. Lindquist offers his

own digital forensics expert, Randall Karstetter, who plans to rebut Mr. Chase's report by

opining that "the location conclusions in [his] report are, by their nature, imprecise."

(*See* 4/1/22 Knudsen Decl. ¶ 2, Ex. B ("Karstetter Report") at 3 ¶ 7.)  The court does not

consider Mr. Karstetter's rebuttal report, which is unsigned (*see id.* at 3); *see also Harris*

*v. Extendicare Homes, Inc.*, 829 F. Supp. 2d 1023, 1027 (W.D. Wash. 2011) (noting that

"courts in this circuit have routinely held that unsworn expert reports are inadmissible"

and collecting cases), but nevertheless concludes that this factor turns on disputed facts.

       Construed in Allstate's favor, the record would permit a reasonable jury to find by

"'a fair preponderance of the evidence'" that Mr. Lindquist intentionally caused the fire

at the Fisher Road House.  *See Great Am. Ins. Co.*, 591 P.2d at 459 (quoting *Bruff v. Nw. Mut. Fire Ass'n*, 109 P. 280, 281 (Wash. 1910)).  Accordingly, Mr. Lindquist's motion for partial summary judgment on Allstate's claim that he intentionally caused the fire at the Fisher Road House is DENIED.

6.    Violations of Washington Insurance Regulations

Mr. Lindquist next moves for partial summary judgment on Allstate's alleged violations of various Washington insurance regulations, which he notes "are relevant to bad-faith claims, Consumer Protection Act [("CPA")] claims, and aspects of Insurance Fair Conduct Act claims."  (*See* Mot. at 21-22.)  Specifically, Mr. Lindquist seeks partial summary judgment that Allstate violated WAC 284-30-330(4), WAC 284-30-330(5), WAC 284-30-370, and WAC 284-30-380(1).  (*See* Mot. at 21.)  Allstate opposes and also cross-moves for partial summary judgment in its own favor, asserting that it complied fully with applicable insurance regulations in conducting its claim investigation and initiating a declaratory judgment action.  (*See* X-MSJ at 16-19.)  The court considers each regulation in turn.

a.    *WAC 284-30-330(4)*

WAC 284-30-330(4) provides that "[r]efusing to pay claims without conducting a reasonable investigation" is an "unfair method[] of competition and unfair or deceptive act[] or practice[]."  *See* WAC 284-30-330(4).  The court concludes that neither party has carried their burden to establish whether Allstate conducted a reasonable investigation prior to denying Mr. Lindquist's claim.

//

1    In support of his motion, Mr. Lindquist identifies various investigative steps

2    Allstate failed to take, including:  (1) contacting Mr. Howson or Mr. Eggert to discuss

3    Mr. Lindquist's proofs of loss and inventories (Mot. at 22 (citing Howson Decl. ¶ 13));

4    (2) creating its own "inventory of contents or investigative values" (*id.* at 22-23 (citing

5    3/10/22 Ruiz Decl. ¶ 10, Ex. 10 ("Follett Dep. Tr.") at 42:17-23)); (3) cataloging Mr.

6    Lindquist's "personal property," "sift[ing] through the debris, or identify[ing]

7    replacement-cost values" (*see* Reply at 12 (first citing Jensen Dep. Tr. at 170:13-171:9;

8    then citing Follett Dep. Tr. at 38:21-39:13; and then citing Follett Dep. Tr. at 42:6-14,

9    71:5-6, and 72:17-21)); and (4) discussing Mr. Crowley's report with him after he

10   delivered it to Allstate (*see id.* (citing Crowley Dep. Tr. at 161:19-162:20)).  He does not,

11   however, explain why Allstate's failure to take the investigative steps he identifies

12   rendered its entire claim investigation unreasonable, as a matter of law.  (*See* Mot. at 21-

13   23; Reply at 12); *see also GCG Assocs. LP v. Am. Cas. Co. of Reading Pa.*, No.

14   C07-792BHS, 2008 WL 3542620, at *10 (W.D. Wash. Aug. 8, 2008) (finding that the

15   reasonableness of an investigation turns on "the sufficiency of the investigation

16   that *actually occurred*" (emphasis in original)).  Moreover, to the extent that Mr.

17   Lindquist argues that Allstate's investigation was unreasonable because it sought to

18   pursue a speculative theory of arson or vandalism (*see* Lether Decl. (Dkt. # 178) ¶ 2, Ex.

19   A ("Lether Report") at 6), factual questions remain that would bear on the reasonableness

20   of that pursuit, *see supra* 24-28; *see also Indus. Indem. Co. of the Nw. v. Kallevig*, 792

21   P.2d 520, 526 (Wash. 1990) ("[A]n insurer . . . may not deny coverage based on a

22   //

1   supposed defense which a reasonable investigation would have proved to be without

2   merit.").

3       Allstate primarily supports its cross-motion with the conclusion of its claims

4   handling expert, Danette K. Leonhardi, who opines that Allstate conducted a reasonable

5   and timely investigation of a complex claim.  (*See* X-MSJ at 18 (citing 2/16/22 O'Neill

6   Decl. ¶ 1, Ex. A ("Leonhardi Report") at 11-12).)  Even if Ms. Leonhardi's testimony is

7   admissible,[4] it is contradicted by Mr. Lindquist's claims handling expert, Thomas Lether,

8   who opines that Allstate had ample information with which to resolve Mr. Lindquist's

9   claim "within a short period of time following the loss" and, thus, "failed to comply with

10  the standard of the industry to perform a good faith claims investigation."  (*See* Lether

11  Report at 9.)  Likewise, Allstate's contention that any unreasonable delay in its

12  investigation is the fault of Mr. Lindquist is a disputed claim.  (*See* X-MSJ Resp. at 6; *see*

13  *also* 3/10/22 Ruiz Decl. ¶ 12, Ex. 11 (January 3, 2020 letter from Allstate addressed to

14  Mr. Lindquist at the Fisher Road House).)

15      Because, on the record before it, the court cannot determine the reasonableness of

16  Allstate's claim investigation as a matter of law, partial summary judgment is DENIED

17  to both parties on Allstate's alleged violation of WAC 284-30-330(4).

18  *//*

---

19      [4] Although Mr. Lindquist does not challenge the admissibility of Ms. Leonhardi's report

20  in his opposition brief (*see generally* X-MSJ Resp.), he subsequently filed a motion to exclude
    substantial portions of her testimony as offering opinions on legal issues (*see* Exclusion Mot.

21  (Dkt. # 202)).  The court will address the admissibility of Ms. Leonhardi's testimony when it has
    the benefit of the parties' briefing on this matter.  It need not resolve the issue here because it

22  does not rely on Ms. Leonhardi's opinion testimony to either deny Mr. Lindquist's motion or
    grant Allstate's cross-motion.

1          b.      *WAC 284-30-370*

2          WAC 284-30-370 provides that an insurer "must complete its investigation of a

3  claim within thirty days after notification of claim, unless the investigation cannot

4  reasonably be completed within that time."  WAC 284-30-370.  It is undisputed that

5  Allstate did not complete its investigation within thirty days of receiving notice of Mr.

6  Lindquist's claim.  (*See generally* Crowley Report; *see also* 3/28/22 O'Neill Decl. ¶ 11,

7  Ex. I (August 17, 2020 letter noting that "Allstate's investigation into this matter is

8  ongoing).)  And Mr. Lindquist does not suggest that Allstate could have completed its

9  investigation in that time.  (*See* Mot. at 21-23; Reply at 11-12.)  Indeed, doing so would

10  have meant that Allstate concluded its investigation before speaking with Mr. Lindquist

11  (*see generally* Lindquist EOU) or reviewing the findings of its own fire expert, Mr.

12  Crowley, or those of the Snohomish County Fire Marshal (*see* Crowley Report at 3, 6).

13          However, Allstate chiefly relies on the report of Ms. Leonhardi, who opines that

14  "[i]t is not unreasonable . . . for a complex fire damage claim to require time in excess of

15  30 days, even a year or more, for a complete investigation."  (*See* X-MSJ at 16 (citing

16  Leonhardi Report at 11).)  She further asserts that Allstate's investigation took longer, in

17  part, because Mr. Lindquist was unavailable to sit for his EOU or otherwise assist in the

18  claim investigation "for nearly 8 months."  (*See* Leonhardi Report at 11.)  Even if Ms.

19  Leonhardi's opinion testimony is deemed admissible, it provides an insufficient basis for

20  partial summary judgment because her opinion is contested by Mr. Lindquist's own claim

21  handling expert.  (*See* Lether Report at 9 (asserting that Allstate had ample information

22  with which to resolve Mr. Lindquist's claim "within a short period of time following the

1   loss").)  Moreover, Ms. Leonhardi's opinion is based, in large measure, on the assertion

2   that Mr. Lindquist bears full responsibility for his EOU being delayed until August 2020

3   (Leonhardi Report at 11), which is a disputed fact, *see supra* at 30.

4         Because factual disputes preclude the court from determining whether Allstate

5   acted reasonably when it took more than thirty days to complete its claim investigation,

6   the court must DENY partial summary judgment for both parties on Allstate's alleged

7   WAC 284-30-370 violation.

8                 *c.*     *WAC 284-30-330(5) and WAC 284-30-380(1)*

9         WAC 284-30-330(5) provides that "[f]ailing to affirm or deny coverage of claims

10  within a reasonable time after fully completed proof of loss documentation has been

11  submitted" is an "unfair method[] of competition and unfair or deceptive act[] or

12  practice."  WAC 284-30-330(5).  And WAC 284-30-380(1) provides that "[w]ithin

13  fifteen working days after receipt by the insurer of fully completed and executed proofs

14  of loss, the insurer must notify the first party claimant whether the claim has been

15  accepted or denied."  WAC 284-30-380(1).

16        Mr. Lindquist fails to establish that the 42 working days that elapsed between

17  August 13, 2020, when Allstate received his proof of loss documentation (*see* 3/10/22

18  Ruiz Decl., Ex. 16), and October 13, 2020, when Allstate filed this lawsuit (*see* Compl.),

19  was unreasonable as a matter of law.  Indeed, Allstate complied with

20  WAC-284-30-380(1) when it sent a letter to Mr. Lindquist on August 17, 2020 stating

21  that it required additional time to review documents Mr. Lindquist provided just before

22  his EOU, as well as his proofs of loss and inventory.  (*See* 3/28/22 O'Neill Decl. ¶ 11,

1   Ex. I.)  And because Allstate provided timely notice to Mr. Lindquist, it did not need to

2   provide further notice for an additional "forty-five working days after the date of the"

3   August 17, 2020 letter.  *See* WAC 284-30-380(3).  Within that time period, Allstate made

4   its coverage decision perfectly clear by filing this lawsuit on October 13, 2020.  *See*

5   *Berkshire Hathaway Homestate Ins. Co. v. SQI, Inc.*, 132 F. Supp. 3d 1275, 1293 (W.D.

6   Wash. 2015) (finding a "lawsuit asserting that no coverage exists" serves to

7   "unequivocally den[y] coverage").  Moreover, because Allstate complied with the time

8   requirements of WAC 284-30-380(3), its coverage determination on October 13, 2020

9   was necessarily made "within a reasonable time."  *Compare* WAC 284-30-380(3), *with*

10  WAC 284-30-330(5).

11          Accordingly, the court DENIES Mr. Lindquist's motion for partial summary

12  judgment and GRANTS Allstate's motion for partial summary judgment on the issue of

13  whether Allstate violated WAC 284-30-330(5) or 284-30-380(1).

14          7.      Whether Allstate Engaged in Bad Faith

15          Mr. Lindquist's seeks partial summary judgment on the issue of whether Allstate

16  engaged in bad faith as a matter of law.  (*See* Mot. at 23-24; *see also* Answer ¶¶ 144-150,

17  156-165.)  However, Allstate retains live misrepresentation claims, *see supra* at 9-22, and

18  "courts have consistently ruled that policyholders who render their contracts void by their

19  own fraud may not pursue claims of bad faith against the insurer."  *See Tudor Ins. Co. v.*

20  *Hellickson Real Est.*, 493 F. App'x 895, 897 (9th Cir. 2012) (first citing *Ki Sin Kim,* 223

21  P.3d at 1189; and then citing *Mutual of Enumclaw Ins. Co. v. Cox,* 757 P.2d 499, 504

22  (1988)).  Courts thus decline to grant partial summary judgment in favor of insureds on

1    IFCA, CPA, or bad faith claims "so long as [the insurer] has live claims for

2    misrepresentation." *See Naxos*, 2020 WL 777260, at *19. Accordingly, Mr. Lindquist's

3    motion for partial summary judgment on Allstate's alleged bad faith is DENIED.

4         The court also DENIES Allstate's cross-motion for partial summary judgment on

5    this issue because it turns, in large measure, on whether Allstate committed regulatory

6    violations (*see* Mot. at 23); *see also Tank v. State Farm Fire & Cas. Co.*, 715 P.2d 1133,

7    1136 (Wash. 1986) (noting that the insurance regulations at WAC 284-30-330 *et seq.*

8    "defin[e] specific acts and practices which constitute a breach of an insurer's duty of

9    good faith"). Although Allstate has shown that it did not violate WAC 284-30-330(5) or

10   WAC 284-30-380(1), questions of fact remain for the jury to decide with respect to WAC

11   284-30-330(4) and WAC 284-30-370, *see supra* at 28-32. If Mr. Lindquist convinces the

12   jury of those regulatory violations at trial, he may further show that Allstate engaged in

13   bad faith. *See Tank*, 715 P.2d 1136. Accordingly, Allstate is not entitled to partial

14   summary judgment as a matter of law and its cross-motion is DENIED.

15        8.    Mr. Lindquist's Entitlement to Coverage

16        As set forth above, factual disputes remain to be resolved by the jury which will

17   bear on Mr. Lindquist's entitlement to coverage. If Allstate prevails on those factual

18   disputes and demonstrates either that a Policy exclusion applies or that Mr. Lindquist

19   misrepresented material facts during its claim investigation, he will not be entitled to

20   coverage. Accordingly, Mr. Lindquist is not entitled to coverage as a matter of law and

21   his motion for partial summary judgment on that issue is DENIED.

22   //

1

## IV.   CONCLUSION

2   For the foregoing reasons, the court ORDERS as follows:  Allstate's motion for a

3   continuance under Federal Rule of Civil Procedure 56(d) is DENIED; Allstate's motion

4   for leave to file a supplemental opposition brief (Dkt. # 192) is DENIED; Mr. Lindquist's

5   motion for partial summary judgment (Dkt. # 147) is GRANTED in part and DENIED in

6   part; and Allstate's cross-motion for partial summary judgment (Dkt. # 162) is

7   GRANTED in part and DENIED in part.

8   Dated this 20th day of May, 2022.

9

10

11   JAMES L. ROBART
     United States District Judge

12

13

14

15

16

17

18

19

20

21

22