UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALLSTATE INDEMNITY COMPANY,<br><br>                     Plaintiff,<br><br>   v.<br><br>RANDY LINDQUIST, et al.,<br><br>                   Defendants. | CASE NO. C20-1508JLR<br><br>ORDER |

## I.   INTRODUCTION

Before the court is Defendant and Third-Party Plaintiff Randy Lindquist's motion to exclude portions of expert reports prepared by Plaintiff Allstate Indemnity Company's ("Allstate") claims-handling expert witness, Dannette K. Leonhardi.  (Mot. (Dkt. # 202); 2/16/22 O'Neill Decl. (Dkt. # 139) ¶ 1, Ex. A ("Leonhardi Report"); 3/16/22 O'Neill Decl. (Dkt. # 153) ¶ 1, Ex. A ("Leonhardi Rebuttal Report"); Reply (Dkt. # 215).)  Allstate opposes the motion.  (Resp. (Dkt. # 212).)  The court has considered the parties'

submissions, the relevant portions of the record, and the applicable law.  Being fully advised,[1] the court GRANTS Mr. Lindquist's motion in part and DENIES it in part.

## II.   BACKGROUND

This case stems from a fire that burned down Mr. Lindquist's house at 6920 Fisher Road in Edmonds, Washington (the "Fisher Road House") on December 25, 2019. (Compl. (Dkt. # 1) ¶¶ 3.12.)  The Fisher Road House was insured by a homeowner's insurance policy that Allstate issued in 2004 and renewed on an annual basis thereafter. (*See* Argiannis Decl. (Dkt. # 72) ¶ 3, Ex. A; *see also* 10/25/21 Ruiz Decl. (Dkt. # 104) ¶ 2, Ex. A at 121:6-122:11.)  The court incorporates by reference the summation of the factual background contained in its November 24, 2021 order (*see* 11/24/21 Order (Dkt. # 117) at 2-5), and discusses below the specific facts pertinent to the current motions in its analysis of the issues presented therein.

## III.   ANALYSIS

Mr. Lindquist does not generally contest Ms. Leonhardi's qualifications to serve as an expert witness or the relevance of her proposed testimony (*see generally* Mot.; Reply), but rather moves to exclude the portions of her report and rebuttal report that purportedly contain "instructions to the jury as to the applicable law" or "opinions on ultimate issues of law" (*see* Mot. at 2).  After considering whether Ms. Leonhardi is able

---

[1] Neither party has requested oral argument (*see* Mot. at 1; Resp. at 1) and the court concludes that oral argument is not necessary to its disposition of the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4); *see also Tubar v. Clift*, No. C05-1154JCC, 2009 WL 1325952, at *2 (W.D. Wash. May 12, 2009) ("The trial court's gatekeeping role under *Daubert* is satisfied, even without a formal hearing, by the court's probing of the expert's knowledge and experience" (citing *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004))).

to present relevant and reliable testimony, the court turns to consider Mr. Lindquist's arguments that portions of her report and rebuttal report should nevertheless be excluded as containing inadmissible testimony on legal issues.

**A.     The Relevance and Reliability of Ms. Leonhardi's Proposed Testimony**

"Before admitting expert testimony into evidence, the district court must perform a 'gatekeeping role' of ensuring that the testimony is both 'relevant' and 'reliable' under Federal Rule of Evidence 702." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)); *see also* Fed. R. Evid. 702(a).  "Relevancy simply requires that 'the evidence logically advance a material aspect of the party's case.'" *Ruvalcaba-Garcia*, 923 F.3d at 1188 (quoting *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (citation and internal alterations omitted)). Reliability "requires that the expert's testimony have 'a reliable basis in the knowledge and experience of the relevant discipline.'" *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)).

Ms. Leonhardi testifies that she has "direct claim handling experience" that "spans 44 years in various capacities," and that, over that time, she has "audited the claim handling work of approximately fifty different insurers." (*See* Leonhardi Report at 1.) She further testifies that she is familiar with the applicable laws and regulations in Washington that "pertain to the subjects of claim handling [and] settlement standards, trade practices, regulations, policy provisions, claim communications and claim investigations." (*Id.* at 2.)  She also has substantial experience as an expert witness, having been retained by insurance companies for that purpose on fifteen occasions,

including in four matters that apparently went to trial. (*See* Leonhardi Report at 17-18.) Ms. Leonhardi intends to testify about, among other topics, the applicable "industry standards for proper insurance claim handling"; "the complex nature of property damage claim handling" for fire losses; and Allstate's claim handling in this matter. (*See* Leonhardi Report at 2-15.)

Accordingly, the court finds that Ms. Leonhardi is qualified, based on her knowledge and experience, to give reliable expert testimony. *See Hangarter*, 373 F.3d at 1018 (affirming that a district court's "probing" of an expert's "knowledge and experience was sufficient to satisfy its gatekeeping role under *Daubert*"); *see also id.* at 1017 (noting that, in the context "of non-scientific testimony . . . 'reliability depends heavily on the *knowledge and experience* of the expert, rather than the methodology or theory behind it'" (emphasis in original) (quoting *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000)). Moreover, the topics on which Ms. Leonhardi intends to testify are directly relevant to Mr. Lindquist's counterclaims and will, therefore, "logically advance a material aspect of" Allstate's defense of those counterclaims. *See Ruvalcaba-Garcia*, 923 F.3d at 1188. Accordingly, the court finds that Ms. Leonhardi is qualified to provide reliable testimony and intends to testify on topics that are relevant to this matter.

Having fulfilled its gatekeeping function under *Daubert*, the court turns to consider whether portions of Ms. Leonhardi's intended testimony contain inadmissible legal conclusions.

//

ORDER - 4

### B. Whether Ms. Leonhardi's Reports Contain Inadmissible Testimony on the Law

Mr. Lindquist argues that, notwithstanding Ms. Leonhardi's undisputed qualifications as an expert witness, certain portions of her intended testimony must nevertheless be excluded as containing inadmissible "instructions to the jury as to the applicable law" or "opinions on an ultimate issue of law." (Mot. at 7.) Mr. Lindquist objects to four categories of Ms. Leonhardi's testimony, including: (1) "that RCW 48.01.030 imposes 'reciprocal duties' on both the insurer and insured" (*id.* at 2 (quoting Leonhardi Report at 2, 11)); (2) "that RCW 48.18.460 gives insurers the right to demand a 'proof of loss' and that state law allows insurers to conduct an [examination under oath ("EOU")] as part of a 'proof of loss'" (*id.* (quoting Leonhardi Report at 9)); (3) testimony regarding "the history of Washington's legal enactments relating to claims handling (*id.* at 3 (citing Leonhardi Report at 3, 10 n.14)); and (4) testimony regarding specific instances in which Ms. Leonhardi opines, in some fashion, "that Allstate acted reasonably and in 'good faith'" (*see id.* at 3-4 (first quoting Leonhardi Report at 6, 9-12, 14-15; and then quoting Leonhardi Rebuttal Report at 2, 5-7)).

Federal Rule of Evidence 704(a) specifically provides that an expert witness's "opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). However, the Ninth Circuit "has repeatedly affirmed that 'an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law.'" *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (emphasis in original) (quoting *Hangarter*, 373 F.3d at 1016). "This prohibition of opinion testimony on an

ultimate issue of law recognizes that, '[w]hen an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.'" *Id.* (emphasis in original) (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)).

Accordingly, numerous courts in this district have prohibited expert witnesses from "opin[ing] on the reasonableness of [an insurer's] actions with respect to [an insured's] claim." *See Liu v. State Farm Mut. Auto. Ins. Co.*, No. C18-1862BJR, 2021 WL 717540, at *4 (W.D. Wash. Feb. 24, 2021); *see also United States Fid. & Guar. Co. v. Ulbricht*, No. C20-0369JLR, 2021 WL 6050171, at *4-5 (W.D. Wash. Dec. 21, 2021) (striking statements that insurance company behaved reasonably in processing claim from expert witness's report); *Ledcor Indus. (USA) Inc. v. Virginia Sur. Co.*, No. C09-1807RSM, 2012 WL 254251, at *2 (W.D. Wash. Jan. 26, 2012) (holding that an insurer's expert witness may "opine as to whether [the insurer] complied with industry standards on the issue of bad faith, but may not reach an actual legal conclusion regarding this issue"). Thus, an expert witness "can discuss the industry standards and whether [the insurer's] actions conformed with those standards, but it will be left to the jury to determine whether [the insurer] acted reasonably." *Liu*, 2021 WL 717540, at *4; *see also Ledcor Indus. (USA) Inc.*, 2012 WL 254251, at *2 ("While an expert witness may testify that an insurer deviated from industry standards on the issue of bad faith, he may not reach an actual legal conclusion that the insurer did so.") (citing *Hangarter*, 373 F.3d at 1016).

//

The court first considers whether Ms. Leonhardi should be allowed to testify concerning (1) "reciprocal duties" imposed by RCW 48.01.030; (2) an insurer's right to demand a proof of loss and conduct an EOU under RCW 48.18.460; and (3) the history of Washington's claim handling legal requirements. (*See* Leonhardi Report at 2, 3, 9, 10 n.14, 11.) Mr. Lindquist does not argue that Ms. Leonhardi incorrectly summarizes the law through these statements (*see* Mot. at 2-3; Reply at 4), and the court concludes that such testimony appears in her reports as background context, not as an "'attempt to define the legal parameters within which the jury must exercise its fact-finding function,'" *see Preston v. Boyer*, No. C16-1106JCC-MAT, 2019 WL 5425342, at *4 (W.D. Wash. Oct. 23, 2019) (quoting *Specht v. Jensen*, 853 F.2d 805, 809-10 (10th Cir. 1988) and declining to exclude testimony summarizing legal requirements as background context where the accuracy of the summary was not in dispute). Accordingly, the court declines to exclude those portions of Ms. Leonhardi's report and would allow her some leeway during trial to summarize uncontested legal principles as "background fact[s]." *See id.*

Mr. Lindquist also identifies numerous instances in which Ms. Leonhardi testifies "that Allstate acted reasonably and in 'good faith.'" (*See* Mot. at 3-4 (first quoting Leonhardi Report at 6, 9-12, 14-15; and then quoting Leonhardi Rebuttal Report at 2, 5-7)). These include the following thirteen statements:

- "This was a justifiable and reasonable investigative avenue for [Allstate employee Nicole] Diedrich to take." (Leonhardi Report at 6.)
- "This was a completely reasonable and justified investigative step for Allstate's investigation." (*Id.* at 9.)

- "Converse to the allegations of Mr. Lindquist, it is my opinion Allstate investigated, handled, and evaluated Mr. Lindquist's claim in a good faith, fair, reasonable, timely, responsive, thorough, and well-ordered fashion, completely complying with the statutory and legal requirements in the State of Washington as well as in accordance with industry claim handling standards." (*Id.* at 10-11.)

- "It is unequivocal that this is a disagreement over coverage of Mr. Lindquist's claim arising from reasonable, justifiable and concrete questions posed by Allstate." (*Id.* at 12.)

- "It is my opinion the decision to have the policy coverage issues adjudicated is a good faith, reasonable, timely and responsive method for resolving the questions of coverage for damages to Mr. Lindquist's property . . . ." (*Id.* at 12.)

- "This is a case that exemplifies those differences and cannot be construed as a lack of good faith on the part of Allstate and does not mean Allstate's coverage evaluation is wrong, frivolous, unjustified or unreasonable. It is unequivocal that this is a disagreement over coverage of Mr. Lindquist's claim arising from a reasonable, justifiable, and concrete investigation and policy analysis." (*Id.* at 14.)

- "Allstate has evaluated the coverage of this claim on a good faith belief that no coverage for this claim exists under their policy with respect to developed facts and has asked the court to decide on coverage." (*Id.* at 14 (emphasis omitted).)

- "I found no instances, in the material submitted to me, wherein Allstate Indemnity Company's actions were anything other than reasonable and justified and in good faith." (*Id.*)

- "Based upon my 44 years of claim experience coupled with my experience in the insurance industry as a consultant and expert witness, I see no definitive instance or evidence in the claim handling of the claim presentation at issue in this action . . . wherein Allstate Indemnity Company or any of its representatives, took any action or inaction, that was anything less than good faith towards its insured, Mr. Randy Lindquist." (*Id.* at 15 (omitting case caption).)

- "All parties have a right to turn to the courts for a precise ruling on policy verbiage. It is unequivocal that this is a disagreement over coverage of Mr. Lindquist's claim arising from reasonable, justifiable and concrete questions posed by Allstate." (Leonhardi Rebuttal Report at 2.)

- "By filing a [declaratory action], if anything, it is an acknowledgment

- that the insurer and insured are conflicted and this is a good faith effort to resolve the differences." (*Id.* (emphasis omitted).)
- "Based on this information and the information obtained from Ms. Grondahl, alone, it was an exceptionally reasonable decision by Ms. Diedrich to refer this matter to [the special investigations unit]." (*Id.* at 5.)
- "It is my continued opinion Allstate Indemnity company endeavored to provide quality claim handling to meet industry claim standards and the standards outlined in the Washington State Administrative Code and the Revised Code of Washington under the Insurance Fair Conduct Act." (*Id.* at 6-7.)

Allstate contends that "[t]hese statements are presented to the [c]ourt without the benefit of the context of Ms. Leonhardi's report" (Resp. at 2) and argues that, when viewed in their full context, Ms. Leonhardi's opinions are admissible because they are "tied to facts and stop short of expressing legal conclusions" (*id.* at 4 (citing *Ramirez-Yanez v. Allstate Ins. Co.*, No. C12-732MJP, 2013 WL 1499199, at *2 (W.D. Wash. Apr. 11, 2013)). In making this argument, Allstate relies on *Ramirez-Yanez v. Allstate Insurance Company*, a case in which Judge Marsha J. Pechman allowed an insurer's expert witness to testify that he had "concluded from a *factual standpoint* that Allstate acted with due care and reasonable justification, and not in an unfounded or frivolous manner, in its interpretation of the policy, investigation of the claim, and communications with the insureds." *See Ramirez-Yanez*, 2013 WL 1499199, at *2 (emphasis in original). Judge Pechman allowed that testimony to proceed, however, only because the expert made clear that his conclusion was drawn "from a *factual standpoint*," which Judge Pechman found stopped the testimony "short of making legal conclusions." *See id.* (emphasis in original). *Ramirez-Yanez* is therefore distinguishable from this case because

ORDER - 9

the contested portions of Ms. Leonhardi's reports do not contain the same kind of limiting language and, instead, proceed to impermissibly draw legal conclusions.

Moreover, contrary to Allstate's assertion that Ms. Leonhardi's testimony is appropriately cabined (*see* Resp. at 4), her reports either fail to make clear that her conclusions relate only to insurance industry standards (*see, e.g.*, Leonhardi Report at 14 (finding "no instances, in the material submitted to [Ms. Leonhardi], wherein Allstate Indemnity Company's actions were anything other than reasonable and justified and in good faith")), or to conclude the testimony once that limitation has been established (*see, e.g.*, Leonhardi Rebuttal Report at 6-7 (opining that Allstate "endeavored to provide quality claim handling to meet industry claim standards" as well as those "outlined in the Washington State Administrative Code and the Revised Code of Washington under the Insurance Fair Conduct Act")).[2]

Accordingly, with respect to the thirteen statements excerpted above, the court concludes that Ms. Leonhardi goes beyond discussing whether Allstate "deviated from industry standards on the issue of bad faith," and "reach[es] an actual legal conclusion," *see Ledcor Indus.*, 2012 WL 254251, at *2; *see also Liu*, 2021 WL 717540, at *3-4. These statements are, therefore, properly excluded and may not be offered by Ms. Leonhardi in their current form if she is called to testify at trial. As Mr. Lindquist rightly

---

[2] Ms. Leonhardi is plainly able to provide opinion testimony that avoids this issue. For example, she opines that Allstate "has acted in accordance with industry and Washington State claim handling standards in approaching its investigation obligations to Mr. Lindquist and moving his claim toward resolution." (*See* Leonhardi Report at 14.) By confining her testimony to Allstate's compliance with industry standards in this instance, Ms. Leonhardi stops short of offering "an actual legal conclusion." *See Ledcor Indus. (USA) Inc.*, 2012 WL 254251, at *2.

notes (*see* Reply at 5[3]), however, Ms. Leonhardi's opinion testimony will likely be admitted through her live examination at trial. *See Hunt v. City of Portland*, 599 F. App'x 620, 621 (9th Cir. 2013) (concluding "that [an expert's] report is hearsay to which no hearsay exception applies"). Thus, although these statements are deemed excluded and may not be considered for any pretrial purpose, the court's ruling is perhaps more important as an instruction to Ms. Leonhardi to avoid drawing any legal conclusions if she is called to testify about Allstate's conduct at trial.[4]

## IV.   CONCLUSION

For the foregoing reasons, Mr. Lindquist's motion to exclude portions of Ms. Leonhardi's expert reports (Dkt. # 202) is GRANTED in part and DENIED in part.

Dated this 17th day of June, 2022.

JAMES L. ROBART
United States District Judge

---

[3] Aside from noting that an expert report likely contains inadmissible hearsay and its contents should generally be admitted through live testimony, the court need not decide now whether Ms. Leonhardi's report could be entered into evidence at trial. (*See id.*) As Mr. Lindquist acknowledges, he did not request that relief in his motion. (*Id.*) Moreover, consideration of this hypothetical issue is premature and can be better addressed at trial, should it arise.

[4] Indeed, the issue raised by Mr. Lindquist's motion could have been raised through a motion *in limine*. *See, e.g.*, *Liu*, 2021 WL 717540, at *3-4; *Ledcor Indus. (USA) Inc.*, 2012 WL 254251, at *2.